**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| IN RE: 21st CENTURY ONCOLOGY CUSTOMER DATA SECURITY BREACH LITIGATION | Case No. 8:16-md-2737-MSS-AEP |
| | MDL No. 2737 |
| This Document Relates to All Cases | **CONSOLIDATED CLASS ACTION COMPLAINT** |

**TABLE OF CONTENTS**

**PAGE**

I.    INTRODUCTION ..................................................................................................1

II.   NATURE OF THE ACTION .................................................................................1

III.  JURISDICTION .....................................................................................................6

IV.   PARTIES ................................................................................................................6

      A.    Plaintiffs ......................................................................................................6

            Arizona.........................................................................................................6

                  Plaintiff Robert Russell......................................................................6

            California ......................................................................................................7

                  Plaintiff James Corbel........................................................................7

                  Plaintiff Roxanne Haatvedt................................................................8

                  Plaintiff Veneta Delucchi...................................................................9

            Florida .........................................................................................................10

                  Plaintiff Carl Schmitt .......................................................................10

                  Plaintiff Matthew Benzion ................................................................11

                  Plaintiff Kathleen LaBarge ...............................................................12

                  Plaintiff Stacey Schwartz ..................................................................13

                  Plaintiff Timothy Meulenberg ...........................................................14

                  Plaintiff Stephen Wilbur ...................................................................16

            Kentucky .....................................................................................................18

                  Plaintiff Jackie Griffith .....................................................................18

            Massachusetts ..............................................................................................19

                  Plaintiff Judith Cabrera .....................................................................19

New Jersey ..................................................................................20

    Plaintiff Sharon MacDermid .................................................20

Rhode Island ...............................................................................21

    Plaintiff Steven Brehio ........................................................21

B.    Defendants ..................................................................................23

V.    FACTUAL ALLEGATIONS ....................................................................25

A.    The FBI Informed 21st Century that an Intruder Gained Unauthorized Access To Patient PII/PHI and Offered this Data for Sale on the Internet ..................25

■ ████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████.............................27

■ ████████████████████████████████████████████
███████████████████████████████████████████████........31

D.    The Notification Provided by 21st Century To Plaintiffs and Class Members Was Delayed, Confusing, and Misleading .....................................................33

1.    21st Century's Delayed Disclosure of the Data Breach Further Harmed Plaintiffs and Class Members ................................................33

2.    21st Century's Notification Was False and/or Misleading and Obscured Key Facts About the Data Breach ......................................34

3.    21st Century's Notification Was Confusing To Plaintiffs and Class Members ..............................................................................35

4.    Industry Insiders Confirm That 21st Century's Data Breach Notification Was Insufficient and Inadequate ....................................37

E.    21st Century Acknowledged Its Duty To Keep PII/PHI Private ....................38

1.    HIPAA Provides Guidelines on How Healthcare Providers Must Secure Patients' Protected Health Information ....................................39

2.    The HITECH Act Provides Additional Guidelines on How Healthcare Providers Must Secure Patients' Protected Health Information .........42

3.      21st Century Is Subject To Other Federal and State Laws and Regulations That Provide Guidelines on the Practices It Should Have Implemented To Secure Patients' Protected Health Information ........43

4.      Industry Standards Also Provide Guidelines To Healthcare Providers Regarding Best Practices For Securing Confidential Medical Information ......................................................................................45

F.     21st Century Was Aware of the Risk of Data Breach and the Value of the PII/PHI With Which It Was Entrusted............................................................46

1.      From 2011 To 2012, 21st Century Experienced a Data Breach Involving Patient PII/PHI ...................................................................46

2.      The FBI Made a Highly Publicized Warning To Healthcare Companies such as 21st Century about the Increased Risk of Cyber Attacks ..................................................................................................47

G.     21st Century Has a Marked History of Prioritizing Profit Over Patients, Performing Unnecessary Tests on its Patients for at least Seven Years ..........48

H.     21st Century's Response To the Data Breach Has Been Inadequate and Is Insufficient To Address the Ongoing Risks and Harms To Plaintiffs and Class Members ..............................................................................................51

1.      The Risk of Identity Theft Is a Major Concern To Plaintiffs and Class Members .............................................................................................51

2.      Compromised Social Security Numbers Have Long-Term Value To Thieves and Long-Term Consequences To Data Breach Victims.......52

3.      Compromised Medical Information Has Even Greater Long-Term Value To Thieves and Consequences for Plaintiffs and Class Members .............................................................................................53

4.      Thieves Will Likely Use Plaintiffs' and Class Members' PII/PHI To Hurt Them Far Longer Than One Year ................................................54

5.      The Consequences To Victims of Medical Identity Theft Can Be Time Consuming, Financially Devastating, and Even Life Threatening ......54

6.      Many of the Affected Patients Comprise a Vulnerable Population .....58

7.      The Remedy Offered By 21st Century Is Inadequate, and Requires Plaintiffs and Class Members To Expend Time on an Ongoing Basis To Contain their Compromised PII/PHI ..............................................59

VI.    CLASS ACTION ALLEGATIONS ...........................................................................61

       A.    Nationwide Class ...........................................................................................61

       B.    Statewide Subclasses .....................................................................................62

VII.   CAUSES OF ACTION........................................................................................65

       COUNT I NEGLIGENCE (On Behalf of the Nationwide Class and Each of the
             Statewide Subclasses) .......................................................................65

       COUNT II NEGLIGENCE PER SE (On Behalf of the Nationwide Class and Each of
             the Statewide Subclasses Excluding California)..............................................68

       COUNT III GROSS NEGLIGENCE (On Behalf of the Nationwide Class and Each of
             the Statewide Subclasses) .................................................................70

       COUNT IV NEGLIGENT MISREPRESENTATION (On Behalf of the Nationwide
             Class and Each of the Statewide Subclasses) ...................................................72

       COUNT V BREACH OF EXPRESS CONTRACTS (On Behalf of the Nationwide
             Class and Statewide Subclasses).....................................................................74

       COUNT VI BREACH OF IMPLIED CONTRACTS (On Behalf of the Nationwide
             Class and Statewide Subclasses).....................................................................77

       COUNT VII BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR
             DEALING (On Behalf of the Nationwide Class and Statewide Subclasses) ..80

       COUNT VIII BREACH OF FIDUCIARY DUTY (On Behalf of the Nationwide
             Class and Statewide Subclasses).....................................................................82

       COUNT IX UNJUST ENRICHMENT (Alternative To Breach of Contract Claim)
             (On Behalf of the Nationwide Class and Statewide Subclasses)....................83

       COUNT X INVASION OF PRIVACY (On Behalf of the Nationwide Class and
             Statewide Subclasses) .....................................................................85

       COUNT XI DECLARATORY JUDGMENT (On Behalf of the Nationwide Class and
             Statewide Subclasses) .....................................................................86

       COUNT XII Violations of the Arizona Consumer Fraud Act  Ariz. Rev. Stat. Ann. §§
             44-1521, *et seq.* (On Behalf of the Arizona Subclass).....................................87

       COUNT XIII Violations of the California Confidentiality of Medical Information Act
             Cal. Civ. Code § 56, *et seq.* (On Behalf of the California Subclass)...............92

COUNT XIV Violations of the California Unfair Competition Law Cal. Bus. & Prof. Code § 17200, *et seq.* (On Behalf of the California Subclass) ........................95

COUNT XV Violations of the California Customer Records Act Cal. Civ. Code § 1798.81.5, *et seq.* (On Behalf of the California Subclass) ...............................99

COUNT XVI Violations of the California Consumers Legal Remedies Act ("CLRA") Cal. Civ. Code § 1750, *et seq.* (On Behalf of the California Subclass) .........102

COUNT XVII Violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq*. (On Behalf of the Florida Subclass) .................105

COUNT XVIII Violations of the Kentucky Consumer Protection Act Ky. Rev. Stat. §§ 367.170, *et seq.* (On Behalf of the Kentucky Subclass) ..........................109

COUNT XIX Violations of the Massachusetts Consumer Protection Act Mass. Gen. Laws Ann. Ch. 93A, § 1, *et seq.* (On Behalf of the Massachusetts Subclass) ...............................................................................................114

COUNT XX Violations of the Massachusetts Right To Privacy Statute Mass. Gen. Laws Ann. ch. 214, § 1B. (On Behalf of the Massachusetts Subclass) .........118

COUNT XXI Violations of the New Jersey Consumer Fraud Act N.J. Stat. Ann. § 56:8-1, *et seq.* (On Behalf of the New Jersey Subclass) ...............................122

COUNT XXII Violations of the Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1, *et seq.* (On Behalf of the Rhode Island Subclass) ........125

VIII.   PRAYER FOR RELIEF ........................................................................................130

IX.   JURY TRIAL DEMANDED ................................................................................130

## I.     INTRODUCTION

Plaintiffs,[1] individually and on behalf of all others similarly situated ("Class members"), file this Consolidated Class Action Complaint against 21st Century Oncology Investments, LLC and 21st Century Oncology of California, a Medical Corporation (collectively "Defendants" or "21st Century"), and allege as follows based on personal knowledge, the investigation of their counsel, and information and belief.

## II.     NATURE OF THE ACTION

1.      As any medical patient, survivor, or loved one can attest—and 21st Century recognizes on its website[2]—medical challenges are stressful and difficult, and a cancer diagnosis especially seems to place one's life out of control:



---

[1] "Plaintiffs" refers collectively to Plaintiffs Matthew Benzion, Steven Brehio, Judith Cabrera, James Corbel, Veneta Delucchi, Jackie Griffith, Roxanne Haatvedt, Kathleen LaBarge, Sharon MacDermid, Timothy Meulenberg, Robert Russell, Carl Schmitt, Stacey Schwartz, and Stephen Wilbur.
[2] 21st Century, *What to Expect as a Cancer Patient*, https://www.21co.com/radiation-therapy/what-to-expect (last visited Mar. 18, 2016).

2.      The last thing patients dealing with potentially deadly illnesses need is further harm and stress caused by the insecurity of their most private data and how it may be used by thieves.

3.      But that is exactly what victims of a data breach at 21st Century that occurred on or around October 3, 2015 ("Data Breach") are enduring nationwide.  Millions of 21st Century Data Breach victims have lost control of sensitive information that endangers their financial, medical, and emotional well-being for the rest of their lives.  Plaintiffs are Data Breach victims and bring this proposed class action lawsuit on behalf of themselves and all other persons whose personally identifiable information ("PII") and protected health information ("PHI") have been compromised as a result of the 21st Century Data Breach (the "Class").

4.      While more than 2.2 million 21st Century Data Breach victims sought out and/or paid for medical care from Defendants, thieves were hard at work, stealing and using their hard-to-change Social Security numbers and highly sensitive PII/PHI for over five months without the victims' knowledge.  21st Century's lax security practices that allowed this intrusion have worsened Plaintiffs' and other Class members' lives by, among other injuries: (a) adding to their already heightened financial obligations by placing them at increased risk of fraudulent charges; (b) complicating diagnosis, prognosis, and treatment for their severe medical conditions by placing them at increased risk of having inaccurate medical information in their files; and/or (c) increasing the risk of other potential personal, professional, or financial harms that could be caused as a result of having their PII/PHI exposed.

5.      On or around October 3, 2015, unauthorized parties hacked into 21st Century's provider database; however, 21st Century apparently failed to detect the Data Breach until the Federal Bureau of Investigation ("FBI") notified it on or about November 13, 2015.[3]

6.      The Data Breach resulted in the disclosure of private and highly sensitive PII/PHI including: names, Social Security numbers, physician's names, medical diagnoses, treatment information, and insurance information.[4]

7.      21st Century is not a name known to all Class members because 21st Century operates numerous facilities throughout the country under different trade names.  In fact, some Class members were surprised and alarmed to learn that 21st Century—a company they were not familiar with—had access to their PII/PHI at all, much less had lost control of their PII/PHI and allowed it to be compromised by unauthorized parties who could further distribute their private and sensitive information to anyone and everyone, including identity thieves.

8.      Prior to the Data Breach, 21st Century acknowledged in the Notice of Privacy Practices posted on its website that it is "required by law to maintain the privacy of your protected health information, to provide you with notice of our legal duties and privacy practices with respect to that protected health information, and to notify any affected individuals following a breach of any unsecured protected health information."[5] 21st Century

---

[3] 21st Century, *Notice to Patients Regarding Security Incident* (Mar. 4, 2016), https://www.21co.com/securityincident (last visited Mar. 18, 2016).

[4] *Id.*

[5] 21st Century, *Notice of Privacy Practices* (Mar. 26, 2013), https://www.21co.com/company/hipaa-notice-of-privacy-practices (last visited Jan. 17, 2017).

also represented that it would abide by these obligations, but failed to live up to its own promises as well as its duties and obligations required by law and industry standards.

9.     Contrary to its promises to help patients improve the quality of their lives through secure data practices, 21st Century's conduct has instead been a direct cause of the ongoing harm to Plaintiffs and other Class members whose suffering has been magnified by the Data Breach, and who will continue to experience harm and data insecurity for the indefinite future.

10.     Specifically, 21st Century failed to maintain reasonable and/or adequate security measures to protect Plaintiffs' and other Class members' PII/PHI from unauthorized access and disclosure, apparently lacking, at a minimum: (1) reasonable and adequate security measures designed to prevent this attack even though 21st Century suffered from at least one previous data breach, and knew or should have known that it was a prized target for hackers; and (2) reasonable and adequate security protocols to promptly detect the unauthorized intrusion into and removal of PII/PHI from its provider database pertaining to 2.2 million 21st Century Data Breach victims.

11.     Moreover, while 21st Century had months to figure out how to protect and minimize harm to Plaintiffs and Class members from the Data Breach, its response was haphazard and ineffective.  First, 21st Century harmed Plaintiffs and Class members through delayed notification.  Adding insult to injury, it then offered only one year of credit monitoring and identity theft insurance, and provided only four months from notification of the Data Breach in which to sign up.  Moreover, credit monitoring and identity theft insurance alone do not eliminate the risk of identity theft and fraud.  Even with such

protections, Plaintiffs and Class members may still experience identity theft and then be required to spend significant time undoing the financial injury inflicted by identity thieves who seek to use their compromised PII/PHI for financial gain.

12.     In addition, credit monitoring fails to remedy the potentially life-threatening injury to Plaintiffs and other Class members inflicted by identity thieves who seek to use victims' compromised PII/PHI to obtain medical care, thereby placing the thieves' inaccurate information on innocent victims' medical records in the process.  This harm is particularly dangerous for oncology patients.

13.     Thieves with access to Plaintiffs' and other Class members' compromised PII/PHI can use their Social Security numbers indefinitely because, unlike credit and financial accounts, these numbers are extremely difficult to change.  In addition, medical identity theft can continue to harm Plaintiffs and other Class members indefinitely because this information is often shared amongst numerous providers.  Further, as a consequence of the Data Breach, Plaintiffs and Class members are at increased risk of personal, professional, or financial harms that could be caused as a result of having their PII/PHI exposed.

14.     Plaintiffs bring this proposed class action lawsuit on behalf of themselves and the Class.  They seek damages, restitution, and injunctive relief requiring 21st Century to implement and maintain security practices to comply with regulations designed to prevent and remedy this and other potential data breaches, as well as other relief as the Court may order.  Plaintiffs and Class members will have to remain vigilant for the rest of their lives to combat potential identity theft.  Despite all best efforts of Plaintiffs, Class members, or anyone else, this most sensitive personal data can never be made private again.

### III.    JURISDICTION

15.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5 million, exclusive of interest and costs, Defendants do business nationwide in 17 states, and members of the proposed class are citizens of different states than Defendants.

16.    This Court has personal jurisdiction over 21st Century because 21st Century maintains its headquarters and principal executive and administrative offices in Florida and has sufficient minimum contacts with Florida.

17.    Venue is proper in this district under 28 U.S.C. § 1391(b) because 21st Century resides in this district and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.  Venue is also appropriate in this district pursuant to United States Judicial Panel on Multidistrict Litigation's October 6, 2016 Transfer Order transferring and centralizing this case in the Middle District of Florida.

### IV.    PARTIES

A.    **Plaintiffs**

**Arizona**

**Plaintiff Robert Russell**

18.    Plaintiff Robert Russell is a citizen of and is domiciled in the state of Arizona. Plaintiff Russell is unable to determine how 21st Century obtained his confidential and sensitive PII/PHI.

19.    In March 2016, Plaintiff Russell received notice from 21st Century that his PII/PHI had been compromised in the Data Breach.

6

20.     Plaintiff Russell subsequently spent approximately 15 to 20 hours taking action to mitigate the impact of the Data Breach, including researching the Data Breach and 21st Century, reviewing credit reports and financial accounts for fraud or suspicious activity, reviewing medical statements for fraud or suspicious activity, researching and enrolling in the credit monitoring service offered by 21st Century, and contacting 21st Century, a government agency, and a medical insurer regarding the Data Breach.

21.     As a result of the Data Breach, Plaintiff Russell has suffered emotional distress as a result of the release of his protected health information which he expected 21st Century to protect from disclosure, including anxiety, concern and unease about unauthorized parties viewing and potentially using his personal and medical information.  As a result of the Data Breach, Plaintiff Russell anticipates spending considerable time and money to contain the impact of the Data Breach.

**California**

**Plaintiff James Corbel**

22.     Plaintiff James Corbel is a citizen of and is domiciled in the state of California.  Plaintiff Corbel received medical services from 21st Century affiliates located in California and provided confidential and sensitive PII/PHI to 21st Century.

23.     In March 2016, Plaintiff Corbel received notice from 21st Century that his PII/PHI had been compromised in the Data Breach.

24.     Plaintiff Corbel subsequently spent approximately 10 hours taking action to mitigate the impact of the Data Breach, including requesting and reviewing a credit report, and reviewing financial accounts for fraud or suspicious activity.

25.     Despite Plaintiff Corbel's efforts to protect himself, he began receiving suspicious telephone calls asking for money and/or Plaintiff Corbel's personal information.

26.     As a result of the Data Breach, Plaintiff Corbel has suffered emotional distress as a result of the release of his protected health information which he expected 21st Century to protect from disclosure, including anxiety, concern and unease about unauthorized parties viewing and potentially using his personal and medical information.  As a result of the Data Breach, Plaintiff Corbel anticipates spending considerable time and money to contain the impact of the Data Breach.

**Plaintiff Roxanne Haatvedt**

27.     Plaintiff Roxanne Haatvedt is a citizen of and is domiciled in the state of California.  Plaintiff Haatvedt received medical services from an affiliate of 21st Century located in California and provided confidential and sensitive PII and PHI to Defendants.

28.     In March 2016, Plaintiff Haatvedt received notice from 21st Century that her PII/PHI had been compromised in the Data Breach.

29.     Plaintiff Haatvedt subsequently spent approximately 20 hours taking action to mitigate the impact of the Data Breach, including researching the Data Breach and 21st Century, reviewing credit reports and financial accounts for fraud or suspicious activity, and researching and enrolling in the credit monitoring service offered by Defendants.

30.     As a result of the Data Breach, Plaintiff Haatvedt has suffered emotional distress as a result of the release of her protected health information which she expected 21st Century to protect from disclosure, including anxiety, concern and unease about unauthorized parties viewing and potentially using her personal and medical information.  As

a result of the Data Breach, Plaintiff Haatvedt anticipates spending considerable time and money to contain the impact of the Data Breach.

<strong>Plaintiff Veneta Delucchi</strong>

31.     Plaintiff Veneta Delucchi is a citizen of and is domiciled in the state of California.  Plaintiff Delucchi received medical services from an affiliate of 21st Century located in California and provided confidential and sensitive PII/PHI to Defendants.

32.     In March 2016, Plaintiff Delucchi received notice from 21st Century that her PII/PHI had been compromised in the Data Breach.

33.     Plaintiff Delucchi subsequently spent approximately 10 to 15 hours taking action to mitigate the impact of the Data Breach, including researching the Data Breach and 21st Century, reviewing financial accounts for fraud or suspicious activity, and researching and enrolling in the credit monitoring service offered by 21st Century.

34.     When the credit monitoring service offered by 21st Century expires, Plaintiff Delucchi plans to pay for a credit monitoring service on an ongoing basis to protect herself from identity theft and fraud.

35.     As a result of the Data Breach, Plaintiff Delucchi has suffered emotional distress as a result of the release of her protected health information which she expected 21st Century to protect from disclosure, including anxiety, concern and unease about unauthorized parties viewing and potentially using her personal and medical information.  As a result of the Data Breach, Plaintiff Delucchi anticipates spending considerable time and money to contain the impact of the Data Breach.

<u>**Florida**</u>

**Plaintiff Carl Schmitt**

36.   Plaintiff Carl Schmitt is a citizen of and is domiciled in the state of Florida. Plaintiff Schmitt received medical services from a 21st Century affiliate located in Florida, and provided confidential and sensitive PII and PHI to 21st Century.

37.   In January 2016, Plaintiff Schmitt discovered that his PII had been used by unauthorized parties to commit fraud.  Plaintiff Schmitt received notifications from Capital One, Amazon, and Chase that fraud was committed using his PII.  For instance, Plaintiff Schmitt received notification from Capital One that the address on his account was changed and that a request was made to send replacement credit cards to the new address.  Plaintiff Schmitt also received notification from Amazon that someone attempted to open an Amazon credit card in his name and they were in the process of ordering items Plaintiff Schmitt did not order.  Plaintiff Schmitt blocked that account.  Plaintiff Schmitt received a phishing email purporting to be Bank of America asking that he provide certain information.  Plaintiff Schmitt went to Bank of America and they verified it was not an email sent by Bank of America.  A new Bank of America credit card was reissued to Plaintiff Schmitt.  Plaintiff Schmitt also received notification from Chase that an unauthorized parties attempted to change his contact information.  A credit card had to be reissued to prevent unauthorized transactions.  Plaintiff Schmitt also received numerous other phishing emails during this time period.  Plaintiff Schmitt subsequently spent over approximately 60 hours taking action to mitigate the impact of the Data Breach, corresponding and communicating with Capital One, Amazon, Bank of America and Chase, confirming his financial institutions had his proper

contact information, reviewing financial accounts for fraud or suspicious activities,

contacting the FTC and the local police departments to report the fraudulent activity, and

placing credit freezes with Experian, Equifax and TransUnion.

38.     In April 2016, Plaintiff Schmitt received notice from 21st Century that his PII

and PHI had been compromised in the Data Breach.

39.     Plaintiff Schmitt subsequently spent additional time taking action to mitigate

the impact of the Data Breach, including researching the Data Breach and 21st Century, and

researching ways to protect himself from data breaches.

40.     As a result of the Data Breach, Plaintiff Schmitt has suffered emotional

distress as a result of the release of his protected health information which he expected 21st

Century to protect from disclosure, including anxiety, concern and unease about

unauthorized parties viewing and potentially using his personal and medical information.  As

a result of the Data Breach, Plaintiff Schmitt anticipates spending considerable time and

money to contain the impact of the Data Breach.

**Plaintiff Matthew Benzion**

41.     Plaintiff Matthew Benzion is a citizen of and is domiciled in the state of

Florida.  Plaintiff Benzion received medical services from a 21st Century affiliate located in

Florida and provided confidential and sensitive PII/PHI to 21st Century.

42.     In March 2016, Plaintiff Benzion received notice from 21st Century that his

PII/PHI had been compromised in the Data Breach.

43.     Plaintiff Benzion subsequently spent approximately 15 hours taking action to

mitigate the impact of the Data Breach, including researching the Data Breach and 21st

Century, researching ways to protect himself from data breaches, reviewing his financial accounts for fraud or suspicious activity, and enrolling in a credit monitoring service.

44.     As a result of the Data Breach, Plaintiff Benzion purchased LifeLock Ultimate Plus, a credit monitoring service, for which he pays $29.99 per month.

45.     As a result of the Data Breach, Plaintiff Benzion has suffered emotional distress as a result of the release of his protected health information which he expected 21st Century to protect from disclosure, including anxiety, concern and unease about unauthorized parties viewing and potentially using his personal and medical information.  As a result of the Data Breach, Plaintiff Benzion anticipates spending considerable time and money to contain the impact of the Data Breach.

### Plaintiff Kathleen LaBarge

46.     Plaintiff Kathleen LaBarge is a citizen of and is domiciled in the state of Florida. Plaintiff LaBarge received medical services from a 21st Century affiliate located in Florida and provided confidential and sensitive PII/PHI to Defendants.

47.     In March 2016, Plaintiff LaBarge received notice from 21st Century that her PII/PHI had been compromised in the Data Breach.

48.     Plaintiff LaBarge has spent $99.00 to obtain identity theft protection with LifeLock.

49.     As a result of the Data Breach, Plaintiff LaBarge has suffered emotional distress as a result of the release of her protected health information which she expected 21st Century to protect from disclosure, including anxiety, concern and unease about unauthorized parties viewing and potentially using her personal and medical information.  As

12

a result of the Data Breach, Plaintiff LaBarge anticipates spending considerable time and money to contain the impact of the Data Breach.

**Plaintiff Stacey Schwartz**

50.     Plaintiff Stacey Schwartz is a citizen of and is domiciled in the state of Florida.  He received medical services from an affiliate of Defendants located in Florida and provided confidential and sensitive PII/PHI to Defendants.

51.     In March 2016, Plaintiff Schwartz received notice from 21st Century that his PII/PHI had been compromised in the Data Breach.

52.     After receiving notice about the Data Breach, Plaintiff Schwartz spent approximately 13 hours taking action to mitigate the impact of the Data Breach, including (a) researching the Data Breach and Defendants; (b) contacting Defendants to inquire about the Data Breach and to confirm that the notice he received was not a scam; (c) researching and ultimately enrolling in credit monitoring services with LifeLock, for which he pays $197.90 annually; and (d) reviewing his financial accounts for fraud or suspicious activity.

53.     Despite Plaintiff Schwartz's efforts to protect himself, he discovered that his PII has been used by unauthorized parties to commit fraud.  On April 25, 2016, Plaintiff Schwartz received an alert from LifeLock notifying him that an unknown third party had used his name, date of birth, and Social Security number to apply for a Capital One credit card.  He informed LifeLock and Capital One that he did not submit this application.  On September 30, October 1, and October 2, 2016, Plaintiff Schwartz received three separate notifications from Chase that on August 1, an unknown third party had attempted to apply for a Chase credit card using his PII.  Plaintiff Schwartz has spent approximately an additional

13

16 hours addressing the fraudulent activity, including (a) contacting LifeLock, Capital One, and Chase to inform them that he did not submit credit card applications; (b) filing a police report with the Miami police; (c) filing an online complaint with the Federal Bureau of Investigation; (d) contacting financial institutions with which he does business to add protection to his accounts and to discuss other options to protect himself and his accounts; (e) placing security freezes on his credit with Experian, Equifax, and TransUnion, for which he paid $30.00; and (f) filing a complaint with the FTC.

54.     As a result of the Data Breach, Plaintiff Schwartz has suffered emotional distress as a result of the release of his protected health information which he expected 21st Century to protect from disclosure, including anxiety, concern and unease about unauthorized parties viewing and potentially using his personal and medical information.  As a result of the Data Breach, Plaintiff Schwartz anticipates spending considerable time and money to contain the impact of the Data Breach.

**Plaintiff Timothy Meulenberg**

55.     Plaintiff Timothy Meulenberg, is a citizen of and is domiciled in the state of Florida.  Plaintiff Meulenberg received medical services from Defendants located in Florida and provided confidential and sensitive PII/PHI to Defendants.

56.     In March 2016, Plaintiff Meulenberg received notice from 21st Century that his PII/PHI had been compromised in the Data Breach.

57.     Plaintiff Meulenberg subsequently spent approximately 16 hours taking action to mitigate the impact of the Data Breach, including contacting credit card companies, the

14

three major credit reporting agencies, the Social Security Administration, and the Internal Revenue Service.

58.     Plaintiff Meulenberg has also spent $30.00 to place credit freezes on his accounts with each of the three major credit-reporting agencies.

59.     Despite Plaintiff Meulenberg's efforts to protect himself, he discovered that his PII had been used by unauthorized parties to commit fraud.  On February 24, 2016, an attempt was made by an unauthorized parties to open a Bank of America credit card account. Furthermore, on March 10, 2016, an attempt was made by an unauthorized parties to open a Discover credit card account.  Also, on or about November 2016, Plaintiff Meulenberg discovered unauthorized charges totaling $170.00 on his Fifth Third Bank credit card account.  Plaintiff Meulenberg has spent approximately 25 hours addressing the fraudulent activities, including contacting the credit card companies involved and the three major credit reporting agencies.

60.     As a result of the Data Breach, Plaintiff Meulenberg has suffered emotional distress as a result of the release of his protected health information which he expected 21st Century to protect from disclosure, including anxiety, concern and unease about unauthorized parties viewing and potentially using his personal and medical information.  As a result of the Data Breach, Plaintiff Meulenberg anticipates spending considerable time and money to contain the impact of the Data Breach.

**Plaintiff Stephen Wilbur**

61.     Plaintiff Stephen Wilbur is a citizen of and is domiciled in the state of Florida.
Plaintiff Wilbur received medical services from a 21st Century affiliate located in Florida
and provided confidential and sensitive PII/PHI to Defendants.

62.     In January 2016, when Plaintiff Wilbur's wife attempted to pick up Plaintiff
Wilbur's prescription, a Walgreens pharmacist informed her that Plaintiff Wilbur's health
insurance coverage was not valid.  Plaintiff Wilbur contacted his health insurance company
to determine why his health insurance was invalid, and a representative informed him that it
had been cancelled and that the company would commence an investigation.  Plaintiff Wilbur
learned through his health insurance agent that his Social Security number had been
compromised.  Because his Social Security number had been stolen, Plaintiff Wilbur's health
insurance company was unable to reinstate his coverage under his Social Security number
and had to create a fictitious Social Security number to create a new health insurance account
under his name.

63.     During the time he was without coverage, Plaintiff Wilbur's health insurance
company denied his claims for medical services.  As a result, he incurred out-of-pocket costs
of over $575.00.  Additional out-of-pocket costs were only recouped after extensive delay
and effort by Plaintiff Wilbur and his wife.

64.     In March 2016, Plaintiff Wilbur received notice from 21st Century that his
PII/PHI had been compromised in the Data Breach.

65.     In November or December 2016, Plaintiff Wilbur received notice from the
health insurance company that the Internal Revenue Service had rejected his fictitious

number.  Plaintiff Wilbur may be liable for tax penalties for "failure" to have health

insurance coverage, for which Plaintiff Wilbur has had to provide proof.  The Internal

Revenue Service investigation is pending.  On January 11, 2017, Plaintiff Wilbur's health

insurance company informed him that it would notify the Social Security Administration that

his Social Security number has been stolen.

66.     Plaintiff Wilbur has spent approximately 75 to 80 hours addressing the

fraudulent activity, including (a) contacting his health insurance company regarding the

fraud; (b) communicating with his health insurance agent and attempting to reinstate his

health insurance coverage; (c) searching for and obtaining alternative health insurance

coverage that provides him less favorable and more expensive coverage; and (d)

corresponding with the Internal Revenue Service regarding his health insurance coverage.

67.     After receiving notice about the Data Breach, Plaintiff Wilbur spent 75 to 80

hours taking action to mitigate further impact of the Data Breach, including (a) researching

the Data Breach and Defendants; (b) attempting to contact Defendants to inquire about the

Data Breach to which Defendants have been unresponsive; (c) enrolling in credit monitoring

services; (d) reviewing his credit report and financial accounts for fraud or suspicious

activity; (e) filing a complaint online with the FTC; and (f) notifying his Certified Public

Accountant of the Data Breach.

68.     As a result of the Data Breach, Plaintiff Wilbur has suffered emotional

distress as a result of the release of his protected health information which he expected 21st

Century to protect from disclosure, including anxiety, concern and unease about

unauthorized parties viewing and potentially using his personal and medical information.  As

a result of the Data Breach, Plaintiff Wilbur anticipates spending considerable additional

time and money to contain and try to mitigate further impact of the Data Breach.

### Kentucky

#### Plaintiff Jackie Griffith

69.     Plaintiff Jackie Griffith is a citizen of and is domiciled in the state of

Kentucky.  Plaintiff Griffith received medical services from a 21st Century affiliate located

in Kentucky and provided confidential and sensitive PII/PHI to Defendants.

70.     In March 2016, Plaintiff Griffith received notice from 21st Century that her

PII/PHI had been compromised in the Data Breach.

71.     Plaintiff Griffith subsequently spent approximately an hour or two every

month taking action to mitigate the impact of the Data Breach, including investigating a

possible fraudulent charge placed on Amazon in her name, reviewing credit reports and/or

financial accounts for fraud or suspicious activity, and enrolling in credit monitoring services

with Experian.  In late March of 2016, Plaintiff Griffith was notified by PNC Bank that an

unauthorized user attempted to access her credit card.  As a result, she had to spend time on

the phone with the bank and changing her password.

72.     Despite Plaintiff Griffith's efforts to protect herself, she discovered that her

PII had been used by unauthorized parties to commit or attempt to commit fraud in 2016

when she received email notifications of possible fraudulent purchases made in her name on

Amazon.  Plaintiff Griffith knew this was suspicious because she had never shopped at

Amazon, and she spent time on the phone with them attempting to remedy and prevent

fraudulent purchases.  Plaintiff Griffith has spent and continues to spend an hour or two each

18

month addressing the threat of fraudulent activity, including investigating the potentially fraudulent charges on Amazon, investigating and responding to attempts of unauthorized usage of her PNC credit card, disputing an attempt by a Tennessee collection agency to put a false Tennessee address on her credit report, resulting in a "hold" on her credit, and enrolling in credit monitoring services with Experian.

73.    As a result of the Data Breach, Plaintiff Griffith has suffered emotional distress as a result of the release of her protected health information which she expected 21st Century to protect from disclosure, including anxiety, concern and unease about unauthorized parties viewing and potentially using her personal and medical information. As a result of the Data Breach, Plaintiff Griffith anticipates spending considerable time and money to contain the further impact of the Data Breach.

**Massachusetts**

**Plaintiff Judith Cabrera**

74.    Plaintiff Judith Cabrera is a citizen of and is domiciled in the Commonwealth of Massachusetts. She received medical services from a 21st Century affiliate located in Florida and provided confidential and sensitive PII/PHI to Defendants.

75.    In March 2016, Plaintiff Cabrera received notice from 21st Century that her PII/PHI had been compromised in the Data Breach.

76.    After receiving notice about the Data Breach, Plaintiff Cabrera spent approximately 50 hours taking action to mitigate the impact of the Data Breach, including (a) researching the Data Breach; (b) reviewing her financial account and credit score daily for fraud or suspicious activity; (c) attempting to enroll in the free credit monitoring services

offered in the Data Breach notice and finding that the services were no longer available; and (d) researching and ultimately enrolling in credit monitoring services with LifeLock, for which she pays $186.91 annually.

77.     Despite Plaintiff Cabrera's efforts to protect herself, she discovered that her PII has been sold or traded by unauthorized parties.  On January 15, 2017, Plaintiff Cabrera received an alert from LifeLock notifying her that her PII has been "given away, traded or sold" on the "Dark Web, Deep Web, or Peer-to-Peer File Sharing Networks."

78.     As a result of the Data Breach, Plaintiff Cabrera has suffered emotional distress as a result of the release of her protected health information which she expected 21st Century to protect from disclosure, including anxiety, concern and unease about unauthorized parties viewing and potentially using her personal and medical information.  As a result of the Data Breach, Plaintiff Cabrera anticipates spending considerable time and money to contain the impact of the Data Breach.

**New Jersey**

**Plaintiff Sharon MacDermid**

79.     Plaintiff Sharon MacDermid is a citizen of and is domiciled in the state of New Jersey.  Plaintiff MacDermid received medical services from a division of 21st Century located in Florida and provided confidential and sensitive PII/PHI to Defendants.

80.     In March 2016, Plaintiff MacDermid received notice from 21st Century that her PII/PHI had been compromised in the Data Breach.

81.     Plaintiff MacDermid subsequently spent approximately 10 to 15 hours taking action to mitigate the impact of the Data Breach, including researching the Data Breach and

21st Century, reviewing financial accounts for fraud or suspicious activity, and researching how to protect herself from the consequences of the Data Breach.

82.     Plaintiff MacDermid pays $12.99 per month for credit monitoring and identity theft protection services by Bank of America Privacy Assist, and plans to continue paying for these services once the period during which 21st Century is offering credit monitoring services to Data Breach victims expires.

83.     As a result of the Data Breach, Plaintiff MacDermid has suffered emotional distress as a result of the release of her protected health information which she expected 21st Century to protect from disclosure, including anxiety, concern and unease about unauthorized parties viewing and potentially using her personal and medical information.  As a result of the Data Breach, Plaintiff MacDermid anticipates spending considerable time and money to contain the impact of the Data Breach.

**Rhode Island**

**Plaintiff Steven Brehio**

84.     Plaintiff Steven Brehio is a citizen of and is domiciled in the state of Rhode Island.  Plaintiff Brehio received medical services from an affiliate of 21st Century Oncology located in Rhode Island and provided confidential and sensitive PII/PHI to 21st Century.

85.     In March 2016, Plaintiff Brehio received notice from 21st Century that his PII/PHI had been compromised in the Data Breach.  After learning of the Data Breach, Plaintiff Brehio enrolled in the one-year membership with Experian's ProtectMyID Alert offered by 21st Century.

21

86.     Despite Plaintiff Brehio's efforts to protect himself from fraud following the Data Breach, he discovered that his PII had been used by unauthorized parties to commit fraud. Plaintiff Brehio was notified in approximately July 2016 by AT&T that an account for two cell phones was opened in his name. Plaintiff Brehio received a bill from AT&T for $282.83. Plaintiff Brehio was also notified in approximately July 2016 by eBay that his account was used fraudulently without his permission. Plaintiff Brehio was notified in approximately August 2016 that someone was using his name, Social Security number and date of birth to try to open a Target credit card account in his name. Plaintiff Brehio has spent approximately 10 hours addressing the fraudulent activity, including contacting AT&T and Target, filing reports with local police agencies and the Federal Trade Commission, reviewing his accounts and placing credit freezes with Experian, Equifax and TransUnion.

87.     Plaintiff Brehio spent approximately 20 hours taking action to mitigate the impact of the Data Breach, including researching 21st Century and the Data Breach, reviewing financial accounts for fraudulent or suspicious activity, researching and enrolling in the credit monitoring service offered by 21st Century, contacting local police agencies and the FTC regarding fraudulent activities and placing credit freezes with Experian, Equifax and TransUnion.

88.     Plaintiff Brehio has also spent approximately $20.00 in mileage to provide information to local police agencies about the fraudulent activities on his accounts. As a result of the Data Breach, Plaintiff Brehio intends to purchase additional credit monitoring services once the Experian ProtectMyID service expires.

89.     As a result of the Data Breach, Plaintiff Brehio has suffered emotional distress as a result of the release of his protected health information which he expected 21st Century to protect from disclosure, including anxiety, concern and unease about unauthorized parties viewing and potentially using his personal and medical information.  As a result of the Data Breach, Plaintiff Brehio anticipates spending considerable time and money to contain the impact of the Data Breach.  This includes weekly checks of personal and financial accounts and the extension of his credit freeze for seven years.

**B.     Defendants**

90.     Defendant 21st Century Oncology Investments, LLC is a Delaware limited liability company with its principal place of business in Ft. Myers, Florida. Defendant 21st Century Oncology Investments, LLC is the 100% owner of its subsidiary 21st Century Oncology Holdings, Inc., which in turn is the 100% owner of its subsidiary 21st Century Oncology, Inc., which in turn is the 100% owner of its subsidiaries 21st Century Oncology, LLC, 21st Century Oncology Management Services, Inc., and 21st Century Oncology Services, LLC.

91.     Defendant 21st Century Oncology of California, a Medical Corporation, is a California corporation with its principal place of business in Florida. Defendant 21st Century Oncology of California, a Medical Corporation, is an affiliated professional corporation/association of 21st Century Oncology, Inc., which in turn is a subsidiary that is 100% owned by 21st Century Oncology Investments, LLC.

92.     21st Century Oncology Investments, LLC and 21st Century Oncology of California, a Medical Corporation (collectively "Defendants" or "21st Century") comprise a

global, physician-led provider of integrated cancer care services, which bills itself as "the premier provider of cancer care services across multiple modalities."[6] 21st Century claims to be the largest radiation oncology provider in the United States.

93.     Defendants provide a full spectrum of cancer care services by employing and affiliating with physicians in their related specialties, which enables 21st Century to collaborate across its physician base, integrate services and payments for related medical needs, and disseminate its medical practices on a broad scale.

94.     Defendants operate the largest integrated network of cancer treatment centers and affiliated physicians in the world.  21st Century operates in more than 500 locations in the United States, and employs or is affiliated with over 800 physicians, including medical oncologists, radiation oncologists, and other specialists that include urologists, hematologists, gynecologic oncologists, surgeons, and pathologists.  21st Century advertises that it maintains specialties in a number of cancer-related treatments and surgeries, including those such as radiation oncology, breast cancer surgery, colorectal surgery, gynecological surgery, general surgery, urology, pulmonology, and primary care, among others.

95.     Defendants' cancer treatment centers in the United States are operated predominantly under the *21st Century Oncology* brand and are located in 17 states: Alabama, Arizona, California, Florida, Indiana, Kentucky, Maryland, Massachusetts, Michigan, Nevada, New Jersey, New York, North Carolina, Rhode Island, South Carolina, Washington and West Virginia. 21st Century also manages 36 treatment centers in seven countries in Latin America.

---

[6] 21st Century Oncology, *Corporate Overview*, https://www.21co.com/overview (last visited Jan. 6, 2017).

## V.     FACTUAL ALLEGATIONS

**A.     The FBI Informed 21st Century that an Intruder Gained Unauthorized Access To Patient PII/PHI and Offered this Data for Sale on the Internet**

96.     On November 13, 2015, the FBI advised 21st Century that "patient information was illegally obtained by a third party who may have gained access to a 21st Century database."[7]



---

[7] 21st Century, *Letter to Office of the Attorney General of New Hampshire* (Mar. 4, 2016) (hereinafter "NH Notification Letter"), http://doj.nh.gov/consumer/security-breaches/documents/21st-century-oncology-20160304.pdf.





27











**D.**     **The Notification Provided by 21st Century To Plaintiffs and Class Members Was Delayed, Confusing, and Misleading**

**1.**     **21st Century's Delayed Disclosure of the Data Breach Further Harmed Plaintiffs and Class Members**

117.     Despite the risk to its patients of fraud and other identity theft, 21st Century delayed notifying patients of the Data Breach until March 4, 2016, almost four months after it was informed of the Data Breach.[40] Although Defendants claim that "[t]he FBI asked 21st Century to delay notification or public announcement of the incident until now so as not to interfere with its investigation," Defendants have not provided evidence of such a request or an explanation of how such a request would relieve 21st Century of its notification obligations.[41]

118.     In the intervening months between when the FBI notified 21st Century of the Data Breach and when 21st Century disclosed it to Plaintiffs and Class members, 21st Century focused *not* on protecting patients and others whose PII/PHI it collected, retained, and compromised though its lax security measures, but rather on controlling the damage to itself and its investors.

119.     During the four months during which 21st Century failed to notify Plaintiffs and Class members of the Data Breach—Plaintiffs and Class members were an especially heightened risk of identity theft.  Not only was their most sensitive PII/PHI already for sale on the internet without their knowledge, but this period overlapped with months during which income tax returns are filed, putting them at an increased risk of tax fraud.

---

[40] *See supra*, NH Notification Letter.
[41] *Id.*

120.     For this reason, many Class members were blindsided by the notification that their Social Security numbers were compromised with only weeks remaining before the tax-filing deadline.  Further, many Class members found activating the credit monitoring service to be confusing and time consuming, thereby increasing the stress and anxiety associated with the uncertainty about whether that the Data Breach would jeopardize any expected tax refunds.

## 2.     21st Century's Notification Was False and/or Misleading and Obscured Key Facts About the Data Breach

121.     Despite having had months to prepare its notification to Plaintiffs and Class members, the March 4, 2016 notification letter sent by 21st Century indicates only that, "on October 3, 2015, [an] intruder *may* have accessed [a] database, which contained information that *may* have included your name, Social Security number, physician's name, diagnosis and treatment information, and insurance information"[42] Further, 21st Century represented to Plaintiffs and Class members that "[w]e have no evidence that your medical record was accessed," and "[w]e have no indication that your information has been misused in any way."[43]

122.     As is indicated above, this notification was false and/or misled Plaintiffs and Class members by inaccurately conveying that 21st Century did not possess information that patient medical information had, in fact, been improperly accessed and obtained by the unauthorized parties.  At that time, however, Defendants were fully aware not only that

---

[42] *Id.* (emphases added).
[43] *Id.*

patient medical information had been obtained by unauthorized parties, but that such information was being offered for sale on the internet as early as November 2015.[44] Moreover, 21st Century's notification concealed the fact that—due to 21st Century's inadequate and insufficient data security and information retention policies and practices— Defendants never adequately investigated or attempted to ascertain which of their patients had medical information accessed and obtained by unauthorized parties, or offered for sale on the internet.

123.    In this regard, the notification letter that 21st Century ultimately mailed to Plaintiffs and Class members failed to provide concrete information about the Data Breach and incompletely described what PII/PHI was in fact exposed, how it was exposed, and what changes 21st Century was making to prevent further compromises of PII/PHI in the future.

**3.      21st Century's Notification Was Confusing To Plaintiffs and Class Members**

124.    When Plaintiffs and Class members began receiving the notification letters from 21st Century on or about March 12, 2016, some of them did not understand that they had a relationship with 21st Century, because 21st Century operates numerous facilities throughout the country under different trade names.  For this reason, some Plaintiffs and Class members believed the notification letters they received from 21st Century to be a scam.

125.    Indeed, as of March 18, 2016, it was not obvious to Plaintiffs and Class members looking to confirm the authenticity of the notification letter through 21st Century's website that there had been a Data Breach.  While a single line, "A Message to Our Patients

---

[44] *See infra.*

Regarding Security Incident" appears in small font on the home page of 21st Century's website, it does not prominently appear at the top or bottom of the screen, and is masked amongst other text and images on the elongated home page.



126.    For this reason, many recipients of 21st Century's notification letters discarded the letters and did not take action to obtain the credit monitoring services offered

by 21st Century during the short four-month window that 21st Century allowed Plaintiffs and

Class members to sign up for the offered services.

127.    Other Data Breach victims who were unfamiliar with the name "21st Century

Oncology" were left to play detective to ascertain which physicians they had seen, if any,

who were associated with 21st Century.

### 4.    Industry Insiders Confirm That 21st Century's Data Breach Notification Was Insufficient and Inadequate

128.    Ted Harrington, executive partner with Independent Security Evaluators, a

security assessment and consulting firm, expressed the opinion that 21st Century's

notification was inadequate and misleading:

> 21st Century Oncology's response really misses the mark.  They note in their statement that no medical records were lost.  But patient names, Social Security numbers and other data were.  These are some of the most important aspects of the medical record.[45]

129.    The U.S. Department of Health & Human Services ("HHS") is responsible for

enforcing rules promulgated under HIPAA.  Senior HHS advisor Rachel Seeger has

interpreted HIPAA as protecting names and Social Security Numbers:

> The personally identifiable information that HIPAA-covered health plans maintain on enrollees and members—including names and Social Security Numbers—is protected under HIPAA, even if no specific diagnostic or treatment information is disclosed.[46]

130.    For the foregoing reasons, 21st Century's delayed and inadequate notification

of the Data Breach resulted in additional damage and created additional hardships for

---

[45] Paul Benjou, *Negligence is the Cancer of CyberCrime* (Mar. 2016),
http://myopenkimono.blogspot.com/search?q=negligence+is+the+cancer.html (last visited Jan. 17, 2017).
[46] Elizabeth Weise, *Anthem Fined $1.7 million in 2010 breach* (Feb. 5, 2015),
http://www.usatoday.com/story/tech/2015/02/05/anthem-health-care-computer-security-breach-fine-17-million/22931345/ (last visited Jan. 17, 2017).

Plaintiffs and Class members who were already experiencing medical and financial difficulties.

E.    **21st Century Acknowledged Its Duty To Keep PII/PHI Private**

131.    21st Century routinely requests, records, collects and/or generates protected PHI about its patients that includes, but is not limited to, patient names, Social Security numbers, physicians' names, diagnoses and treatment information, and insurance information.

132.    21st Century has acknowledged since at least its March 26, 2013 Notice of Privacy Practices[47] that it is required by law to maintain the privacy of Plaintiffs' and Class members' PII/PHI and notify them if their PII/PHI was compromised in compliance with applicable law.

**Our Responsibilities**
We are required by law to maintain the privacy of your protected health information, to provide you with notice of our legal duties and privacy practices with respect to that protected health information, and to notify any affected individuals following a breach of any unsecured protected health information.  We will abide by the terms of the notice currently in effect.

21st Century, however, failed to fulfill these responsibilities.

133.    Federal and state laws and regulations, including but not limited to the HIPAA Privacy and Security Rules, the HITECH Act, the Federal Trade Commission Act, 16 C.F.R. Part 681 (Identity Theft Red Flags), Federal Register 45 C.S.F. Parts 160 and 164 (Encryption / Destruction Guidance for PHI), 21 C.F.R. Part 11 (Electronic Records); the Arizona Consumer Fraud Act, the California Customer Records Act, the California Confidentiality of Medical Information Act, the California Consumers Legal Remedies Act,

---

[47] 21st Century, *Notice of Privacy Practices* (Mar. 26, 2013), https://www.21co.com/company/hipaa-notice-of-privacy-practices (last visited Mar. 18, 2016).

the Florida Deceptive and Unfair Trade Practices Act, the Florida Information Protection Act, the Kentucky Consumer Protection Act, the Massachusetts Consumer Protection Act, the Massachusetts Right to Privacy Statute, the Massachusetts Data Protection Act, the New Jersey Consumer Fraud Act, and the Rhode Island Deceptive Trade Practices Act, provide guidelines on the practices healthcare providers should implement to secure patients' confidential medical information.

134.   21st Century violated its duties under the aforementioned laws and regulations by failing to implement adequate and reasonable policies, processes, training, and safeguards, including data privacy and cybersecurity software and hardware, to protect its patients' confidential PII/PHI.

135.   21st Century violated its duties under the aforementioned laws and regulations by failing to follow best practices in the healthcare security.

136.   21st Century violated its duties under the aforementioned laws and regulations by failing to adequately respond to notification of the breach and remediate the effects of the breach.

137.   21st Century's violations of its duties were directly related to the confidential PII/PHI of more than 2.2 million patients being accessed by unauthorized parties.

1.   **HIPAA Provides Guidelines on How Healthcare Providers Must Secure Patients' Protected Health Information**

138.   As a healthcare provider, 21st Century is subject to the HIPAA Privacy Rule ("Standards for Privacy of Individually Identifiable Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and E, and the HIPAA Security Rule ("Security Standards for the

Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164,

Subparts A and C (collectively, "Privacy and Security Rules").

139.    The Privacy and Security Rules establish a national set of standards for the

protection of "individually identifiable health information" that is held or transmitted by a

health care provider, which HIPAA refers to as "protected health information."

140.    Pursuant to HIPAA, 21st Century must maintain reasonable and appropriate

administrative, technical, and physical safeguards for protecting PHI.

141.    HIPAA imposes general security standards that 21st Century must follow,

including:

(a)    Ensuring the confidentiality, integrity, and availability of all electronic

protected health information the covered entity or business associate creates, receives,

maintains, or transmits, 45 C.F.R. § 164.306(a);

(b)    Protecting against any reasonably anticipated threats or hazards to the

security or integrity of such information, 45 C.F.R. § 164.306(a);

(c)    Protecting against any reasonably anticipated uses or disclosures of

such information that are not permitted or required under HIPAA, 45 C.F.R. §

164.306(a); and

(d)    Reviewing and modifying the security measures implemented under

HIPAA as needed to continue provision of reasonable and appropriate protection of

electronic protected health information, 45 C.F.R. § 164.306(e).

142.    From a technical standpoint, HIPAA requires 21st Century to, among other

things:

(a)      Implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, 45 C.F.R. § 164.312(a);

(b)      Implement procedures to verify that a person or entity seeking access to electronic PHI is the one claimed, 45 C.F.R. § 164.312(d); and

(c)      Implement technical security measures to guard against unauthorized access to electronic PHI that is being transmitted over an electronic communications network, 45 C.F.R. § 164.312(e).

143.     The HIPAA Security Rule requires 21st Century to implement reasonable and appropriate policies and procedures to comply with the standards, implementation specifications, or other requirements of the HIPAA Security Rule.  45 CFR 164.316(a). These policies and procedures must be maintained in written form.  45 CFR 164.316(b)(1)(i).

144.     The HIPAA Security Rule requires covered entities to maintain a written record of any action, activity, or assessment required to be documented by the HIPAA Security Rule.  45 CFR 164.316(b)(1)(ii).

145.     The HIPAA Security Rule requires covered entities to review documentation periodically and update it as needed, in response to environmental or operational changes affecting the security of the electronic protected health information.  45 CFR 164.316(b)(1)(iii).

146.     Under the HIPAA Privacy Rule, 21st Century may not use or disclose PHI or confidential medical information except as expressly permitted.  45 CFR 164.502(a).

g

**2.      The HITECH Act Provides Additional Guidelines on How Healthcare Providers Must Secure Patients' Protected Health Information**

147.    The HITECH Act, enacted as part of the American Recovery and Reinvestment Act of 2009 (ARRA) (Pub.L. 111–5), promotes the adoption and meaningful use of health information technology.  Subtitle D of the HITECH Act addresses the privacy and security concerns associated with the electronic transmission of health information.

148.    The HITECH Act provides lucrative financial incentives, and the avoidance of penalties, to healthcare entities such as 21st Century for demonstrating the meaningful use, interoperability, and security of electronic health information.  Achieving meaningful use requires compliance with objectives, measures and certification and standards criteria.  The Electronic Health Records ("EHR") Incentive Program requires compliance with the objective to protect electronic health information.  A Core Measure to determine compliance with the objective is conducting or reviewing a security risk analysis in accordance with the requirements under 45 CFR 164.308(a)(1) (the HIPAA Security Rule) and implementing security updates as necessary and correcting identified security deficiencies as part of its risk management process.

149.    Upon information and belief, 21st Century implanted a rushed and substandard EHR infrastructure in order to, in part, obtain millions of dollars in lucrative financial incentives, as well as the avoidance of penalties, despite knowing they were ill-equipped and unprepared to safely store and meaningfully use electronic health records and electronic health information in a secure manner consistent with regulations and industry standards.

**3.    21st Century Is Subject To Other Federal and State Laws and Regulations That Provide Guidelines on the Practices It Should Have Implemented To Secure Patients' Protected Health Information**

150.    Section 5(a) of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, prevents 21st Century from using "unfair or deceptive acts or practices in or affecting commerce." The FTC has found that inadequate data privacy and cybersecurity practices can constitute unfair or deceptive practices that violate § 5.

151.    The state of Florida requires companies to maintain electronic PII/PHI in a certain way.  Among other things, Florida law requires 21st Century to (1) take reasonable measures to protect and secure data in electronic form containing PII/PHI; (2) take reasonable measures to dispose or destroy PII/PHI; and (3) provide notice to consumers and consumer reporting agencies when a data security incident occurs that compromises PII/PHI. Fla. Stat. § 501.171.

152.    The state of California generally prohibits healthcare providers from disclosing a patient's confidential medical information without prior authorization.  The California Confidentiality of Medical Information Act ("CMIA") (Cal. Civ. Code § 56.10(a)) states that "a provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or enrollee or subscriber of a health care service plan without first obtaining an authorization except as provided in subdivision (b) or (c)." *See also* Cal. Civ. Code §§ 1798.80, *et seq.*

153.    The Commonwealth of Massachusetts requires any "person" that "owns or licenses" "personal information" of a resident of the Commonwealth to (1) protect the security and confidentiality of customer information "consistent with industry standards," (2)

"protect against unanticipated threats or hazards to the security or integrity of customer information" and (3) "protect against unauthorized access to or use of customer information that may result in substantial harm or inconvenience to any consumer." *See* 201 Mass. Code Regs. § 17.00, *et seq.; see also* Mass. Gen Laws Ch. 93H, § 3(a).

154.    The state of Rhode Island requires persons who store, collect, process, maintain, acquire, use, own, or license personal information about a Rhode Island resident to implement and maintain a risk-based information security program that contains reasonable security procedures and practices appropriate to the size and scope of the organization.  R.I. Gen. Laws § 11-49.3-2.

155.    In addition to their obligations under federal and state laws and regulations, 21st Century owed a common law duty to Plaintiffs and Class members to protect PII/PHI entrusted to it, including to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII/PHI in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized parties.

156.    21st Century further owed and breached its duty to Plaintiffs and the Class to implement processes and specifications that would detect a breach of its security systems in a timely manner and to timely act upon warnings and alerts, including those generated by its own security systems (*e.g.* 45 CFR §§ 164.308(a), 164.306(d), 164.312, The Office for Civil Rights July 14, 2010 Guidance on Risk Analysis Requirements under the HIPAA Security Rule, etc.).

### 4. Industry Standards Also Provide Guidelines To Healthcare Providers Regarding Best Practices For Securing Confidential Medical Information

157.    21st Century owed and breached its duties to Plaintiffs and Class members to provide and maintain reasonable security over PII/PHI security consistent with industry standards and requirements including but not limited to Cloud Security Alliance (CSA) Cloud Controls Matrix, CMS Information Security ARS 2010, COBIT 4.1 and 5, Iso/IEX 27001:2005, ISO/IEX 27002:2005; ISO/IEC 27799:2008, U.S. Department of Commerce's National Institute of Standards and Technology ("NIST") Special Publication 800-53, NIST Special Publication 800-61, NIST Special Publication 800-66, and Joint Commission (formerly the Joint Commission on the Accreditation of Healthcare Organizations, JCAHO), etc.  Likewise, 21st Century owed a duty and breached its duties to Plaintiffs and Class members to design, maintain, and test its security systems and networks to ensure that PII/PHI in 21st Century's possession was adequately secured and protected.

158.    The Health Information Trust Alliance ("HITRUST"), which applies healthcare, business, technology and information principles, has established the Common Security Framework ("CSF"), a certifiable framework that can be used by any and all organizations that create, access, store or exchange personal health and financial information.

159.    HITRUST's CSF is an information security governance framework that blends the requirements of existing standards and regulations, including federal (HIPAA, HITECH), third party (PCI, COBIT) and government (NIST, FTC).

160.    HITRUST's CSF is a widely adopted framework in the United States healthcare industry.

161.     ISACA, formerly known as Information Systems Audit and Control Association, is an independent, nonprofit, global association that provides practical guidance, benchmarks and other effective tools for all organizations that use information systems.

162.     ISACA's Control Objectives for Information and Related Technology ("COBIT") is a framework created by ISACA for IT management and IT governance.

163.     HITRUST and COBIT are two examples of best practices related to healthcare information technology governance systems.  They both recommend and require measures that take into account HIPAA, HITECH and additional IT security regulations.

**F.     21st Century Was Aware of the Risk of Data Breach and the Value of the PII/PHI With Which It Was Entrusted**

**1.     From 2011 To 2012, 21st Century Experienced a Data Breach Involving Patient PII/PHI**

164.     21st Century is no stranger to data breaches.  On or about May 15, 2013, federal law enforcement officials informed 21st Century that one of its employees had improperly accessed patient PII/PHI over the course of almost ten months between October 11, 2011 and August 8, 2012 (the "2011-2012 Data Breach").  The 21st Century employee provided patient PII/PHI to a third party who used patient names, Social Security numbers, and dates of birth to file fraudulent claims for tax refunds.  As with the recently announced Data Breach, 21st Century failed to detect the 2011-2012 Data Breach.

165.     When 21st Century notified the Maryland Attorney General of the 2011-2012 Data Breach on or about July 10, 2013, 21st Century had not yet concluded its own internal investigation into how the employee was able to access this information.

166.     Ultimately, 21st Century offered victims affected by the 2011-2012 Data Breach one year of credit monitoring and an assurance that "protecting our patients' personal information is a priority at 21st Century . . . and we take any potential misuse of our patients' private health information very seriously." [48]

167.     In the ensuing years, however, 21st Century did not carry through with its assurances and only obtained—and thereby put at risk—far more patient data.

### 2.     The FBI Made a Highly Publicized Warning To Healthcare Companies such as 21st Century about the Increased Risk of Cyber Attacks

168.     According to cybersecurity company SANS Institute, healthcare providers and health insurance companies are regular targets of cyber-attacks, and were particularly vulnerable to them by October 2013. [49]

169.     In April 2014, the FBI's cyber division warned healthcare systems that cyber-attacks were likely to further increase after January 2015, when healthcare companies were required to switch from using paper medical records to electronic records.  The FBI noted that healthcare companies were more susceptible to cyber-attacks, making future attacks likely. [50]

---

[48] 21st Century, *Letter to Office of the Attorney General of Maryland* (Jul. 10, 2013), https://www.oag.state.md.us/idtheft/Breach%20Notices/2013/itu-230673.pdf (last visited Mar. 18, 2016).

[49] SANS Institute, *Health Care Cyberthreat Report: Widespread Compromises Detected, Compliance Nightmare on Horizon* (Feb. 2014), http://www.sans.org/reading-room/whitepapers/analyst/health-care-cyberthreat-report-widespread-compromises-detected-compliance-nightmare-horizon-34735 (last visited Mar. 18, 2016).

[50] Federal Bureau of Investigation, *FBI Cyber Division Private Industry Notification* (Apr. 8, 2014), https://info.publicintelligence.net/FBI-HealthCareCyberIntrusions.pdf (last visited Mar. 18, 2016).

170.    The FBI's report was highly publicized in 2014, being reported by such news agencies as Reuters.[51]

171.    However, 21st Century did not heed these warnings to reasonably and adequately secure this private and highly sensitive PII/PHI, as demonstrated by its failure to learn of the recently disclosed Data Breach until the FBI (again) reported it to 21st Century.

172.    As Twistlock's chief strategy officer Chenxi Wang told *ESecurity Planet:*

> The fact that many of these breaches are reported by the FBI, rather than discovered by the company that holds the data, speaks to the heart of the problem—many organizations do not have sufficient technical expertise and capabilities in place to protect data and respond in a timely manner in the event of a breach[.][52]

**G.    21st Century Has a Marked History of Prioritizing Profit Over Patients, Performing Unnecessary Tests on its Patients for at least Seven Years**

173.    The Data Breach must be viewed in the context of the 21st Century corporate culture in which it arose.  Contrary to its stated commitment to provide "compassionate" cancer care to patients,[53] 21st Century, through its wholly-owned subsidiaries, has been subjecting patients to a variety of unnecessary medical testing for years.

---

[51] Finkle, *Exclusive: FBI Warns Healthcare Sector Vulnerable to Cyber Attacks*, Reuters (Apr. 23, 2014), http://www.reuters.com/article/2014/04/23/us-cybersecurity-healthcare-fbi-exclusividUSBREA3M1Q920140423 (last visited Mar. 18, 2016).

[52] Jeff Goldman, *21st Century Oncology Notifies 2.2 Million Patients of Data Breach* (Mar. 11, 2016), http://www.esecurityplanet.com/network-security/21st-century-oncology-notifies-2.2-million-patients-of-data-breach.html (last visited Jan. 17, 2017).

[53] 21st Century Oncology, *Home Page*, https://www.21co.com (last visited Mar. 18, 2016).



174.    On March 25, 2013—two months before the FBI informed 21st Century of the 2011-2012 Data Breach—a medical assistant filed a whistleblower suit against a 21st Century subsidiary alleging a scheme to subject patients to unnecessary tests in order to fraudulently collect money from federal healthcare programs from 2008 through 2012.[54]

175.    In the words of Special Agent in Charge Shimon Richmond of the Department of Health and Human Services Office of Inspector General: "These tests were ordered to increase profits, not improve the health care of patients."[55]

176.    On December 16, 2015—one month after the FBI informed 21st Century of the recently disclosed Data Breach—21st Century filed an SEC Form 8-K that announced that it was settling the whistleblower suit for $19.75 million.[56]

177.    On October 19, 2015—less than a month before the FBI informed 21st Century of the instant Data Breach—a doctor filed a whistleblower suit against a 21st

---

[54] *United States, State of Fl., ex rel. Barnes v. Spellberg, 21st Century and Naples Urology Assoc.*, No. 2:13-cv-228-FtM-99DNF (M.D. Fla.).

[55] Don Browne, *21st Century Oncology Paying $19 Million Settlement In False Billing Case*, Southwest Florida Online (Dec. 18, 2015), http://swflorida.blogspot.com/2015/12/21st-century-oncology-paying-19-million.html (last visited Jan. 13, 2017).

[56] 21st Century Oncology, SEC Form 8-K (Dec. 16, 2015), https://www.21co.us/investors/sec-filings (last visited Mar. 18, 2016).

Century subsidiary alleging a scheme to subject patients to four categories of unnecessary tests in order to fraudulently collect money from federal healthcare programs from 2009 through 2014.[57]

178.   In this case, "[t]he company prioritized profit over medical counsel," said David L. Scher, counsel for the whistleblowing doctor.[58]

179.   Jason Mehta, Assistant U.S. Attorney agreed, stating: "When medical decision-making is influenced by significant financial incentives, patients suffer—and, in this case, patients and taxpayers were bilked for a test of questionable validity that the government contends, in some cases, offered no value or meaning to any healthcare practitioners."[59]

180.   On March 9, 2016—days after publicly disclosing the Data Breach—21st Century filed an SEC Form 8-K announcing that it was settling the second whistleblower suit for $34.7 million.[60]

---

[57] *United States ex rel. Ting v. 21st Century Oncology and So. Fl. Radiation Oncology*, No. 3:14-cv-723-Jax-J32JRK (M.D. Fla).

[58] Patricia Brooks, *Medicare Fraud Whistleblower Represented By The Employment Law Group Law Firm Wins $34.7 Million Settlement In Case Against 21st Century Oncology*, PR Newswire (Mar. 8, 2016), http://www.prnewswire.com/news-releases/medicare-fraud-whistleblower-represented-by-the-employment-law-group-law-firm-wins-347-million-settlement-in-case-against-21st-century-oncology-300232646.html (last visited Mar. 18, 2016).

[59] *Id.*

[60] 21st Century Oncology, SEC Form 8-K (Mar. 9, 2016), https://www.21co.com/investors/sec-filings (last visited Mar. 18, 2016).

**H.    21st Century's Response To the Data Breach Has Been Inadequate and Is Insufficient To Address the Ongoing Risks and Harms To Plaintiffs and Class Members**

**1.    The Risk of Identity Theft Is a Major Concern To Plaintiffs and Class Members**

181.    There is a strong likelihood that Plaintiffs and Class members are already or will become victims of identity theft and fraud, given the breadth of PII/PHI about them that has been taken by unauthorized parties.

182.    The likelihood of such identity theft and fraud is significantly increased by the fact that Plaintiffs and Class members' PII/PHI has already been offered for sale to identity thieves on the internet, as the FBI informed 21st Century in November 2015.

183.    As reported by Javelin Strategy & Research's 2014 Identity Fraud Study:

> Data breaches are the greatest risk factor for identity fraud. . . . In 2013, one in three consumers who received notification of a data breach became a victim of fraud.[61]

184.    Hackers steal such PII/PHI in order to sell it on black market sites to identity thieves,[62] who attempt to get their money's worth from such information by committing identity theft and fraud.

185.    The likelihood or probability that Plaintiffs' and Class members' PII/PHI would be improperly used, sold or otherwise mishandled led 21st Century to offer one year of credit monitoring and identity-theft protection to 2.2 million people in its database after

---

[61] *2013 Identity Fraud Report: Data Breaches Becoming a Treasure Trove for Fraudsters*, Javelin Strategy, (Feb. 20, 2013),  https://www.javelinstrategy.com/coverage-area/2013-identity-fraud-report-data-breaches-becoming-treasure-trove-fraudsters (last visited Mar. 18, 2016).

[62] Ozzie Fonseca, *Following Personal Identifying Information (PII) Down the Black Net Road,* Experian (Aug. 11, 2015),  http://www.experian.com/blogs/data-breach/2015/08/11/following-personal-identifying-information-pii-down-the-black-net-road/ (last visited Mar. 18, 2016).

51

the FBI informed it that patient information was illegally obtained by a third party in October 2015.

186.    It costs 21st Century more than a *de minimis* amount to provide these services to the 2.2 million Data Breach victims.  Experian currently charges $15.95 for the offered ProtectMyID service through ProtectMyID's website.[63] 21st Century has offered these services to Plaintiffs and Class members because the risk of identity theft to Plaintiffs and Class members cannot be safely disregarded.

### 2.    Compromised Social Security Numbers Have Long-Term Value To Thieves and Long-Term Consequences To Data Breach Victims

187.    Neal O'Farrell, a security and identity theft expert for Credit Sesame, calls a Social Security number "your secret sauce," that is "as good as your DNA to hackers."[64]

188.    Unfortunately, Plaintiffs and Class members have to wait until they become victims of Social Security number misuse before they can obtain a new one.

189.    Even then, the Social Security Administration warns "that a new number probably will not solve all [] problems . . . and will not guarantee . . . a fresh start." In fact, "[f]or some victims of identity theft, a new number actually creates new problems."[65] One of those new problems is that a new Social Security number will have a completely blank credit history, making it difficult to get credit for years unless it is linked to the old compromised number.

---

[63] Experian, *Identity Theft Protection*, http://www.experian.com/consumer-products/identity-theft-and-credit-protection.html (lasted visited Jan 13, 2017).
[64] Cameron Huddleston, *How to Protect Your Kids From the Anthem Data Breach*, Kiplinger, (Feb. 10, 2015), http://www.kiplinger.com/article/credit/T048-C011-S001-how-to-protect-your-kids-from-the-anthem-data-brea.html# (last visited Jan. 17, 2017).
[65] Social Security Admin., *Identity Theft and Your Social Security Number*, https://www.ssa.gov/pubs/EN-05-10064.pdf at pgs. 6-7 (last visited Mar. 18, 2016).

###### 3.   Compromised Medical Information Has Even Greater Long-Term Value To Thieves and Consequences for Plaintiffs and Class Members

190.   Kunal Rupani, director of product management at Accellion, a private cloud solutions company, told *eSecurity Planet* that it's likely the 21st Century hackers were targeting the Data Breach victims' PHI for its long-term value, stating:

> Unlike credit card numbers and other financial data, healthcare information doesn't have an expiration date.  As a result, a patient's records can sell on the black market for upwards of fifty times the amount of their credit card number, making hospitals and other healthcare organizations extremely lucrative targets for cybercriminals.[66]

191.   PHI—like the type disclosed in the breach—is particularly valuable for cybercriminals.  According to SecureWorks (a division of Dell Inc.), "[i]t's a well known truism within much of the healthcare data security community that an individual healthcare record is worth more on the black market ($50, on average) than a U.S.-based credit card and personal identity with social security number combined."[67] The reason is that thieves "[c]an use a healthcare record to submit false medical claims (and thus obtain free medical care), purchase prescription medication, or resell the record on the black market."[68]

192.   Similarly, the FBI Cyber Division, in a April 8, 2014 Private Industry Notification, advised:

> Cyber criminals are selling [medical] information on the black market at a rate of $50 for each partial EHR, compared to $1 for a stolen social security number or credit card number. EHR can then be used to file fraudulent insurance claims, obtain prescription medication, and advance identity theft. EHR theft is also more difficult to detect, taking almost twice as long as normal identity theft.[69]

---

[66] *See supra, 21st Century Oncology Notifies 2.2 Million Patients of Data Breach.*

[67] *What's the Market Value of a Healthcare Record,* Dell SecureWorks (Dec. 13, 2012), https://www.secureworks.com/blog/general-market-value-of-a-healthcare-record (last visited Jan. 13, 2017).

[68] *Id.*

[69] *FBI Cyber Division Private Industry Notification*, *supra* note 50.

**4. Thieves Will Likely Use Plaintiffs' and Class Members' PII/PHI To Hurt Them Far Longer Than One Year**

193.     Once hackers have such PHI, "they can use it to procure prescription drugs or expensive medical equipment or simply to commit financial fraud—often for months or years before anyone notices."[70]

194.     While identity thieves historically sought short-term profit from hacked credit card numbers, hackers today are targeting non-financial information so they can "continue to monetize victims' identifies over a longer period of time."[71] As observed by Gemalto vice president and CTO for data protection Jason Hart,

> In 2014, consumers may have been concerned about having their credit card numbers stolen, but there are built-in protections to limit the financial risks . . . However, in 2015 criminals shifted to attacks on personal information and identity theft, which are much harder to remediate once they are stolen.[72]

195.     This truth is notably acknowledged in the ProtectMyID attachment to 21st Century's notification letter to Plaintiffs and Class members, which states that "[i]t is recognized that identity theft can happen months and even years after a data breach."[73]

**5. The Consequences To Victims of Medical Identity Theft Can Be Time Consuming, Financially Devastating, and Even Life Threatening**

196.     Once use of compromised non-financial PII/PHI is detected, the personal and economic consequences to the data breach victims can be overwhelming.  As reported by CreditCards.com:

---

[70] Cathleen McCarthy, CreditCards, *How to Spot and Prevent Medical Identity Theft* (Aug. 19, 2014) http://www.creditcards.com/credit-card-news/spot-prevent-medical-identity-theft-1282.php (last visited Jan. 13, 2017).

[71] *Id.*

[72] *See supra*, *21st Century Oncology Notifies 2.2 Million Patients of Data Breach*.

[73] *See supra,* NH Notification Letter.

> The Ponemon Institute found that 36 percent of medical ID theft victims pay to resolve the issue, and their out-of-pocket costs average nearly $19,000. Even if you don't end up paying out of pocket, such usage can wreak havoc on both medical and credit records, and clearing that up is a time-consuming headache. That's because medical records are scattered. Unlike personal financial information, which is consolidated and protected by credit bureaus, bits of your medical records end up in every doctor's office and hospital you check into, every pharmacy that fills a prescription and every facility that processes payments for those transactions.[74]

197.    Research by Ponemon confirms that medical identity theft is costly and complex to resolve, and therefore it is critical for healthcare providers to take additional steps to assist victims resolve the consequences of the theft and prevent future fraud.  In a 2014 study, Ponemon found that sixty-five percent (65%) of victims of medical identity theft in the study had to pay an average of $13,500.00 to resolve the resultant crimes[75], and only ten percent (10%) of those in the study reported having achieved complete satisfaction in concluding the incident.

198.    The average time spent by those respondents who successfully resolved their situation was more than 200 hours, working with their insurer or healthcare provider to make sure their personal medical credentials were secure and verifying the accuracy of their personal health information, medical invoices and claims and electronic health records. Indeed, fifty-nine percent (59%) of the respondents reported that their information was used to obtain healthcare services or treatments, and fifty-six percent (56%) reported that their information was used to obtain prescription pharmaceuticals or medical equipment.  Forty-five percent (45%) of respondents said that the medical identity theft incident had a negative

---

[74] *Id.*
[75] Jaclyn Fitzgerald, *Ponemon Institute Study Reveals 21.7% Rise in Medical Identity Theft,* HC Pro (Mar. 2, 2015), http://www.hcpro.com/HIM-313785-865/Ponemon-Institute-study-reveals-217-rise-in-medical-identity-theft.html (last visited Jan. 10, 2017).

impact on their reputation, primarily because of embarrassment due to the disclosure of sensitive personal health conditions (89% of the respondents), thirty-five percent (35%) said the person committing the fraud depleted their insurance benefits resulting in denial of valid insurance claims, and thirty-one percent (31%) said they lost their health insurance entirely as a result of the medical identity theft.  Twenty-nine percent (29%) of the respondents reported that they had to make out-of-pocket payments to their health plan or insurer to restore coverage.

199.    Additionally, the study found that almost one-half of medical identity theft victims lose their healthcare coverage as a result of the identity theft, almost one-third have their insurance premiums rise, and forty percent (40%) were never able to resolve their identity theft.

200.    The injuries suffered and likely to be suffered by Plaintiffs and Class members are and will be a direct and proximate result of the Data Breach, including:

(a)    theft of their personal and financial information;

(b)    loss or delay of tax refunds as a result of fraudulently filed tax returns;

(c)    costs associated with the detection and prevention of identity theft and unauthorized use of their PII/PHI and financial, business, banking, and other accounts;

(d)    costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach, including finding fraudulent charges, cancelling credit cards, purchasing credit monitoring and identity theft protection

services (beyond the one-year offered by 21st Century), the imposition of withdrawal and purchase limits on compromised accounts, and the stress, nuisance, and annoyance of dealing with all issues resulting from the Data Breach, including phishing emails and phone scams;

(e) the imminent and certain impending injury flowing from fraud and identity theft posed by their PII/PHI being placed in the hands of hackers;

(f) damages to and diminution in value of their PII/PHI entrusted to 21st Century for the sole purpose of obtaining healthcare services from 21st Century;

(g) money paid to 21st Century for healthcare services during the period of the Data Breach because Plaintiffs and Class members would not have obtained healthcare services from 21st Century had it disclosed that it lacked adequate systems and procedures to reasonably safeguard patients' PII/PHI;

(h) overpayments to 21st Century for healthcare services purchased, in that a portion of the amount paid by Plaintiffs and Class members to 21st Century was for the costs for 21st Century to take reasonable and adequate security measures to protect the Plaintiffs and Class members' PII/PHI of, which 21st Century failed to do; and

(i) personal, professional, or financial harms caused as a result of having their PII/PHI exposed.

201. 21 Century and their agents have received numerous complaints of identity theft from Class members who allege their information has been used fraudulently and without their permission.

202.     Furthermore, the Office of Inspector General of the U.S. Department of

Health & Human Services has cautioned that the consequences to data breach victims can

even be life-threatening:

> The damage can be life-threatening to you if the wrong information ends up in your
> personal medical records.[76]

For instance, if incorrect medical information such as blood type or allergies becomes

commingled in a data breach victim's medical records, that misinformation can be deadly if

that individual becomes unconscious and needs an emergency transfusion or injection.[77]

**6.      Many of the Affected Patients Comprise a Vulnerable Population**

203.     Undergoing treatment for cancer often demands significant amounts of time

and energy, and can cause painful side effects.  Many cancer patients are unable to monitor

their financial accounts and credit reports with the same diligence as healthy individuals.

The nature of their diagnosis and treatment renders cancer patients, as a group, more

vulnerable to financial fraud and identity theft than healthy individuals.

204.     In this regard, James Chappell, Digital Shadows' CTO and co-founder,

expressed surprise at 21st Century's failure to protect the PII/PHI of its patients, particularly

given their known life circumstances, stating:

> The circumstances in these patients' lives were already pretty tough … I'm surprised
> 21st Century Oncology weren't better stewards of their patients' data given their
> circumstances.[78]

---

[76] Office of Inspector General, *Medical ID Theft/Fraud Information*, http://oig.hhs.gov/fraud/medical-id-theft/
(last visited Jan. 13, 2017).
[77] *See supra, How to Spot and Prevent Medical Identity Theft*.
[78] Tom Spring, *Cancer Clinic Warns 2.2 Million Patients of Records Breach* (Mar. 8, 2016),
https://threatpost.com/cancer-clinic-warns-2-2-million-patients-of-records-breach/116668/ (last visited Mar.
18, 2016).

205.    Further, cancer disproportionately affects the elderly.  Senior citizens are targeted for financial fraud and identity theft at higher rates than non-senior citizens.  Identity theft and financial exploitation are among the most commonly reported forms of fraud perpetrated against the elderly.

**7.    The Remedy Offered By 21st Century Is Inadequate, and Requires Plaintiffs and Class Members To Expend Time on an Ongoing Basis To Contain their Compromised PII/PHI**

206.    21st Century previously offered Plaintiffs and Class members twelve months of credit monitoring and identity theft insurance with ProtectMyID, an Experian product. However, this now unavailable remedy does not fully protect Plaintiffs and Class members against the risk of identity theft and fraud.  Further, the twelve-month coverage period provided is insufficient to protect Plaintiffs and Class members as it is far shorter than the period that they are likely to become victims of identity theft and fraud.

207.    21st Century sent out letters on March 4, 2016 to Plaintiffs and Class members offering them twelve months of credit monitoring.  However, Defendants provided only a very short window of time in which to accept this offer.  Plaintiffs and Class members were given only until July 7, 2016—fewer than four months—to receive the letter, learn their options, and decide whether to accept the monitoring.  Plaintiffs and Class members who tried enroll in the membership after that date were denied enrollment.  This unrealistic deadline posed a problem for Plaintiffs and Class members who initially believed the letter itself was a scam; who did not receive their letter immediately to their current address; who were undergoing treatment and were not able to respond in the short time window; and/or for

those who were still researching their options.  Here again, 21st Century placed its financial position before the well-being of its patients.

208.    In any event, the previously offered credit monitoring and identity theft insurance cannot fully protect Plaintiffs and Class members against identity theft or fraud.  In this regard, credit monitoring is reactionary and only detects activity *after* identity thieves use compromised PII/PHI to attempt to fraudulently open lines of credit.  Similarly, identity theft insurance only reimburses losses *after* they have occurred.

209.    Accordingly, 21st Century recommended that Plaintiffs and Class members monitor their explanation of benefits statements to detect and resolve unauthorized charges without its help.  The notification letter sent by 21st Century to Plaintiffs and Class members stated:

> We also recommend that you regularly review the explanation of benefits that you receive from your health insurer. If you see services that you did not receive, please contact your insurer immediately.[79]

210.    Further, among the recommendations in the ProtectMyID attachment to 21st Century's Data Breach notification letter to Plaintiffs and Class members was that Data Breach victims take the following steps on their own: (a) "reviewing your credit card, bank, and other financial statements for any unauthorized activity;" (b) obtaining "a copy of your credit report . . . directly from each of the three nationwide credit reporting agencies;" and (c) contacting "the Federal Trade Commission and/or the Office of the Attorney General in your

---

[79] *See supra*, NH Notification Letter (emphases added).

home state" for those who believe that they have become "a victim of identity theft or have reason to believe [their] personal information has been misused."[80]

211.    These tasks are significant burdens to ask of anyone who entrusted PII/PHI to another, and it is particularly reprehensible for 21st Century to shift its responsibility to its oncology patients and their loved ones.

212.    In sum, the twelve months of credit monitoring and identity theft insurance offered by 21st Century does not in itself adequately protect Plaintiffs and Class members from a lifetime of identity theft risk and does nothing to reimburse Plaintiffs and Class members for the injuries they have already suffered.

## VI.    CLASS ACTION ALLEGATIONS

213.    Plaintiffs bring claims pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Nationwide Class and Statewide Subclasses, as defined below.

## A.    Nationwide Class

214.    Plaintiffs bring their negligence, negligence per se, gross negligence, negligent misrepresentation, breach of express contracts, breach of implied contracts, breach of implied duty of good faith and fair dealing, breach of fiduciary duty, unjust enrichment, invasion of privacy, and declaratory judgment claims (Counts I-X) on behalf of a proposed nationwide class ("Nationwide Class"), defined as follows:

> All natural persons in the United States whose PII/PHI was compromised as a result of the Data Breach.

---

[80] *Id.*

B.      **Statewide Subclasses**

215.    Plaintiffs bring their state consumer protection, data protection, and/or right to privacy statute claims (Counts I-XI) on behalf of separate statewide subclasses for each of the following states:

      a.   Arizona

      b.   California

      c.   Florida

      d.   Kentucky

      e.   Massachusetts

      f.   New Jersey

      g.   Rhode Island

Each proposed statewide subclass ("Statewide Subclass") is defined as follows:

*All natural persons who are citizens of [STATE] whose PII/PHI was compromised as a result of the Data Breach.*

216.    Plaintiffs also bring their negligence, negligence per se, gross negligence, negligent misrepresentation, breach of express contracts, breach of implied contracts, breach of implied duty of good faith and fair dealing, breach of fiduciary duty, unjust enrichment, invasion of privacy, and declaratory judgment claims (Counts I-XI) separately on behalf of each of the Statewide Subclasses, in the alternative to bringing those claims on behalf of the Nationwide Class.

217.    Except where otherwise noted, "Class members" shall refer to members of the Nationwide Class and each of the Statewide Subclasses.

218.    Excluded from the Nationwide Class and the Statewide Subclasses are Defendants and their current employees, as well as the Court and its personnel presiding over this action.

219.    **Numerosity.**  The proposed Class is sufficiently numerous, as 2.2 million Data Breach victims had their PII/PHI compromised, and they are dispersed throughout the United States, making joinder of all members impracticable.  Class members can be readily identified and ascertained through the records maintained by 21st Century.

220.    **Commonality.**  Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual class members, including:

a.    Whether 21st Century had a legal duty to use reasonable security measures to protect Class members' PII/PHI;

b.    Whether 21st Century timely, accurately, and adequately informed Class members that their PII/PHI had been compromised;

c.    Whether 21st Century breached its legal duty by failing to protect Class members' PII/PHI;

d.    Whether 21st Century acted reasonably in securing Class members' PII/PHI;

e.    Whether Class members are entitled to actual damages and/or statutory damages; and

f.    Whether Class members are entitled to injunctive relief.

221.    **Typicality.**  Plaintiffs' claims are typical of the claims of members of the proposed Class because, among other things, Plaintiffs and Class members sustained similar

injuries as a result of 21st Century's uniform wrongful conduct and their legal claims all arise from the same conduct by 21st Century.

222.   **Adequacy.**  Plaintiffs will fairly and adequately protect the interests of the proposed Class.  Plaintiffs' interests do not conflict with Class members' interests and they have retained counsel experienced in complex class action and data privacy litigation to prosecute this case on behalf of the Class.

223.   **Rule 23(b)(3).**  In addition to satisfying the prerequisites of Rule 23(a), Plaintiffs satisfy the requirements for maintaining a class action under Rule 23(b)(3). Common questions of law and fact predominate over any questions affecting only individual Class members and a class action is superior to individual litigation.  The amount of damages available to individual plaintiffs is insufficient to make litigation addressing 21st Century's conduct economically feasible in the absence of the class action procedure.  Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

224.   **Rule 23(b)(2).**  Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(b)(2).  21st Century has acted or refused to act on grounds that apply generally to the proposed Class, making final declaratory or injunctive relief appropriate with respect to the proposed Class as a whole.

225.     **Rule 23(c)(4).**  This action also satisfies the requirements for maintaining a

class action under Rule 23(c)(4).  The claims of Class members are composed of particular

issues that are common to all Class members and capable of class wide resolution that will

significantly advance the litigation.

## VII.    CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
**(On Behalf of the Nationwide Class and Each of the Statewide Subclasses)**

226.     Plaintiffs incorporate all foregoing factual allegations as if fully set forth

herein.

227.     21st Century owed a duty to Plaintiffs and Class members, arising from the

sensitivity of the information, the expectation that information was going to be kept private,

and the foreseeability of its data safety shortcomings resulting in an intrusion, to exercise

reasonable care in safeguarding their sensitive personal information.  This duty included,

among other things, designing, implementing, maintaining, monitoring, and testing 21st

Century's networks, systems, protocols, policies, procedures and practices to ensure that

Plaintiffs' and Class members' information was adequately secured from unauthorized

access.

228.     21st Century's Notice of Privacy Practices acknowledged 21st Century's duty

to adequately protect Plaintiffs' and Class members' PII/PHI.

229.     21st Century owed a duty to Plaintiffs and Class members to implement

administrative, physical and technical safeguards, such as intrusion detection processes that

detect data breaches in a timely manner, to protect and secure Plaintiffs' and Class members' PII/PHI.

230.    21st Century also had a duty to only maintain PII/PHI that was needed to serve patient needs.

231.    21st Century owed a duty to disclose the material fact that its data security practices were inadequate to safeguard Plaintiffs' and Class members' PII/PHI.

232.    21st Century also had independent duties under Plaintiffs' and Class members' state laws that required 21st Century to reasonably safeguard Plaintiffs' and Class members' PII/PHI, and promptly notify them about the Data Breach.

233.    21st Century had a special relationship with Plaintiffs and Class members as a result of being entrusted with their PII/PHI, which provided an independent duty of care. Plaintiffs' and Class members' willingness to entrust 21st Century with their PII/PHI was predicated on the understanding that 21st Century would take adequate security precautions. Moreover, 21st Century was capable of protecting its networks and systems, and the PII/PHI it stored on them, from unauthorized access.

234.    21st Century breached its duties by, among other things: (a) failing to implement and maintain adequate data security practices to safeguard Plaintiffs' and Class members' PII/PHI, including administrative, physical and technical safeguards; (b) failing to detect the Data Breach in a timely manner; (c) failing to disclose that its data security practices were inadequate to safeguard Plaintiffs' and Class members' PII/PHI; and (d) failing to provide adequate and timely notice of the Data Breach to Plaintiffs and Class members.

235.     But for 21st Century's breach of its duties, including its duty to use reasonable care to protect and secure Plaintiffs' and Class members' PII/PHI, Plaintiffs' and Class members' PII/PHI would not have been accessed by unauthorized parties.

236.     Plaintiffs and Class members were foreseeable victims of 21st Century's inadequate data security practices.  21st Century knew or should have known that a breach of its data security systems would cause damage to Plaintiffs and Class members.

237.     It was reasonably foreseeable, particularly given legal mandates governing health data protection and the growing number of data breaches of health information, that the failure to reasonably protect and secure Plaintiffs' and Class members' PII/PHI would result in unauthorized access to 21st Century's networks, databases, and computers that stored or contained Plaintiffs' and Class members' PII/PHI.

238.     As a result of 21st Century's negligent failure to prevent the Data Breach, Plaintiffs and Class members suffered injury, which includes but is not limited to exposure to a heightened, imminent risk of fraud, identity theft, and financial harm.  Plaintiffs and Class members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft.  Plaintiffs and Class members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter and detect identity theft.  The unauthorized acquisition of Plaintiffs' and Class members' PII/PHI has also diminished the value of the PII/PHI.

239.     The harm to Plaintiffs and Class members was a proximate, reasonably foreseeable result of 21st Century's breaches of its aforementioned duties.

240.    Therefore, Plaintiffs and Class members are entitled to damages in an amount to be proven at trial.

## COUNT II
## NEGLIGENCE PER SE
**(On Behalf of the Nationwide Class and Each of the Statewide Subclasses Excluding California)**

241.    Plaintiffs incorporate all foregoing factual allegations as if fully set forth herein.

242.    Under the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, 21st Century had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class members' PII/PHI.

243.    Under HIPAA, 42 C.F.R. 160, *et seq.*, 21st Century had a duty to implement reasonable safeguards to protect Plaintiffs' and Class members' PII/PHI.

244.    In addition, under state data security statutes (*see, e.g.*, Cal. Civ. Code § 56, *et seq.*; Cal. Civ. Code § 1798.81.5; Fla. Stat. § 501.171; Fla. Stat. § 456.057; Mass. Gen. Laws Ch. 93H, § 3(a); R.I. Gen. Laws § 11-49.3-2) 21st Century had a duty to implement and maintain reasonable security procedures and practices to safeguard Plaintiffs' and Class members' PII/PHI.

245.    21st Century breached its duties to Plaintiffs and Class members under the Federal Trade Commission Act (15 U.S.C. § 45), HIPAA (42 C.F.R. 160, *et seq.*), and the state data security statutes by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class members' PII/PHI.

246.    Plaintiffs and Class members were foreseeable victims of 21st Century's violations of the FTCA, HIPAA, and state data security statutes.  21st Century knew or

should have known that its failure to implement reasonable measures to protect and secure Plaintiffs' and Class members' PII/PHI would cause damage to Plaintiffs and Class members.

247. 21st Century's failure to comply with the applicable laws and regulations constitutes negligence *per se.*

248. But for 21st Century's violation of the applicable laws and regulations, Plaintiffs' and Class members' PII/PHI would not have been accessed by unauthorized parties.

249. As a result of 21st Century's failure to comply with applicable laws and regulations, Plaintiffs and Class members suffered injury, which includes, but is not limited to, the exposure to a heightened, imminent risk of fraud, identity theft, financial and other harm. Plaintiffs and Class members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiffs and Class members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiffs' and Class members' PII/PHI has also diminished the value of the PII/PHI.

250. The harm to Plaintiffs and the Class members was a proximate, reasonably foreseeable result of 21st Century's breaches of the applicable laws and regulations.

251. Therefore, Plaintiffs and Class members are entitled to damages in an amount to be proven at trial.

**COUNT III**
**GROSS NEGLIGENCE**
**(On Behalf of the Nationwide Class and Each of the Statewide Subclasses)**

252.     Plaintiffs incorporate all foregoing factual allegations as if fully set forth herein.

253.     Plaintiffs and Class members entrusted 21st Century with highly-sensitive and inherently personal private data subject to confidentiality laws and physician-patient privileges.

254.     In requiring, obtaining and storing Plaintiffs' and Class members' PII/PHI, 21st Century owed a duty of reasonable care in safeguarding the PII/PHI.

255.     21st Century's networks, systems, protocols, policies, procedures and practices, as described above, were not adequately designed, implemented, maintained, monitored and tested to ensure that Plaintiffs' and Class members' PII/PHI were secured from unauthorized access.

256.     21st Century Oncology's networks, systems, protocols, policies, procedures and practices, as described above, were not reasonable given the sensitivity of the Plaintiffs' and Class members' private data and the known vulnerabilities of 21st Century's systems.

257.     21st Century did not comply with state and federal laws and rules concerning the use and safekeeping of this private data.

258.     Upon learning of the Data Breach, 21st Century should have immediately disclosed the Data Breach to Plaintiffs and Class members, credit reporting agencies, the Internal Revenue Service, financial institutions and all other third parties with a right to know

70

and the ability to mitigate harm to Plaintiffs and Class members as a result of the Data Breach.

259.    Despite knowing its networks, systems, protocols, policies, procedures and practices, as described above, were not adequately designed, implemented, maintained, monitored and tested to ensure that Plaintiffs' and Class members' PII/PHI were secured from unauthorized access, 21st Century ignored the inadequacies and was oblivious to the risk of unauthorized access it had created.

260.    21st Century's behavior establishes facts evidencing a reckless disregard for Plaintiffs' and Class members' rights.

261.    21st Century, therefore, was grossly negligent.

262.    21st Century's negligence also constitutes negligence per se.

263.    The negligence is directly linked to injuries.

264.    As a result of 21st Century's reckless disregard for Plaintiffs' and Class members' rights by failing to failing to secure their PII/PHI despite knowing its networks, systems, protocols, policies, procedures and practices were not adequately designed, implemented, maintained, monitored and tested, Plaintiffs and Class members suffered injury, which includes but is not limited to the exposure to a heightened, imminent risk of fraud, identity theft, financial and other harm.  Plaintiffs and Class members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft.  Plaintiffs and Class members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft.  The

unauthorized acquisition of Plaintiffs' and Class members' PII/PHI has also diminished the value of their PII/PHI.

265.    The harm to Plaintiffs and the Class members was a proximate, reasonably foreseeable result of 21st Century's breaches of the applicable laws and regulations.

266.    Therefore, Plaintiffs and Class members are entitled to damages in an amount to be proven at trial.

**COUNT IV**
**NEGLIGENT MISREPRESENTATION**
**(On Behalf of the Nationwide Class and Each of the Statewide Subclasses)**

267.    Plaintiffs incorporate all foregoing factual allegations as if fully set forth herein.

268.    21st Century negligently and recklessly misrepresented material facts pertaining to the provision of healthcare services to Plaintiffs and Class Members by representing they would maintain adequate data privacy and security practices and procedures to safeguard Plaintiffs' and Class members' PII/PHI from unauthorized disclosure, release, data breaches, and theft.

269.    21st Century negligently and recklessly misrepresented material facts pertaining to the provision of healthcare services to Plaintiffs and Class members by representing that they did and would comply with the requirements of federal and state laws pertaining to the privacy and security of Plaintiffs' and Class members' PII/PHI.

270.    Prior to making these representations, 21st Century knew its networks, systems, protocols, policies, procedures and practices, as described above, were not

adequately designed, implemented, maintained, monitored and tested to ensure that Plaintiffs' and Class members' PII/PHI were secured from unauthorized access

271.    In reliance upon these representations, Plaintiffs and Class members engaged and paid for 21st Century to provide healthcare services to Plaintiffs and Class members.

272.    Had Plaintiffs and Class members, as reasonable persons, known of 21st Century's inadequate data privacy and security practices, or that 21st Century was failing to comply with the requirements of federal and state laws pertaining to the privacy and security of Plaintiffs' and Class members' PII/PHI, they would not have engaged 21st Century to provide, nor paid for, healthcare services from 21st Century, and would not have entrusted their PII/PHI to 21st Century.

273.    As a direct and proximate consequence of 21st Century's negligent misrepresentations, Plaintiffs and Class members have suffered injury, which includes but is not limited to the exposure to a heightened, imminent risk of fraud, identity theft, financial and other harm.  Plaintiffs and Class members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft.  Plaintiffs and Class members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft.  The unauthorized acquisition of Plaintiffs' and Class members' PII/PHI has also diminished the value of the PII/PHI.

274.    Therefore, Plaintiffs and Class members are entitled to damages in an amount to be proven at trial.

**COUNT V**
**BREACH OF EXPRESS CONTRACTS**
**(On Behalf of the Nationwide Class and Statewide Subclasses)**

275.     Plaintiffs reallege and incorporate by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

276.     Plaintiffs and members of the Class, additionally and alternatively, allege that they entered into valid and enforceable express contracts, or were third party beneficiaries of valid and enforceable express contracts, with 21st Century.

277.     Under these express contracts, 21st Century and/or its affiliated healthcare providers, promised and were obligated to: (a) provide healthcare to Plaintiffs and Class members; and (b) protect Plaintiffs' and the Class members' PII/PHI: (i) provided to obtain such healthcare; and/or (ii) created as a result of providing such healthcare.  In exchange, Plaintiffs and members of the Class agreed to pay money for these services.

278.     Both the provision of healthcare and the protection of Plaintiffs' and Class members' PII/PHI were material aspects of these contracts.

279.     At all relevant times, 21st Century expressly represented that it is "required by law" to provide Plaintiffs and Class members with notice of 21st Century's "legal duties and privacy practices with respect to that health information." 21st Century's Notice of Privacy Practices that was published on 21st Century's website at all times relevant hereto, for example, expressly represented that 21st Century would "abide by the terms of the notice currently in effect," which included maintaining "the privacy of your protected health information" as required by law.[81] 21st Century also expressly represented in the Notice of

---

[81] *See supra,* 21st Century, *Notice of Privacy Practices.*

Privacy Practices that it would notify any affected individuals following a breach of any unsecured protected health information.[82]

280.    21st Century's express representations, including, but not limited to, express representations found in 21st Century's Notice of Privacy Practices, formed an express contract requiring 21st Century to implement data security adequate to safeguard and protect the privacy of Plaintiffs' and Class members' PII/PHI.

281.    Alternatively, the express contracts included implied terms requiring 21st Century to implement data security adequate to safeguard and protect the confidentiality of Plaintiffs' and Class members' PII/PHI, including in accordance with HIPAA regulations, federal, state and local laws, and industry standards.

282.    Consumers of healthcare value their privacy, the privacy of their dependents, and the ability to keep their PII/PHI associated with obtaining healthcare private.  To customers such as Plaintiffs and Class members, healthcare that does not adhere to industry-standard data security protocols to protect PII/PHI is fundamentally less useful and less valuable than healthcare that adheres to industry-standard data security.  Plaintiffs and Class members would not have entered into these contracts with 21st Century and/or its affiliated healthcare providers as a direct or third party beneficiary without an understanding that their PII/PHI would be safeguarded and protected.

283.    A meeting of the minds occurred, as Plaintiffs and members of the Class provided their PII/PHI to 21st Century and/or its affiliated healthcare providers, and paid for the provided healthcare in exchange for, amongst other things, protection of their PII/PHI.

---

[82] *Id.*

284.     21st Century materially breached the terms of these express contracts, including but not limited to the terms stated in the relevant Notice of Privacy Practices.  21st Century did not "maintain the privacy" of Plaintiffs' and Class members' PII/PHI as "required by law" as evidenced by its notifications of the Data Breach to Plaintiffs and 2.2 million Class members.  Specifically, 21st Century did not comply with HIPAA, federal, state and local laws, or industry standards, or otherwise protect Plaintiffs' and the Class members' PII/PHI, as set forth above.  Further, on information and belief, 21st Century has not yet provided Data Breach notifications to some affected Class members who may already be victims of identity fraud or theft or are at imminent risk of becoming victims of identity theft or fraud associated with PII/PHI that they provided to 21st Century.  These Class members are as yet unaware of the potential source for the compromise of their PII/PHI.

285.     The Data Breach was a reasonably foreseeable consequence of 21st Century's actions in breach of these contracts.

286.     As a result of 21st Century's failure to fulfill the data security protections promised in these contracts, Plaintiffs and members of the Class did not receive the full benefit of the bargain, and instead received healthcare and other services that were of a diminished value to that described in the contracts.  Plaintiffs and Class members, therefore, were damaged in an amount at least equal to the difference in the value of the secure healthcare they paid for and the healthcare they received.

287.     Had 21st Century disclosed that its security was inadequate or that it did not adhere to industry-standard security measures, neither the Plaintiffs, the Class members, nor

any reasonable person would have purchased healthcare from 21st Century and/or its affiliated healthcare providers.

288.    As a result of 21st Century's breach, Plaintiffs and members of the Class suffered actual damages resulting from the theft of their PII/PHI, as well as the loss of control of their PII/PHI, and remain in imminent risk of suffering additional damages in the future.

289.    Also as a result of 21st Century's breach, Plaintiffs and the Class members have suffered actual damages resulting from their attempt to mitigate the effects of the breach of contract and subsequent Data Breach, including but not limited to, purchasing credit monitoring and taking other steps to protect themselves from the loss of their PII/PHI.

290.    Accordingly, Plaintiffs and the other members of the Class have been injured as a result of 21st Century's breach of contracts and are entitled to damages and/or restitution in an amount to be determined at trial.

**COUNT VI**
**BREACH OF IMPLIED CONTRACTS**
**(On Behalf of the Nationwide Class and Statewide Subclasses)**

291.    Plaintiffs incorporate all foregoing factual allegations as if fully set forth herein.

292.    Plaintiffs and Class members were required to provide their PII/PHI to obtain healthcare from affiliated providers of 21st Century, and/or 21st Century.  Plaintiffs and Class members entrusted their PII/PHI to 21st Century and/or its affiliated healthcare providers in order to obtain healthcare from them.

293.     By providing their PII/PHI, and upon 21st Century's acceptance of such information, Plaintiffs and Class members on one hand, and 21st Century on the other hand, entered into implied contracts for the provision of adequate data security, separate and apart from any express contracts concerning health care, whereby, 21st Century was obligated to take reasonable steps to secure and safeguard that information.

294.     21st Century had an implied duty of good faith to ensure that the PII/PHI of Plaintiffs and Class members in its possession was only used in accordance with their contractual obligations.

295.     21st Century was therefore required to act fairly, reasonably, and in good faith in carrying out its contractual obligations to protect the confidentiality of Plaintiffs' and Class members' PII/PHI and to comply with industry standards and state laws and regulations for the security of this information, and 21st Century Oncology expressly assented to these terms in its Notice of Privacy Practices as alleged above.

296.     Under these implied contracts for data security, 21st Century was further obligated to provide Plaintiffs and all Class members, with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII/PHI.

297.     Plaintiff and Class members performed all conditions, covenants, obligations, and promises owed to 21st Century, including paying for the medical care associated with 21st Century and/or providing the PII/PHI required to 21st Century and/or its affiliate providers.

298.     21st Century breached the implied contracts by failing to take adequate measures to protect the confidentiality of Plaintiffs' and Class members' PII/PHI, resulting in

the Data Breach.  21st Century unreasonably interfered with the contract benefits owed to Plaintiffs and Class members.

299.    Further, on information and belief, 21st Century has not yet provided Data Breach notifications to some affected Class members who may already be victims of identity fraud or theft or are at imminent risk of becoming victims of identity theft or fraud associated with the PII/PHI that they provided to 21st Century. These Class members are unaware of the potential source for the compromise of their PII/PHI.

300.    The Data Breach was a reasonably foreseeable consequence of 21st Century's actions in breach of these contracts.

301.    As a result of 21st Century's conduct, Plaintiffs and members of the Class did not receive the full benefit of the bargain, and instead received healthcare that was of a diminished value to the secure healthcare they paid for.  Plaintiffs and Class members, therefore, were damaged in an amount at least equal to the difference in the value of the secure healthcare they paid for and the healthcare they received.

302.    Neither Plaintiffs, Class members, nor any reasonable person would have provided their PII/PHI to 21st Century and/or its affiliate providers had 21st Century disclosed that its security was inadequate or that it did not adhere to industry-standard security measures.

303.    As a result of 21st Century's breach, Plaintiffs and members of the Class have suffered actual damages resulting from theft of their PII/PHI, as well as the loss of control of their PII/PHI, and remain in imminent risk of suffering additional damages in the future.

304.     Also as a result of 21st Century's breach, Plaintiffs and the Class members have suffered actual damages resulting from their attempt to mitigate the effect of the breach of implied contract and subsequent Data Breach, including but not limited to purchasing credit monitoring and taking other steps to protect themselves from the loss of their PII/PHI. As a result, Plaintiffs and the Class members have suffered actual identity theft and the ability to control their PII/PHI.

305.     Accordingly, Plaintiffs and Class members have been injured as a result of 21st Century's breach of implied contracts and are entitled to damages and/or restitution in an amount to be proven at trial.

## COUNT VII
## BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING
### (On Behalf of the Nationwide Class and Statewide Subclasses)

306.     Plaintiffs reallege and incorporate by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

307.     Plaintiffs and Class members entered into and/or were the beneficiaries of contracts with Defendants and their affiliates, as alleged above.

308.     These contracts were subject to implied covenants of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual obligations—both explicit and fairly implied—and would not impair the rights of the other parties to receive their rights, benefits, and reasonable expectations under the contracts.  These included the covenants that Defendants and their affiliates would act fairly, reasonably, and in good faith in carrying out their contractual obligations to protect the

confidentiality of Plaintiffs' and Class members' PII/PHI and to comply with industry standards and federal and state laws and regulations for the security of this information.

309.   Special relationships exist between Defendants and their affiliates and Plaintiffs and Class members.  Defendants and their affiliates entered into special relationships with Plaintiffs and Class members who entrusted their confidential PII/PHI to Defendants and their affiliates and paid for medical services with Defendants.

310.   Defendants and their affiliates promised and were obligated to protect the confidentiality of Plaintiffs' and Class Members' PII/PHI from disclosure to unauthorized parties.  Defendants breached the covenant of good faith and fair dealing by failing to take adequate measures to protect the confidentiality of Plaintiffs' and Class Members' PII/PHI, which resulted in the Data Breach.  Defendants unreasonably interfered with the contract benefits owed to Plaintiffs and Class members by failing to implement reasonable and adequate security measures consistent with industry standards to protect and limit access to the PII/PHI of Plaintiffs and the Class in Defendants' possession.

311.   Plaintiffs and Class Members performed all conditions, covenants, obligations, and promises owed to Defendants, including paying Defendants and their affiliates for medical services and providing them the confidential PII/PHI required by the contracts.

312.   As a result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiffs and Class members did not receive the full benefit of their bargain— medical services with reasonable data privacy—and instead received medical services that were less valuable than what they paid for and less valuable than their reasonable

expectations under the contracts.  Plaintiffs and Class members have suffered actual damages in an amount equal to the difference in the value between medical care with reasonable data privacy that Plaintiffs and Class members paid for, and the medical care they received without reasonable data privacy.

313.    As a result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiffs and Class members have suffered actual damages resulting from the theft of their PII/PHI and remain at imminent risk of suffering additional damages in the future.

314.    As a result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiffs and Class members have suffered actual damages resulting from their attempt to ameliorate the effect of the Data Breach, including but not limited to purchasing credit monitoring services or taking other steps to protect themselves from the loss of their PII/PHI.

315.    As a direct and proximate cause of Defendants' conduct, Plaintiffs and Class members suffered injury in fact and are therefore entitled to relief, including restitution, declaratory relief, and a permanent injunction enjoining Defendants from their conduct.

**COUNT VIII**
**BREACH OF FIDUCIARY DUTY**
**(On Behalf of the Nationwide Class and Statewide Subclasses)**

316.    Plaintiffs reallege and incorporate by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

317.     Defendants owed a fiduciary duty to Plaintiffs and the Class as guardians of their PII/PHI to (a) protect the PII/PHI belonging to Plaintiffs and members of the Class; and (b) timely notify them of the Data Breach.

318.     Defendants breached their fiduciary duty to Plaintiffs and the Class by (a) failing to adequately secure their PII/PHI from disclosure to unauthorized parties for improper purposes; (b) failing to take adequate actions to prevent disclosure of Plaintiffs' and Class members' PII/PHI to unauthorized parties in a manner that is highly offensive to a reasonable person; (c) failing to take adequate actions to prevent disclosure of Plaintiffs' and Class members' PII/PHI to unauthorized parties without the informed and clear consent of Plaintiffs and the Class; and (d) notifying Plaintiffs and the Class of the Data Breach five months after it had occurred and four months after Defendants had knowledge of the Data Breach..

319.     As a direct and proximate cause of Defendants' conduct, Plaintiffs and Class members suffered an injury in fact and are therefore entitled to relief, including restitution, declaratory relief, and a permanent injunction enjoining Defendants from their conduct.

### COUNT IX
### UNJUST ENRICHMENT
### (Alternative To Breach of Contract Claim)
### (On Behalf of the Nationwide Class and Statewide Subclasses)

320.     Plaintiffs reallege and incorporate by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

321.     Plaintiffs and Class members conferred a monetary benefit on Defendants in the form of monetary payments—directly or indirectly—for medical services received.

322.     Defendants collected, maintained, and stored the PII/PHI of Plaintiffs and Class members and, as such, Defendants had knowledge of the monetary benefits conferred by Plaintiffs and Class members.

323.     The money that Plaintiffs and Class members paid to Defendants should have been used to pay, at least in part, for the administrative costs and implementation of data security adequate to safeguard and protect the confidentiality of Plaintiffs' and Class members' PII/PHI.  Defendants failed to implement—or adequately implement—adequate data security practices, procedures, and programs to secure sensitive PII/PHI, as evidenced by the Data Breach.

324.     As a result of Defendants' failure to implement data security practices, procedures, and programs to secure sensitive PII/PHI, Plaintiffs and Class members suffered actual damages in an amount equal to the difference in the value between medical care with reasonable data privacy that Plaintiffs and Class members paid for, and the medical care they received without reasonable data privacy.

325.     Under principles of equity and good conscience, Defendants should not be permitted to retain the money belonging to Plaintiffs and Class members because Defendants failed to implement the data security measures adequate to safeguard and protect the confidentiality of Plaintiffs' and Class members' PII/PHI and that Plaintiffs and Class members paid for.

326.     Defendants should be compelled to disgorge into a common fund for the benefit of Plaintiffs and the Class all unlawful or inequitable proceeds received by

Defendants.  A constructive trust should be imposed upon all unlawful and inequitable sums received by Defendants traceable to Plaintiffs and the Class.

**COUNT X**
**INVASION OF PRIVACY**
**(On Behalf of the Nationwide Class and Statewide Subclasses)**

327.    Plaintiffs reallege and incorporate by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

328.    Plaintiffs and Class members reasonably expected that their PII/PHI would be protected and secured from unauthorized parties, would not be disclosed to any unauthorized parties or disclosed for any improper purpose.

329.    Defendants unlawfully invaded the privacy rights of Plaintiffs and the Class by (a) failing to adequately secure their PII/PHI from disclosure to unauthorized parties for improper purposes; (b) disclosing their PII/PHI to unauthorized parties in a manner that is highly offensive to a reasonable person; and (c) disclosing their PII/PHI to unauthorized parties without the informed and clear consent of Plaintiffs and the Class.

330.    In failing to adequately secure Plaintiffs' and Class members' PII/PHI, Defendants acted in reckless disregard of their privacy rights. Defendants knew or should have known that their substandard data security measures are highly offensive to a reasonable person in the same position as Plaintiffs and Class members.

331.    Defendants violated Plaintiffs' and Class members' right to privacy under the common law as well as under state law, including but not limited to the California Constitution, Article I, Section I.

332.     As a direct and proximate result of Defendants' unlawful invasions of privacy, Plaintiffs' and Class members' PII/PHI has been viewed or is at imminent risk of being viewed, and their reasonable expectations of privacy have been intruded upon and frustrated. Plaintiffs and the Class have suffered injury as a result of Defendants' unlawful invasions of privacy and are entitled to appropriate relief.

**COUNT XI**
**DECLARATORY JUDGMENT**
**(On Behalf of the Nationwide Class and Statewide Subclasses)**

333.     Plaintiffs reallege and incorporate by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

334.     Plaintiffs and the Class have stated claims against Defendants based on negligence, negligence per se, gross negligence negligent misrepresentation, breach of express contract, breach of implied contracts, breach implied duty of good faith and fair dealing, breach of fiduciary duty, unjust enrichment, invasion of privacy and violations of various state and federal statutes.

335.     Defendants failed to fulfill their obligations to provide adequate and reasonable data security measures for the PII/PHI of Plaintiffs and the Class, as evidenced by the Data Breach.

336.     As a result of the Data Breach, Defendants' system is more vulnerable to unauthorized access and requires more stringent measures to be taken to safeguard the PII/PHI of Plaintiffs and the Class going forward.

337.     An actual controversy has arisen in the wake of the Data Breach regarding Defendants' current obligations to provide data security measures adequate to protect the

PII/PHI of Plaintiffs and the Class.  Defendants maintain that their security measures were—and still are—reasonably adequate and denies that they previously had or have any obligation to implement better safeguards to protect the PII/PHI of Plaintiffs and the Class.

338.    Plaintiffs seek a declaration that Defendants must implement specific additional, prudent, industry-standard data security practices to provide reasonable protection and security to the PII/PHI of Plaintiffs and the Class.  Specifically, Plaintiffs and the Class seek a declaration that Defendants' existing security measures do not comply with their obligations, and that Defendants must implement and maintain reasonable data security measures on behalf of Plaintiffs and the Class to comply with their data security obligations.

**COUNT XII**
**Violations of the Arizona Consumer Fraud Act**
**Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq.***
**(On Behalf of the Arizona Subclass)**

339.    Plaintiffs incorporate all foregoing factual allegations as if fully set forth herein.

340.    The Arizona Consumer Fraud Act prohibits "any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged."

341.    Plaintiff and members of the Arizona Subclass are "persons" as defined by Ariz. Rev. Stat. § 44-1521(6).

342.    Pursuant to Ariz. Rev. Stat. §§ 44-1521(5) and (7), Defendants engaged in the sale of "merchandise" in the form of medical services.

343.    Defendants engaged in deceptive acts or practices by representing to Plaintiff and the Arizona Subclass that they maintain data security practices and procedures to safeguard Arizona Subclass members' PII/PHI from unauthorized disclosure, release, data breaches, and theft, and that they would comply with relevant federal and state laws pertaining to the privacy and security of PII/PHI.  Plaintiff and the Arizona Subclass members were misled by Defendants' misrepresentations and reasonably relied upon them to their detriment.  Had Plaintiff and the Arizona Subclass members known about Defendants' substandard data security practices, they would not have provided their PII/PHI to Defendants or they would have taken steps to protect themselves from harm that could result from Defendants' substandard data security practices.

344.    Defendants engaged in deceptive acts or practices by omitting, suppressing, and concealing the material fact of the inadequacy of their data security protections for the PII/PHI of Plaintiff and the Arizona Subclass.  At the time that Plaintiff and Arizona Subclass members provided Defendants their PII/PHI in exchange for medical services, Defendants failed to disclose to Plaintiff and the Arizona Subclass that Defendants' data security systems failed to meet legal and industry standards to protect their PII/PHI.  Had Plaintiff and the Arizona Subclass members known about Defendants' substandard data security practices, they would not have provided their PII/PHI to Defendants or they would have taken steps to protect themselves from harm that could result from Defendants' substandard data security practices.

345.    21st Century knew, or should have known, that its computer systems and data security practices and measures failed to meet legal and industry standards to protect the

PII/PHI of Plaintiff and the Arizona Subclass, were inadequate to safeguard the PII/PHI of

Plaintiff and the Arizona Subclass, and that the risk of a data breach or theft was highly

likely, including, but not limited to, its notice of the 2011-2012 Data Breach, as described

above, and the lack of employing any adequate data security measures to prevent another

breach thereafter.  21st Century's actions in engaging in the above-named unfair practices

and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with

respect to the rights of Plaintiff and Arizona Subclass members.  Defendants' failure to

disclose such material information rendered their representations of their data security

practices as likely to deceive a reasonable consumer.  Defendants knew such facts would (a)

be unknown to and not easily discoverable by Plaintiff and members of the Arizona Subclass;

and (b) defeat Plaintiff's and the Arizona Subclass members' ordinary, foreseeable and

reasonable expectations concerning the adequacy of Defendants' data security.

346.    An objective, reasonable person would have been deceived by 21st Century's

representations about the security and protection of data in its databases and networks.

347.    Defendants intended that Plaintiff and the Arizona Subclass rely on their

deceptive and unfair acts and practices, misrepresentations, and the concealment,

suppression, and omission of material facts, in connection with 21st Century's offering of

medical services and incorporating Plaintiff's and the Arizona Subclass members' sensitive

information on its computer systems, in violation of the Arizona Consumer Fraud Act.

348.    Defendants also engaged in unfair acts and practices, in connection with the

sale of medical services by failing to maintain the data security of Plaintiffs' and the Arizona

Subclass members' PII/PHI in violation of duties imposed by and public policies reflected in

applicable federal and state laws, resulting in the Data Breach.  These unfair acts and

practices violated duties imposed by laws including HIPAA (42 U.S.C. § 1302d, *et seq.*).

349.    Defendants' wrongful practices, which occurred in the course of trade or

commerce, were and are injurious to the public interest because those practices were part of a

generalized course of conduct on the part of Defendants that applied to Plaintiff and the

Arizona Subclass and were repeated continuously before and after Defendants obtained

confidential PII/PHI concerning Plaintiff and Arizona Subclass members, all of whom have

been adversely affected by Defendants conduct and the public was and is at risk as a result

thereof.

350.    21st Century's acts, omissions, and practices proximately caused Plaintiff and

Arizona Subclass members to suffer damages including incurring costs associated with

protecting PII/PHI that has been exposed; costs associated with the theft of their identities,

such as time and expenses associated with credit monitoring, decrease in credit ratings,

financial harm suffered as a result of accounts opened and used without their knowledge or

authorization, and time and expense associated with closing accounts opened and used

without their knowledge or authorization.  Plaintiffs and Arizona Subclass members also

suffered damages in that they did not obtain the value of the goods and services for which

they paid; were induced to pay for (or pay more for) medical goods and services that they

otherwise would not have; and they lost their ability to make informed and reasoned

decisions about their medical treatment.

351.    As a direct and proximate result of Defendants' unfair and deceptive practices,

Plaintiff and members of the Arizona Subclass have suffered injuries to legally protected

interests, as described above, including but not limited to their legally protected interest in

the confidentiality and privacy of their PII/PHI, including confidential medical records, time

and expenses related to monitoring their financial accounts for fraudulent activity, and

increased, imminent risk of fraud and identity theft, and loss of value of their PII/PHI.

352.    As a direct and proximate cause of these practices, Plaintiff and Arizona

Subclass members suffered an ascertainable loss.

353.    The above unfair and deceptive trade practices and acts by 21st Century were

immoral, unethical, oppressive, and unscrupulous.  These acts caused substantial injury to

Plaintiff and Arizona Subclass members that they could not reasonably avoid; this substantial

injury outweighed any benefits to consumers or to competition.  These acts were within

common law, statutory, or other established concepts of fairness.

354.    As a direct and proximate result of 21st Century's unlawful, unfair, and

fraudulent business practices, Plaintiff and members of the Arizona Subclass have suffered

injury in fact, and are therefore entitled to relief, including restitution, declaratory relief, and

a permanent injunction enjoining 21st Century from their unlawful and unfair practices.  21st

Century's conduct caused and continues to cause substantial injury to Plaintiff and Arizona

Subclass members.  21st Century will continue to maintain Plaintiff's and Arizona Subclass

members' PII/PHI for the indefinite future.  Unless injunctive relief is granted, Plaintiff and

Arizona Subclass members, who do not have an adequate remedy at law, will continue to

suffer harm, and the balance of equities favors Plaintiff and Arizona Subclass members.

355.    Plaintiff and Arizona Subclass members seek declaratory and injunctive relief

as permitted by law or equity to assure that the Plaintiff and the Arizona Subclass have an

effective remedy, including enjoining 21st Century from continuing the unlawful practices as set forth above, along with any other relief the Court deems just and proper under Ariz. Rev. Stat. § 44-1521.

356.    Plaintiff and the Arizona Subclass also seek reasonable attorneys' fees and costs under applicable law including Federal Rule of Civil Procedure 23 and the Arizona private attorney general doctrine *See Arnold v. Ariz. Dep't of Health Servs.*, 160 Ariz. 593, 609 (1989); *Ariz. Ctr. for Law in the Pub. Interest v. Hassell*, 172 Ariz. 356, 371 (App. 1991).

## COUNT XIII
### Violations of the California Confidentiality of Medical Information Act
### Cal. Civ. Code § 56, *et seq.*
### (On Behalf of the California Subclass)

357.    Plaintiffs incorporate all foregoing factual allegations as if fully set forth herein.

358.    California's Confidentiality of Medical Information Act ("CMIA") requires a healthcare provider "who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information [to] do so in a manner that preserves the confidentiality of the information contained therein." Cal. Civ. Code § 56.101. "Every provider of health care, health care service plan, pharmaceutical company, or contractor who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to the remedies and penalties provided under subdivisions (b) and (c) of Section 56.36." *Id.*

359.     The CMIA further requires that "[a]n electronic health record system or electronic medical record system . . . [p]rotect and preserve the integrity of electronic medical information." Cal. Civ. Code § 56.101(b)(1)(A).

360.     Plaintiffs and California Subclass members are "patient[s]," "whether or not still living, who received health care services from a provider of health care and to whom medical information pertains" pursuant to § 56.05(k) of the CMIA.

361.     21st Century is a "provider of healthcare" pursuant to § 56.05(m) of the CMIA "who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information."

362.     21st Century is subject to the requirements and mandates of the CMIA.

363.     The PHI of Plaintiffs and California Subclass members compromised in the Data Breach constitutes "medical information" maintained in electronic form pursuant to § 56.05(j) of the CMIA.

364.     21st Century violated § 56.36(b) of the CMIA by negligently maintaining, preserving, storing and releasing the PHI of Plaintiffs and California Subclass members, and failing to protect and preserve the integrity of the PHI of Plaintiffs and California Subclass members.

365.     Plaintiffs and California Subclass members did not authorize 21st Century's disclosure and release of their PHI that occurred in the Data Breach.

366.     As a result of the Data Breach, the PHI of Plaintiffs and California Subclass members was compromised when it was acquired and accessed by unauthorized parties.

367.     21st Century violated the CMIA by negligently (1) failing to implement reasonable administrative, physical and technical safeguards to protect, secure and prevent the unauthorized access to, and acquisition of, Plaintiffs' and California Subclass members' PHI; (2) failing to implement reasonable data security measures, such as intrusion detection processes that detect data breaches in a timely manner, to protect and secure Plaintiffs' and California Subclass members' PHI; (3) failing to use reasonable authentication procedures to track PHI in case of a security breach; and (4) allowing undetected and unauthorized access to servers, networks and systems where Plaintiffs' and California Subclass members' PHI was kept, all in violation of the CMIA.

368.     21st Century's failure to implement adequate data security measures to protect the PHI of Plaintiffs and California Subclass members was a substantial factor in allowing unauthorized parties to access 21st Century's computer systems and acquire the PHI of Plaintiffs and California Subclass members.

369.     As a direct and proximate result of 21st Century's violation of the CMIA, 21st Century allowed the PHI of Plaintiffs and California Subclass members to: (a) escape and spread from its normal place of storage through unauthorized disclosure or release; and (b) be accessed and acquired by unauthorized parties in order to, on information and belief, view, mine, exploit, use, and/or profit from their PHI, thereby breaching the confidentiality of their PHI. Plaintiffs and California Subclass members have accordingly sustained and will continue to sustain actual damages as set forth above.

370.     Plaintiffs, individually and on behalf of California Subclass members, seek actual and statutory damages pursuant to § 56.36(b)(1) of the CMIA.

371.    Plaintiffs also seek reasonable attorneys' fees and costs under applicable law including Federal Rule of Civil Procedure 23, Civil Code § 56.35, and California Code of Civil Procedure § 1021.5.

**COUNT XIV**
**Violations of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On Behalf of the California Subclass)**

372.    Plaintiffs incorporate all foregoing factual allegations as if fully set forth herein.

373.    California's Unfair Competition Law ("UCL"), California Business & Professions Code § 17200, *et seq.*, provides for relief where a defendant's acts, omissions, and practices are shown to be unlawful, unfair, and fraudulent.  21st Century's acts, omissions, and practices constitute unlawful and unfair business practices in violation of the UCL.

374.    21st Century's acts, omissions, and practices constitute unlawful practices and in violation of the Customer Records Act, the CMIA, HIPAA, California Civil Code §§ 1572, 1573, 1709, 1711, 1798.82, 1798.84; California Business & Professions Code §§ 17200, *et seq.*; California Business & Professions Code 17500, *et seq.*, and California common law because 21st Century failed to take adequate security measures in protecting the confidentiality of Plaintiffs' PII/PHI, 21st Century unreasonably delayed informing Plaintiffs and the California Subclass about the Data Breach, and 21st Century negligently released Plaintiffs' and California Subclass members' PII/PHI that was within its possession and control.

375.    21st Century's acts, omissions, and conduct, including those of Defendant 21st Century Oncology of California, a Medical Corporation, also constitute unlawful practices because they failed to comport with a reasonable standard of care and public policy as reflected in statutes such as the Information Practices Act of 1977, the Customer Records Act, CMIA, and HIPAA, which seek to protect individuals' data and ensure that entities who solicit or are entrusted with personal or medical data utilize reasonable data security measures.  21st Century engaged in conduct that undermines or violates the stated policies underlying the California Customer Records Act and other privacy statutes.  For instance, in enacting the Customer Records Act, the California Legislature stated that "[i]dentity theft is costly to the marketplace and to consumers" and that "victims of identity theft must act quickly to minimize the damage; therefore expeditious notification of possible misuse of a person's personal information is imperative." 2002 Cal. Legis. Serv. Ch. 1054 (A.B. 700) (WEST).  Similarly, the Information Practices Act of 1977 was enacted to protect individuals' data and ensure that entities who solicit or are entrusted with personal data use reasonable security measures.

376.    21st Century's acts, omissions, and conduct also constitute unfair business acts or practices because they offend public policy and constitute immoral, unethical, and unscrupulous activities that caused substantial injury, including to Plaintiffs and California Subclass members.  The gravity of harm resulting from 21st Century's conduct outweighs any potential benefits attributable to the conduct and there were reasonably available alternatives to further 21st Century's legitimate business interests.  21st Century's conduct undermines public policy reflected in statutes such as HIPAA and the CMIA.

377.    21st Century's acts, omissions, and conduct further constitute unfair business acts or practices because Plaintiffs and California Subclass members have been substantially injured by the negligent release of their PII/PHI, which outweighs any countervailing benefits to Plaintiffs and California Subclass members.  Plaintiffs and California Subclass members could not have reasonably avoided their substantial injuries because they were required to provide 21st Century with their PII/PHI to receive medical services.

378.    21st Century engaged in fraudulent business acts or practices by representing to Plaintiffs and California Subclass members that they maintain adequate data security practices and procedures to safeguard PII/PHI from unauthorized disclosure, release, data breaches, and theft, and that they would comply with relevant federal and state laws pertaining to the privacy and security of PII/PHI.  Plaintiffs and California Subclass members were misled by 21st Century's misrepresentations and reasonably relied upon them to their detriment.  Had Plaintiffs and California Subclass members known about 21st Century's substandard data security practices, they would not have provided their PII/PHI to 21st Century or they would have taken steps to protect themselves from harm that could result from 21st Century's substandard data security practices.

379.    21st Century engaged in fraudulent business acts or practices by omitting, suppressing, and concealing the material fact of the inadequacy of the data security protections for the PII/PHI of Plaintiffs and California Subclass members.  At the time that Plaintiffs and California Subclass members provided 21st Century their PII/PHI for medical services, 21st Century failed to disclose to Plaintiffs and California Subclass members that 21st Century's computer systems and data security practices and measures failed to meet

legal and industry standards, were inadequate to safeguard their PII/PHI and that the risk of

data breach or theft was highly likely, including, but not limited to, its notice of the 2011-

2012 Data Breach, as described above, and the lack of employing any adequate security

measures to prevent another breach thereafter.  Had Plaintiffs and California Subclass

members known about Defendants' substandard data security practices, they would not have

provided their PII/PHI to 21st Century or they would have taken steps to protect themselves

from harm that could result from 21st Century's substandard data security practices.

380.   21st Century's actions in engaging in the above-named unfair practices and

deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect

to the rights of Plaintiffs and California Subclass members.  Defendants' failure to disclose

such material information rendered their representations of their data security practices as

likely to deceive a reasonable consumer.  Defendants knew such facts would (a) be unknown

to and not easily discoverable by Plaintiffs and members of the California Subclass; and (b)

defeat Plaintiff's and the California Subclass members' ordinary, foreseeable and reasonable

expectations concerning the security of Defendants' data systems.

381.   An objective, reasonable person would have been deceived by 21st Century's

representations about the security and protection of data in its databases and networks.

382.   As a direct and proximate result of 21st Century's unlawful, unfair, and

fraudulent business practices, Plaintiffs and members of the California Subclass have

suffered injury in fact, and are therefore entitled to relief, including restitution, declaratory

relief, and a permanent injunction enjoining 21st Century from their unlawful and unfair

practices.  21st Century's conduct caused and continues to cause substantial injury to

Plaintiffs and California Subclass members.  21st Century will continue to maintain Plaintiffs' and California Subclass members' PII/PHI for the indefinite future.  Unless injunctive relief is granted, Plaintiffs and California Subclass members, who do not have an adequate remedy at law, will continue to suffer harm, and the balance of equities favors Plaintiffs and California Subclass members.

383.    Plaintiffs and California Subclass members seek declaratory and injunctive relief as permitted by law or equity to assure that the Plaintiffs and the California Subclass have an effective remedy, including enjoining 21st Century from continuing the unlawful practices as set forth above, along with any other relief the Court deems just and proper under the UCL.

384.    Plaintiffs also seek reasonable attorneys' fees and costs under applicable law including Federal Rule of Civil Procedure 23 and California Code of Civil Procedure § 1021.5.

### COUNT XV
### Violations of the California Customer Records Act
### Cal. Civ. Code § 1798.81.5, *et seq.*
### (On Behalf of the California Subclass)

385.    Plaintiffs incorporate all foregoing factual allegations as if fully set forth herein.

386.    Plaintiffs bring this cause of action on behalf of the California Subclass.

387.    The California Legislature enacted California Civil Code § 1798.81.5 "to ensure that personal information about California residents is protected." The statute requires that any business that "owns, licenses, or maintains personal information about a California resident . . . implement and maintain reasonable security procedures and practices

appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure." 21st Century is a "business" as defined by California Civil Code § 1798.80(a).

388.    Plaintiffs and California Subclass members are each a "customer" pursuant to Civil Code § 1798.80(c) as they each "provide[d] personal information to [Defendants] for the purpose of . . . obtaining a service from [Defendants]."

389.    Plaintiffs and California Subclass members are each also an "individual" as defined by Civil Code § 1798.80(d).

390.    The PII/PHI compromised in the Data Breach constitutes "personal information" as defined by California Civil Code §§ 1798.80(e) and 1798.81.5(d), which includes "information that identifies, relates to, describes, or is capable of being associated with, a particular individual, including, but not limited to, his or her name, signature, Social Security number, physical characteristics or description, address, telephone number, . . . insurance policy number, . . . bank account number, credit card number, debit card number, or any other financial information, medical information, or health insurance information."

391.    As defined by California Civil Code § 1798.82(g), the Data Breach constitutes a "breach of the security of the system" of 21st Century "that compromise[d] the security, confidentiality, or integrity of personal information maintained by [21st Century]."

392.    By failing to implement reasonable data security measures appropriate to the nature of the personal information of its current and former patients and customers, 21st Century violated California Civil Code § 1798.81.5.

393.    21st Century further violated California Civil Code § 1798.82 by failing to

notify all affected individuals that their PII/PHI had been acquired, or reasonably believed to

have been acquired, by unauthorized persons in the Data Breach without unreasonable delay.

Instead, 21st Century waited five months after the Data Breach had occurred, and four

months after receiving knowledge of the Data Breach, before notifying Plaintiffs and

California Subclass members.  Timely disclosure of the Data Breach would have allowed

Plaintiffs and California Subclass members to take appropriate measures to protect

themselves from or ameliorate the damages caused by the Data Breach, including placing

security freezes on their credit before any fraudulent accounts could be opened in their names

using their Social Security numbers and other PII/PHI, obtaining credit monitoring services,

monitoring their PII/PHI and credit reports for fraudulent activity, and contacting

government agencies and the local police.

394.    As a result of 21st Century's violations of Civil Code §§ 1798.81.5 and

1798.82, Plaintiffs and California Subclass members have sustained and will continue to

sustain actual damages as set forth above.

395.    Plaintiffs seek all remedies available under California Civil Code § 1798.84,

including actual and statutory damages, equitable relief, and reasonable attorneys' fees.

Plaintiffs also seek reasonable attorneys' fees and costs under applicable law including

Federal Rule of Civil Procedure 23 and California Code of Civil Procedure § 1021.5.

396.    Due to 21st Century's violations of California Civil Code §§ 1798.81.5 and

1798.82, Defendants "may be enjoined" under § 1798.84(e) of the same title.  Accordingly,

Plaintiffs seek an injunction requiring Defendants to formulate, adopt, and implement a data

security plan that prevents unauthorized access to PII/PHI.  21st Century's conduct caused and continues to cause substantial injury to Plaintiffs and California Subclass members.  21st Century will continue to maintain Plaintiffs' and California Subclass members' PII/PHI for the indefinite future.  Unless injunctive relief is granted, Plaintiffs and California Subclass members, who do not have an adequate remedy at law, will continue to suffer harm, and the balance of equities favors Plaintiffs and California Subclass members.

397.    Plaintiffs and California Subclass members seek declaratory and injunctive relief as permitted by law or equity to assure that the Plaintiffs and the California Subclass have an effective remedy, including enjoining 21st Century from continuing the unlawful practices as set forth above, along with any other relief the Court deems just and proper under California Civil Code § 1798.84(e).

**COUNT XVI**
**Violations of the California Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750, *et seq.***
**(On Behalf of the California Subclass)**

398.    Plaintiffs incorporate all foregoing factual allegations as if fully set forth herein.

399.    Plaintiffs bring this cause of action on behalf of the California Subclass.

400.    The Consumers Legal Remedies Act, California Civil Code § 1750, *et seq*. (the "CLRA") has adopted a comprehensive statutory scheme prohibiting various deceptive practices in connection with the conduct of a business providing goods, property, or services to consumers primarily for personal, family, or household purposes.  The self-declared purposes of the CLRA are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.

102

401.    Defendants are "persons" within the meaning of California Civil Code §
1761(c), and provided "services" within the meaning of California Civil Code § 1761(b).

402.    Plaintiffs and California Subclass members are "consumers" within the
meaning of California Civil Code § 1761(d) who engaged in a "transaction" within the
meaning of California Civil Code § 1761(e).

403.    Section 1770(a)(5) of the CLRA prohibits any entity from "[r]epresenting that
goods or services have . . . characteristics, . . . benefits . . . which they do not have . . . ." 21st
Century represented that their data security practices and procedures were adequate to secure
Plaintiffs' and California Subclass members' PII/PHI when in fact its data security systems
were susceptible to breach, as evidenced by the occurrence of the Data Breach.

404.    Section 1770(a)(7) of the CLRA prohibits anyone from "[r]epresenting that
goods or services are of a particular standard, quality, or grade, . . . if they are of another."
21st Century represented that their data security practices and procedures were adequate to
secure Plaintiffs' and California Subclass members' PII/PHI when in fact its data security
systems were susceptible to breach, as evidenced by the occurrence of the Data Breach.

405.    21st Century knew, or should have known, that its computer systems and data
security practices and measures failed to meet legal and industry standards, were inadequate
to safeguard the PII/PHI of Plaintiffs and California Subclass members and that the risk of
data breach or theft was highly likely, including but not limited to, its notice of the 2011-
2012 Data Breach, as described above, and the lack of employing any adequate data security
measures to prevent another breach thereafter.  Had Plaintiffs known about 21st Century's
substandard data security practices, they would not have provided their PII/PHI to 21st

Century or they would have taken steps to protect themselves from harm that could result from 21st Century's substandard data security practices.  21st Century's failure to disclose such material information rendered their representations of their data security practices as likely to deceive a reasonable consumer.

406.     An objective, reasonable person would have been deceived by 21st Century's representations about the security and protection of data in its databases and networks.

407.     A written pre-suit demand under California Civil Code § 1782(a) is unnecessary and unwarranted because 21st Century has had notice of Plaintiffs' allegations, claims and demands through the filing of numerous underlying actions arising from the Data Breach since March 18, 2016.  Any pre-suit notice would not put 21st Century in a better position to evaluate those claims.

408.     As a direct and proximate result of 21st Century's violations of the CLRA, Plaintiffs and California Subclass members have suffered injury in fact and are therefore entitled to relief, including restitution, declaratory relief, and a permanent injunction enjoining 21st Century from their unlawful practices.  21st Century's conduct caused and continues to cause substantial injury to Plaintiffs and California Subclass members.  21st Century will continue to maintain Plaintiffs' and California Subclass members' PII/PHI for the indefinite future.  Unless injunctive relief is granted, Plaintiffs and California Subclass members, who do not have an adequate remedy at law, will continue to suffer harm, and the balance of equities favors Plaintiffs and California Subclass members.

409.     Plaintiffs and California Subclass members seek declaratory and injunctive relief as permitted by law or equity to assure that the Plaintiffs and the California Subclass

have an effective remedy, including enjoining 21st Century from continuing the unlawful

practices as set forth above, along with any other relief the Court deems just and proper

under CLRA.

410.    Plaintiffs also seek reasonable attorneys' fees and costs under applicable law

including Federal Rule of Civil Procedure 23 and California Code of Civil Procedure §

1021.5.

## COUNT XVII
### Violations of the Florida Deceptive and Unfair Trade Practices Act,
### Fla. Stat. § 501.201, *et seq.*
### (On Behalf of the Florida Subclass)

411.    Plaintiffs incorporate all foregoing factual allegations as if fully set forth

herein.

412.    21st Century's business practices alleged herein constitute unfair and/or

deceptive methods, acts, or practices under the Florida Deceptive and Unfair Trade Practices

Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA").

413.    At all relevant times, Florida Subclass members were "consumers" within the

meaning of the FDUTPA, Fla. Stat. § 501.203(7).

414.    21st Century's conduct occurred in the conduct of "trade and commerce"

within the meaning of the FDUTPA, Fla. Stat. § 501.203(8).

415.    21st Century's practices violate the FDUTPA by engaging in unconscionable,

deceptive, unfair acts or practices, including, but not limited to:

        a.  Failing to maintain adequate and reasonable data security standards to

            safeguard Florida Subclass members' PI/PHI from unauthorized disclosure,

release, data breaches, and theft, in violation of state and federal laws and its own privacy practices and policies;

b. Knowingly and fraudulently misrepresenting that it would maintain adequate and reasonable data security standards for Florida Subclass members' PII/PHI and safeguard Florida Subclass members' PII/PHI from unauthorized disclosure, release, data breaches, and theft;

c. Knowingly omitting, suppressing, and concealing the inadequacy of its data security protections for the Florida Subclass members' PII/PHI;

d. Failing to disclose the Data Breach to the Florida Subclass members in a timely and accurate manner, in violation of Fla. Stat. § 501.171(4); and

e. Failing to maintain the privacy of medical records and medical information, in violation of Fla. Stat. § 456.057.

416. 21st Century knew or should have known that its computer systems and data security practices and measures failed to meet legal and industry standards, were inadequate to safeguard the Plaintiffs' and Florida Subclass members' PII/PHI and that the risk of a data breach or theft was highly likely, including, but not limited to, its notice of the 2011-2012 Data Breach, as described above, and the lack of employing any adequate security measures to prevent another breach thereafter.

417. 21st Century's actions were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiffs and members of the Florida Subclass members. Defendants' failure to disclose such material information rendered their representations of their data security practices as likely to deceive a reasonable consumer.

Defendants knew such facts would (a) be unknown to and not easily discoverable by Plaintiffs and members of the Florida Subclass; and (b) defeat Plaintiffs' and the Florida Subclass members' ordinary, foreseeable and reasonable expectations concerning the security of Defendants' data systems.

418.    An objective, reasonable person would have been deceived by 21st Century's representations about the security and protection of data in its databases and networks.

419.    Defendants' wrongful practices, which occurred in the course of trade or commerce, were and are injurious to the public interest because those practices were part of a generalized course of conduct on the part of Defendants that applied to Plaintiffs and the Florida Subclass and were repeated continuously before and after Defendants obtained confidential PII/PHI concerning Plaintiff and Florida Subclass members, all of whom have been adversely affected by Defendants conduct and the public was and is at risk as a result thereof.

420.    21st Century's acts, omissions, and practices proximately caused Plaintiffs and Florida Subclass members to suffer damages including incurring costs associated with protecting PII/PHI that has been exposed; costs associated with the theft of their identities, such as time and expenses associated with credit monitoring, decrease in credit ratings, financial harm suffered as a result of accounts opened and used without their knowledge or authorization, and time and expense associated with closing accounts opened and used without their knowledge or authorization.  Plaintiffs and Florida Subclass members also suffered damages in that they did not obtain the value of the goods and services for which they paid; were induced to pay for (or pay more for) medical goods and services that they

otherwise would not have; and they lost their ability to make informed and reasoned decisions about their medical treatment.

421.    As a direct and proximate result of Defendants' unfair and deceptive practices, Plaintiffs and Florida Subclass members also suffered injuries to legally protected interests, as described above, including but not limited to their legally protected interest in the confidentiality and privacy of their PII/PHI, including confidential medical records, time and expenses related to monitoring their financial accounts for fraudulent activity, and increased, imminent risk of fraud and identity theft, and loss of value of their PII/PHI.

422.    As a direct and proximate cause of these practices, Plaintiff and Florida Subclass members suffered an ascertainable loss.

423.    The above unfair and deceptive trade practices and acts by 21st Century were immoral, unethical, oppressive, and unscrupulous.  These acts caused substantial injury to Plaintiffs and Florida Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.  These acts were within common law, statutory, or other established concepts of fairness.

424.    As a direct and proximate result of 21st Century's unlawful, unfair, and fraudulent business practices, Plaintiffs and members of the Florida Subclass have suffered injury in fact, and are therefore entitled to relief, including restitution, declaratory relief, and a permanent injunction enjoining 21st Century from their unlawful and unfair practices.

425.    Plaintiffs and the Florida Subclass seek actual damages under Fla. Stat. § 501.211(2) and all fees, costs, and expenses allowed by law, including attorney's fees and

costs, pursuant to Federal Rule of Civil Procedure 23 and Fla. Stat. §§ 501.2105 and 501.211, to be proven at trial.

426.    Plaintiffs and the Florida Subclass also seek injunctive and declaratory relief, including an order that 21st Century immediately cease and desist its unfair and deceptive acts and practices, under Florida Statutes § 501.211.

427.    21st Century's conduct caused and continues to cause substantial injury to Plaintiffs and Florida Subclass members.  21st Century will continue to maintain Plaintiffs' and Florida Subclass members' PII/PHI for the indefinite future.  Unless injunctive relief is granted, Plaintiffs and Florida Subclass members, who do not have an adequate remedy at law, will continue to suffer harm, and the balance of equities favors Plaintiffs and Florida Subclass members.

428.    Plaintiffs and Florida Subclass members seek declaratory and injunctive relief as permitted by law or equity to assure that the Plaintiffs and the Florida Subclass have an effective remedy, including enjoining 21st Century from continuing the unlawful practices as set forth above, along with any other relief the Court deems just and proper under FDUTPA.

### COUNT XVIII
### Violations of the Kentucky Consumer Protection Act
### Ky. Rev. Stat. §§ 367.170, *et seq.*
### (On Behalf of the Kentucky Subclass)

429.    Plaintiff incorporates all foregoing factual allegations as if fully set forth herein.

430.    Plaintiff brings this claim on behalf of herself and the Kentucky Subclass.

431.    The Kentucky Consumer Protection Act prohibits "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

432.     Pursuant to Kentucky Revised Statute Section 367.110(2), Defendants engaged in "trade" or "commerce" by through the advertisement, sale, and provision of medical services that directly or indirectly affected the people of the Commonwealth of Kentucky.

433.     Defendants engaged in deceptive acts or practices by representing to Plaintiff and the Kentucky Subclass that they maintain adequate data security practices and procedures to safeguard Plaintiff's and Kentucky Subclass' PII/PHI from unauthorized disclosure, release, data breaches, and theft, and that they would comply with relevant federal and state laws pertaining to the privacy and security of PII/PHI.  Plaintiff and the Kentucky Subclass were misled by Defendants' misrepresentations and reasonably relied upon them to their detriment.  Had Plaintiff and the Kentucky Subclass members known about Defendants' substandard data security practices, they would not have provided their PII/PHI to Defendants or they would have taken steps to protect themselves from harm that could result from Defendants' substandard data security practices.

434.     Defendants engaged in deceptive acts or practices by omitting, suppressing, and concealing the material fact of the inadequacy of the privacy and security protections for the PII/PHI of Plaintiff and the Kentucky Subclass.  At the time that Plaintiff and members of the Kentucky Subclass provided Defendants their PII/PHI for medical services, Defendants failed to disclose to Plaintiff and the Kentucky Subclass that Defendants' data security systems failed to meet legal and industry standards to protect their PII/PHI.  Had Plaintiff and the Subclass known about Defendants' substandard data security practices, they would not

have provided their PII/PHI to Defendants or they would have taken steps to protect themselves from harm that could result from Defendants' substandard data security practices.

435.    21st Century knew, or should have known, that its data security systems failed to meet legal and industry standards to protect the PII/PHI of Plaintiff and the Kentucky Subclass, were inadequate to safeguard the PII/PHI of Plaintiff and the Kentucky Subclass, and that the risk of a data breach or theft was highly likely, including, but not limited to, its notice of the 2011-2012 Data Breach, as described above, and the lack of employing any adequate security measures to prevent another breach thereafter.  21st Century's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and Kentucky Subclass members.

436.    Defendants' failure to disclose such material information rendered their representations of their data security practices as likely to deceive a reasonable consumer. Defendants knew such facts would (a) be unknown to and not easily discoverable by Plaintiff and the Kentucky Subclass; and (b) defeat Plaintiff's and Subclass members' ordinary, foreseeable and reasonable expectations concerning the security of Defendants data systems.

437.    An objective, reasonable person would have been deceived by 21st Century's representations about the security and protection of data in its databases and networks.

438.    Defendants intended that Plaintiff and the Kentucky Subclass rely on its deceptive and unfair acts and practices, misrepresentations, and the concealment, suppression, and omission of material facts, in connection with 21st Century's offering of

medical services and incorporating Plaintiff's and Kentucky Subclass members' sensitive information on its computer servers, in violation of the Kentucky Consumer Protection Act.

439.    Defendants also engaged in unfair acts and practices, in connection with the sale of medical services by failing to maintain the privacy and security the PII/PHI of Plaintiff and members of the Kentucky Subclass in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Data Breach.  These unfair acts and practices violated duties imposed by laws including HIPAA (42 U.S.C. § 1302d, *et seq.*).

440.    Defendants' wrongful practices, which occurred in the course of trade or commerce, were and are injurious to the public interest because those practices were part of a generalized course of conduct on the part of Defendants that applied to Plaintiff and the Kentucky Subclass and were repeated continuously before and after Defendants obtained confidential PII/PHI concerning Plaintiff and Kentucky Subclass members, all of whom have been adversely affected by Defendants conduct and the public was and is at risk as a result thereof.

441.    21st Century's acts, omissions, and practices proximately caused Plaintiff and Kentucky Subclass members to suffer damages including incurring costs associated with protecting PII/PHI that has been exposed; costs associated with the theft of their identities, such as time and expenses associated with credit monitoring, decrease in credit ratings, financial harm suffered as a result of accounts opened and used without their knowledge or authorization, and time and expense associated with closing accounts opened and used without their knowledge or authorization.  Plaintiffs and Kentucky Subclass members also

112

suffered damages in that they did not obtain the value of the goods and services for which

they paid; were induced to pay for (or pay more for) medical goods and services that they

otherwise would not have; and they lost their ability to make informed and reasoned

decisions about their medical treatment.

442.    As a direct and proximate result of Defendants' unfair and deceptive practices,

Plaintiff and members of the Kentucky Subclass have suffered injuries to legally protected

interests, as described above, including but not limited to their legally protected interest in

the confidentiality and privacy of their PII/PHI, including confidential medical records, time

and expenses related to monitoring their financial accounts for fraudulent activity, and

increased, imminent risk of fraud and identity theft, and loss of value of their PII/PHI.

443.    As a direct and proximate cause of these practices, Plaintiff and Kentucky

Subclass members suffered an ascertainable loss.

444.    The above unfair and deceptive trade practices and acts by 21st Century were

immoral, unethical, oppressive, and unscrupulous.  These acts caused substantial injury to

Plaintiff and Kentucky Subclass members that they could not reasonably avoid; this

substantial injury outweighed any benefits to consumers or to competition.  These acts were

within common law, statutory, or other established concepts of fairness.

445.    As a direct and proximate result of Defendants' unlawful, unfair, and

fraudulent business practices, Plaintiff and members of the Kentucky Subclass have suffered

an injury in fact, and are therefore entitled to relief, including restitution, declaratory relief,

and a permanent injunction enjoining Defendants from their unlawful and unfair practices.

21st Century's conduct caused and continues to cause substantial injury to Plaintiff and

Kentucky Subclass members.  21st Century will continue to maintain Plaintiff's and Kentucky Subclass members' PII/PHI for the indefinite future.  Unless injunctive relief is granted, Plaintiff and Kentucky Subclass members, who do not have an adequate remedy at law, will continue to suffer harm, and the balance of equities favors Plaintiff and Kentucky Subclass members.

446.    Plaintiff and Kentucky Subclass members seek declaratory and injunctive relief as permitted by law or equity to assure that the Plaintiff and the Kentucky Subclass have an effective remedy, including enjoining 21st Century from continuing the unlawful practices as set forth above, along with any other relief the Court deems just and proper under the Kentucky Consumer Protection Act.

447.    Plaintiff also seeks reasonable attorneys' fees and costs under applicable law including Federal Rule of Civil Procedure 23 and the Kentucky Consumer Protection Act.

## COUNT XIX
### Violations of the Massachusetts Consumer Protection Act
### Mass. Gen. Laws Ann. Ch. 93A, § 1, *et seq.*
### (On Behalf of the Massachusetts Subclass)

448.    Plaintiff incorporates all foregoing factual allegations as if fully set forth herein.

449.    Plaintiff is a "person," as meant by Mass. Gen. Laws Ann. ch. 93A, § 1.

450.    21st Century operates in "trade or commerce," as meant by Mass. Gen. Laws Ann. ch. 93A, § 1.

451.    21st Century engaged in deceptive and unfair trade practices in the conduct of trade or commerce in violation of Mass. Gen. Laws Ann. ch. 93A, § 2(a).  This includes, but is not limited to the following:

a.      21st Century failed to enact adequate data security measures to protect the Plaintiff's and Massachusetts Subclass members' PII/PHI, including confidential medical records, from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

b.      21st Century failed to take proper action following known security risks and prior cybersecurity incidents including, but not limited to, its notice of the 2011-2012 Data Breach, as described above, to protect the Plaintiff's and Massachusetts Subclass members' PII/PHI, which was a direct and proximate cause of the Data Breach;

c.      21st Century knowingly and fraudulently misrepresented that it would maintain adequate data security practices and procedures to safeguard Plaintiff's and Massachusetts Subclass members' PII/PHI from undisclosed disclosure, release, data breaches, and theft;

d.      21st Century omitted, suppressed, and concealed the material fact of the inadequacy of its data security protections from Plaintiff and Massachusetts Subclass members;

e.      21st Century knowingly and fraudulently misrepresented that it would comply with the requirements of relevant federal and state laws pertaining to the data security of Plaintiff's and Massachusetts Subclass members' PII/PHI, including but not limited to duties imposed by the Federal Trade Commission Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d, *et seq.*), the Massachusetts Right of Privacy statute,

Mass. Gen. Laws Ann. ch. 214, § 1B, and the Massachusetts data breach statute,

Mass. Gen. Laws Ann. ch. 93H §§ 2(a), 3(a);

      f.      21st Century failed to maintain the data security of Plaintiff's and

Massachusetts Subclass members' PII/PHI, in violation of duties imposed by

applicable federal and state laws, including but not limited to those mentioned in the

aforementioned paragraph, directly and proximately causing the Data Breach;

      g.      21st Century failed to disclose the Data Breach to the Massachusetts

Subclass members in a timely and accurate manner, in violation of the duties imposed

by Mass. Gen. Laws Ann. ch. 93H, § 3(a); and

      h.      21st Century failed to adhere to the data protection requirements of the

Massachusetts Data Protection Act, 201 Mass. Code Regs. § 17.00, *et seq.*

452.      As a direct and proximate result of these unfair and deceptive practices,

Plaintiff and Massachusetts Subclass members have suffered injuries to legally protected

interests, as described above, including but not limited to their legally protected interest in

the confidentiality and privacy of their PII/PHI, including confidential medical records, time

and expenses related to monitoring their financial accounts for fraudulent activity, and

increased, imminent risk of fraud and identity theft, and loss of value of their PII/PHI.

453.      As a direct and proximate cause of these practices, Plaintiff and Massachusetts

Subclass members suffered an ascertainable loss.

454.      The above unfair and deceptive trade practices and acts by 21st Century were

immoral, unethical, oppressive, and unscrupulous.  These acts caused substantial injury to

Plaintiff and Massachusetts Subclass members that they could not reasonably avoid; this

substantial injury outweighed any benefits to consumers or to competition.  These acts were within common law, statutory, or other established concepts of fairness.

455.    21st Century knew or should have known that its computer systems and data security practices were inadequate to safeguard Plaintiff's and Massachusetts Subclass members' PII/PHI, and that the risk of a data breach or theft was highly likely, including, but not limited to, its notice of the 2011-2012 Data Breach, as described above, and the lack of employing any adequate security measures to prevent another breach thereafter.  21st Century's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and Massachusetts Subclass members.

456.    A written pre-suit demand under Mass. Gen. Laws Ann. ch. 93A, § 9(3) is unnecessary and unwarranted because 21st Century has long had notice of Plaintiff's allegations, claims and demands, including from the November 13, 2015 notification from the FBI of the Data Breach and 21st Century's own letter notifying Plaintiff and the Massachusetts Subclass members on or about March 2016 of the Data Breach.  Further, 21st Century is the party with the most knowledge of the underlying facts giving rise to Plaintiff's allegations, so that any pre-suit notice would not put 21st Century in a better position to evaluate those claims or to aid in negotiation and settlement.

457.    As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent business practices, Plaintiff and members of the Massachusetts Subclass have suffered an injury in fact, and are therefore entitled to relief, including restitution, declaratory relief, and a permanent injunction enjoining Defendants from their unlawful and unfair

practices.  21st Century's conduct caused and continues to cause substantial injury to Plaintiff and Massachusetts Subclass members.  21st Century will continue to maintain Plaintiff's and Massachusetts Subclass members' PII/PHI for the indefinite future.  Unless injunctive relief is granted, Plaintiff and Massachusetts Subclass members, who do not have an adequate remedy at law, will continue to suffer harm, and the balance of equities favors Plaintiff and Massachusetts Subclass members.

458.    Plaintiff and Massachusetts Subclass members seek declaratory and injunctive relief as permitted by law or equity to assure that the Plaintiff and the Massachusetts Subclass have an effective remedy, including enjoining 21st Century from continuing the unlawful practices as set forth above, along with any other relief the Court deems just and proper under Mass. Gen. Laws Ann. ch. 93A, § 9, including, but not limited to, actual damages, double or treble damages, injunctive and/or other equitable relief.

459.    Plaintiff also seeks reasonable attorneys' fees and costs under applicable law including Federal Rule of Civil Procedure 23.

## COUNT XX
### Violations of the Massachusetts Right To Privacy Statute
### Mass. Gen. Laws Ann. ch. 214, § 1B.
### (On Behalf of the Massachusetts Subclass)

460.    Plaintiff incorporate all foregoing factual allegations as if fully set forth herein.

461.    Plaintiff is a "person," as meant by Mass. Gen. Laws Ann. ch. 214, § 1B.

462.    21st Century engaged in unreasonable, substantial and serious interference with the privacy of Plaintiff and Massachusetts Subclass members in violation of Mass. Gen. Laws Ann. ch. 214, § 1B. This includes, but is not limited to the following:

a.      21st Century collected and retained the PII/PHI of Plaintiff and Massachusetts Subclass members, not generally known to the public, and thus owed them a duty to exercise reasonable care in implementing administrative, physical and technical safeguards to protect that information, including, but not limited to, maintaining and testing 21st Century's data security systems and taking other reasonable security measures to protect and adequately secure the PII/PHI of Plaintiff and Massachusetts Subclass members from unauthorized access, which it failed to do;

b.      21st Century failed to enact adequate data security measures to protect Plaintiff's and Massachusetts Subclass members' PII/PHI from unauthorized disclosure, release, data breaches and theft, which was a direct and proximate cause of the Data Breach resulting in the public disclosure of Plaintiff's and Massachusetts Subclass members' PII/PHI, including confidential medical records; and

c.      21st Century failed to take proper action following known security risks and prior cybersecurity incidents including, but not limited to, its notice of the 2011-2012 Data Breach, as described above, to employ adequate security measures to protect Plaintiff's and Massachusetts Subclass members' PII/PHI, which was a direct and proximate cause of the Data Breach.

463.    The duty 21st Century owed to Plaintiff and Massachusetts Subclass members to protect their PII/PHI is also underscored by Mass. Gen. Laws Ann. ch. 93A, Mass. Gen. Laws Ann. ch. 111, § 70E, Massachusetts data breach statute, Mass. Gen. Laws Ann. ch. 93H, §§ 2(a), 3(a), HIPAA, 42 U.S.C. § 1320d, *et seq.*, and the HITECH Act, 42 U.S.C. § 17901, *et seq.*, which recognize the importance of maintaining the confidentiality of personal

and medical information and were enacted to protect individuals from the unauthorized exposure of their personal and medical information.

464.    But for 21st Century's failure to implement and maintain adequate security measures to protect Plaintiff's and Massachusetts Subclass members' PII/PHI, and but for 21st Century's failure to monitor its systems to identify suspicious or unauthorized activity, the PII/PHI of Plaintiff and Massachusetts Subclass members would not have been compromised, they would not have been injured, and they would not be at a heightened risk of identity theft in the future.  Thus, there is no legitimate reason for the invasion of Plaintiff's and Massachusetts Subclass members' right to privacy.

465.    As a direct and proximate result of 21st Century's violations of Mass. Gen. Laws Ann. ch. 214, § 1B, the PII/PHI of Plaintiff and Massachusetts Subclass members was accessed by unauthorized individuals who continue to use this compromised PII/PHI to commit identity, healthcare and/or medical fraud indefinitely.

466.    As a direct and proximate result of 21st Century's violations of Mass. Gen. Laws Ann. ch. 214, § 1B, Plaintiff and Massachusetts Subclass members suffered injuries to legally protected interests, as described above, including, but not limited to, their legally protected interest in the confidentiality and privacy of their PII/PHI, time and expense related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their PII/PHI.

467.    As a direct and proximate result of 21st Century's violations of Mass. Gen. Laws Ann. ch. 214, § 1B, Plaintiff and Massachusetts Subclass members suffered, and will

continue to suffer, injury and/or harm including, but not limited to, anxiety, stress, emotional distress, loss of control over their PII/PHI, and other economic and non-economic losses.

468.    As a direct and proximate result of 21st Century's violations of Mass. Gen. Laws Ann. ch. 214, § 1B, Plaintiff and members of the Massachusetts Subclass have suffered an injury in fact, and are therefore entitled to relief, including restitution, declaratory relief, and a permanent injunction enjoining Defendants from their unlawful and unfair practices. 21st Century's conduct caused and continues to cause substantial injury to Plaintiff and Massachusetts Subclass members.  21st Century will continue to maintain Plaintiff's and Massachusetts Subclass members' PII/PHI for the indefinite future.  Unless injunctive relief is granted, Plaintiff and Massachusetts Subclass members, who do not have an adequate remedy at law, will continue to suffer harm, and the balance of equities favors Plaintiff and Massachusetts Subclass members.

469.    Plaintiff and Massachusetts Subclass members seek declaratory and injunctive relief as permitted by law or equity to assure that the Plaintiff and the Massachusetts Subclass have an effective remedy, including enjoining 21st Century from continuing the unlawful practices as set forth above, along with any other relief the Court deems just and proper under Mass. Gen. Laws Ann. ch. 214, § 1B, including, but not limited to, actual damages, double or treble damages, injunctive and/or other equitable relief.

470.    Plaintiff also seeks reasonable attorneys' fees and costs under applicable law including Federal Rule of Civil Procedure 23 and Mass. Gen. Laws Ann. ch. 214, § 1B..

471.    21st Century's conduct caused and continues to cause substantial injury to Plaintiff and Massachusetts Subclass members.  21st Century will continue to maintain

Plaintiff's and Massachusetts Subclass members' PII/PHI for the indefinite future.  Unless injunctive relief is granted, Plaintiff and Massachusetts Subclass members, who do not have an adequate remedy at law, will continue to suffer harm, and the balance of equities favors Plaintiff and Massachusetts Subclass members.

472.    Plaintiff and Massachusetts Subclass members seek declaratory and injunctive relief as permitted by law or equity to assure that the Plaintiff and the Massachusetts Subclass have an effective remedy, including enjoining 21st Century from continuing the unlawful practices as set forth above, along with any other relief the Court deems just and proper under Mass. Gen. Laws Ann. ch. 214, § 1B.

473.    Plaintiff also seeks reasonable attorneys' fees and costs under applicable law including Federal Rule of Civil Procedure 23.

**COUNT XXI**
**Violations of the New Jersey Consumer Fraud Act**
**N.J. Stat. Ann. § 56:8-1, *et seq.***
**(On Behalf of the New Jersey Subclass)**

474.    Plaintiff incorporate all foregoing factual allegations as if fully set forth herein.

475.    21st Century, while operating in New Jersey, engaged in unconscionable commercial practices, deception, misrepresentation, and the knowing concealment, suppression, and omission of material facts with intent that others rely on such concealment, suppression, and omission, in connection with the sale and advertisement of services, in violation of N.J. Stat. Ann. § 56:8-2. This includes, but is not limited to the following:

a.      21st Century failed to enact adequate data security measures to protect Plaintiff's and New Jersey Subclass members' PII/PHI from unauthorized disclosure,

release, data breaches, and theft, which was a direct and proximate cause of the Data

Breach;

b.      21st Century failed to take proper action following known security

risks and prior cybersecurity incidents including, but not limited to, its notice of the

2011-2012 Data Breach, as described above, to protect the Plaintiff's and New Jersey

Subclass members' PII/PHI, which was a direct and proximate cause of the Data

Breach;

c.      21st Century knowingly and fraudulently misrepresented that it would

maintain adequate data security practices and procedures to safeguard Plaintiff's and

New Jersey Subclass members' PII/PHI from unauthorized disclosure, release, data

breaches, and theft;

d.      21st Century omitted, suppressed, and concealed the material fact of

the inadequacy of its data security protections from Plaintiff and New Jersey Subclass

members;

e.      21st Century knowingly and fraudulently misrepresented that it would

comply with the requirements of relevant federal and state laws pertaining to the data

security of Plaintiff's and New Jersey Subclass members' PII/PHI, including but not

limited to duties imposed by the Federal Trade Commission Act (15 U.S.C. § 45) and

HIPAA (42 U.S.C. § 1302d, *et seq.*); and

f.      21st Century failed to maintain the data security of Plaintiff's and New

Jersey Subclass members' PII/PHI, in violation of duties imposed by applicable

federal and state laws.

476.    As a direct and proximate result of these unfair and deceptive practices,

Plaintiff and New Jersey Subclass members suffered injuries to legally protected interests, as

described above, including the loss of their legally protected interest in the confidentiality

and privacy of their PII/PHI, time and expenses related to monitoring their financial accounts

for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of

value of their PII/PHI.

477.    As a direct and proximate cause of these practices, Plaintiff and New Jersey

Subclass members suffered an ascertainable loss.

478.    The above unfair and deceptive acts and practices and acts by 21st Century

were immoral, unethical, oppressive, and unscrupulous.  These acts caused substantial injury

to Plaintiff and New Jersey Subclass members that they could not reasonably avoid; this

substantial injury outweighed any benefits to consumers or to competition.  These acts were

within common law, statutory, or other established concepts of fairness.

479.    21st Century knew or should have known that its computer systems and data

security practices were inadequate to safeguard Plaintiff's and New Jersey Subclass

members' PII/PHI, and that risk of a data breach or theft was highly likely, including, but not

limited to, its notice of the 2011-2012 Data Breach, as described above, and the lack of

employing any adequate security measures to prevent another breach thereafter.  21st

Century's actions in engaging in the above-named unfair practices and deceptive acts were

negligent, knowing and willful, and/or wanton and reckless with respect to the rights of

Plaintiff and New Jersey Subclass members.

480.     As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent business practices, Plaintiff and members of the New Jersey Subclass have suffered an injury in fact, and are therefore entitled to relief, including restitution, declaratory relief, and a permanent injunction enjoining Defendants from their unlawful and unfair practices.  21st Century's conduct caused and continues to cause substantial injury to Plaintiff and New Jersey Subclass members.  21st Century will continue to maintain Plaintiff's and New Jersey Subclass members' PII/PHI for the indefinite future.  Unless injunctive relief is granted, Plaintiff and New Jersey Subclass members, who do not have an adequate remedy at law, will continue to suffer harm, and the balance of equities favors Plaintiff and New Jersey Subclass members.

481.     Plaintiff and New Jersey Subclass members seek declaratory and injunctive relief as permitted by law or equity to assure that the Plaintiff and the New Jersey Subclass have an effective remedy, including enjoining 21st Century from continuing the unlawful practices as set forth above, along with any other relief the Court deems just and proper under N.J. Stat. Ann. § 56:8-19, including, but not limited to, actual damages, injunctive and/or other equitable relief and treble damages, and attorneys' fees and costs.

482.     Plaintiff also seeks reasonable attorneys' fees and costs under applicable law including Federal Rule of Civil Procedure 23 and N.J. Stat. Ann. § 56:8-19.

**COUNT XXII**
**Violations of the Rhode Island Deceptive Trade Practices Act,**
**R.I. Gen. Laws § 6-13.1, *et seq.***
**(On Behalf of the Rhode Island Subclass)**

483.     Plaintiff incorporate all foregoing factual allegations as if fully set forth herein.

484.    Plaintiff brings this claim against 21st Century on behalf of the Rhode Island Subclass.

485.    21st Century's business practices alleged herein constitute unfair and/or deceptive methods, acts, or practices under Rhode Island's Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1.

486.    The Rhode Island Subclass members purchased healthcare services from 21st Century in "trade" and "commerce," as meant by R.I. Gen. Laws § 6-13.1-1, for personal, family, and/or household purposes.

487.    21st Century engaged in unlawful, unfair, and deceptive acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of the services purchased by the Rhode Island Class in violation of R.I. Gen. Laws Ann. § 6-13.1-2, including but not limited to the following:

    a.    21st Century misrepresented material facts pertaining to the provision of medical services to the Rhode Island Subclass by representing that they would maintain adequate data security practices and procedures to safeguard Rhode Island Subclass members' PII/PHI from unauthorized disclosure, release, data breaches, and theft in violation of R.I. Gen. Laws Ann. § 6-13.1-1(6)(v), (vii), (ix), (xii), (xiii), and (xiv);

    b.    21st Century misrepresented material facts pertaining to the provision of medical services to the Rhode Island Subclass by representing that they did and would comply with the requirements of relevant federal and state laws pertaining to

the data security of Rhode Island Class members' PII/PHI in violation of R.I. Gen.

Laws Ann. § 6-13.1-1(6)(v), (vii), (ix), (xii), (xiii), and (xiv);

    c.    21st Century omitted, suppressed, and concealed the material fact of

the inadequacy of the data security protections for Rhode Island Subclass members'

PII/PHI in violation of in violation of R.I. Gen. Laws Ann. § 6-13.1-1(6)(v), (vii),

(ix), (xii), (xiii), and (xiv);

    d.    21st Century engaged in unfair, unlawful, and deceptive acts and

practices with respect to the sale of insurance and health benefits services by failing

to maintain the privacy and security of Rhode Island Subclass members' PII/PHI, in

violation of duties imposed by and public policies reflected in applicable federal and

state laws, resulting in the Data Breach.  These unfair, unlawful, and deceptive acts

and practices violated duties imposed by laws including Federal Trade Commission

Act (15 U.S.C. § 45), HIPAA (42 U.S.C. § 1302d, *et seq*.), the Rhode Island

Confidentiality of Health Care Information Act (R.I. Gen. Laws § 5-37.3-4); and the

Rhode Island data breach statute (R.I. Gen. Laws § 11-49.3-2);

    e.    21st Century engaged in unlawful, unfair, and deceptive acts and

practices with respect to the provision of healthcare services by failing to disclose the

Data Breach to Rhode Island Class members in a timely and accurate manner, in

violation of R.I. Gen. Laws Ann. § 11-49.2-3(a);

    f.    21st Century engaged in the unlawful, unfair, and deceptive acts and

practices with respect to the provision of healthcare services by failing to take proper

action following the Data Breach to enact adequate privacy and security measures and

protect Rhode Island Subclass members' PII/PHI from further unauthorized

disclosure, release, data breaches, and theft.

488.    As a direct and proximate result of these unfair and deceptive practices,

Plaintiff and Rhode Island Subclass members suffered injuries to legally protected interests,

as described above, including the loss of their legally protected interest in the confidentiality

and privacy of their PII/PHI, time and expenses related to monitoring their financial accounts

for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of

value of their PII/PHI.

489.    As a direct and proximate cause of these practices, Plaintiff and Rhode Island

Subclass members suffered an ascertainable loss.

490.    The above unlawful, unfair, and deceptive acts and practices by 21st Century

were immoral, unethical, oppressive, and unscrupulous.  These acts caused substantial injury

to consumers that the consumers could not reasonably avoid; this substantial injury

outweighed any benefits to consumers or to competition.  These acts were within common

law, statutory, or other established concepts of fairness.

491.    21st Century knew or should have known that its computer systems and data

security practices were inadequate to safeguard Plaintiff's and Rhode Island Subclass

members' PII/PHI, and that risk of a data breach or theft was highly likely, including, but not

limited to, its notice of the 2011-2012 Data Breach, as described above, and the lack of

employing any adequate security measures to prevent another breach thereafter.  21st

Century's actions in engaging in the above-named deceptive acts and practices were

negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and members of the Rhode Island Subclass.

492. As a direct and proximate result of 21st Century's unlawful, unfair, and deceptive acts and practices, the Rhode Island Subclass members suffered an injury in fact, and are therefore entitled to relief, including restitution, declaratory relief, and a permanent injunction enjoining Defendants from their unlawful and unfair practices. 21st Century's conduct caused and continues to cause substantial injury to Plaintiff and Rhode Island Subclass members. 21st Century will continue to maintain Plaintiff's and Rhode Island Subclass members' PII/PHI for the indefinite future. Unless injunctive relief is granted, Plaintiff and Rhode Island Subclass members, who do not have an adequate remedy at law, will continue to suffer harm, and the balance of equities favors Plaintiff and Rhode Island Subclass members.

493. Plaintiff and Rhode Island Subclass members seek declaratory and injunctive relief as permitted by law or equity to assure that the Plaintiff and the Rhode Island Subclass have an effective remedy, including enjoining 21st Century from continuing the unlawful practices as set forth above, along with any other relief the Court deems just and proper under R.I. Gen. Laws § 6-13.1-5.2, including, but not limited to, actual damages or $200 per Subclass member, whichever is greater, injunctive and/or other equitable relief, punitive damages, and attorneys' fees and costs.

494. Plaintiff also seeks reasonable attorneys' fees and costs under applicable law including Federal Rule of Civil Procedure 23.

## VIII.   PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and on behalf of the proposed Classes, request that the Court:

a.      Certify this case as a class action, appoint Plaintiffs as class representatives, and appoint Interim Co-Lead Counsel, Plaintiffs' Liaison Counsel, Plaintiffs' Local Counsel, and Plaintiffs' Steering Committee as Class Counsel for Plaintiffs to represent the Class;

b.      Find that 21st Century breached its duty to safeguard and protect the PII/PHI of Plaintiffs and Class members that was compromised in the Data Breach;

c.      Award Plaintiffs and Class members appropriate relief, including actual and statutory damages, restitution and disgorgement;

d.      Award equitable, injunctive and declaratory relief as may be appropriate;

e.      Award all costs, including experts' fees and attorneys' fees, and the costs of prosecuting this action;

f.      Award pre-judgment and post-judgment interest as prescribed by law; and

g.      Grant additional legal or equitable relief as this Court may find just and proper.

## IX.   JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated:   January 17, 2017       Respectfully submitted,

By: */s/ Cari Campen Laufenberg*
Cari Campen Laufenberg
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200

Seattle, WA 98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384
claufenberg@kellerrohrback.com

By: */s/ Daniel S. Robinson*
Daniel S. Robinson
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Drive
Newport Beach, California 92660
Telephone: (949) 720-1288
Facsimile: (949) 720-1292
drobinson@robinsonfirm.com

***Interim Co-Lead Counsel for Plaintiffs***

Jodi Westbrook Flowers
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
jflowers@motleyrice.com

Robert C. Gilbert
Florida Bar No. 561861
**KOPELOWITZ OSTROW
FERGUSON WEISELBERG
GILBERT**
2800 Ponce de Leon Blvd., Suite 1100
Coral Gables, FL  33134
Telephone: (305) 529-8858
Facsimile: (954) 525-4300
gilbert@kolawyers.com

***Interim Co-Liaison Counsel for
Plaintiffs***

Kent G. Whittemore
Florida Bar No. 166049
**THE WHITTEMORE LAW GROUP,
P.A.**
100 Second Avenue South, Ste. 304-S

131

St. Petersburg, FL 33701
Telephone: (727) 821-8752
kwhittemore@wherejusticematters.com

***Interim Local Counsel for Plaintiffs***

Matthew B. George
**KAPLAN FOX & KILSHEIMER
LLP**
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: (415) 772-4700
Facsimile: (415) 772-4707
mgeorge@kaplanfox.com

Kenneth G. Gilman
Florida Bar No. 340758
**GILMAN LAW, LLP**
Beachway Professional Center Tower
8951 Bonita Beach Road, S.E. Ste. #525
Bonita Springs, FL 34135
Telephone: (239) 494-6128
kgilman@gilmanlawllp.com

Thomas V. Girardi
**GIRARDI | KEESE**
1126 Wilshire Boulevard
Los Angeles, CA 90017
Telephone: (213) 977-0211
Facsimile: (213) 481-1554
tgirardi@girardikeese.com

Eric A. Grover
**KELLER GROVER LLP**
1965 Market Street
San Francisco, CA 94103
Telephone: (415) 543-1305
Facsimile: (415) 543-7861
eagrover@kellergrover.com

Julie Braman Kane
Florida Bar No. 980277
**COLSON HICKS EIDSON, P.A.**
255 Alhambra Circle, Penthouse

132

Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
julie@colson.com

Steven S. Maher
Florida Bar No. 887846
**THE MAHER LAW FIRM, PA**
631 W Morse Blvd., Suite 200
Winter Park, FL 32789
Telephone: (407) 839-0866
Facsimile: (407) 425-7958
smaher@maherlawfirm.com

Charles PT Phoenix
Florida Bar No. 0535591
**RHODES TUCKER**
2407 Periwinkle Way, Suite 6
Sanibel, FL 33957
Telephone: (239) 472-1144
Facsimile: (239) 461-0083
cptp@RhodesTucker.com

Linh G. Vuong
**GIRARD GIBBS LLP**
601 California St., 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
lgv@girardgibbs.com

*Plaintiffs' Steering Committee*

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2017, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which sends notice of electronic filing to all counsel of record.

By: */s/ Cari Campen Laufenberg*
Cari Campen Laufenberg