**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

IN RE: 21ST CENTURY ONCOLOGY
CUSTOMER DATA SECURITY BREACH
LITIGATION

_____

This Document Relates to All Cases

Case No. 8:16-md-2737-MSS-AEP

MDL No. 2737

**PLAINTIFFS' MEMORANDUM IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................1

II.     STATEMENT OF FACTS ...................................................................................2

III.    ARGUMENT ........................................................................................................4

      A.      All Plaintiffs Have Article III Standing to Pursue Relief Against Defendants..4

            1.      All Plaintiffs Suffered Actual Injuries Resulting from the Data Breach ...................................................................................................6

            2.      All Plaintiffs Also Face Imminent Injuries Due To the Data Breach ....7

                    a.      All Plaintiffs Have Been Exposed To a Substantial Risk of Identity Theft, Fraud, and Other Harm ......................................7

                    b.      Plaintiffs Face an Increased Risk of Bodily Injury or Death ...10

                    c.      Plaintiffs Spent Time and Money Protecting Themselves from Imminent Harm .......................................................................11

            3.      21st Century's Additional Challenges To Plaintiffs' Allegations of Actual and Imminent Injuries Are Unavailing...................................11

      B.      Plaintiffs' Claims Are Adequately Pleaded ......................................................13

            1.      The Complaint Sufficiently Alleges Statutory Consumer Protection Claims and Common Law Negligent Misrepresentation Claims ........13

            2.      Plaintiffs Sufficiently Allege a Claim for Breach of Express Contract....................................................................................................16

            3.      Plaintiffs Sufficiently Allege a Claim for Breach of Implied Contract....................................................................................................17

            4.      Plaintiffs Sufficiently Allege a Claim for Breach of the Contractual Covenant of Good Faith and Fair Dealing ...........................................19

            5.      Plaintiffs Sufficiently Allege a Claim for Unjust Enrichment.............20

            6.      Plaintiffs Sufficiently Allege a Claim for Invasion of Privacy............21

            7.      Plaintiffs Sufficiently Allege Claims for Breach of Fiduciary Duty ...22

8.      Plaintiffs' State Statutory Claims Are Adequately Pleaded ................23

9.      Plaintiffs Sufficiently Allege a Claim Under the CMIA ....................25

10.     Plaintiffs State a Claim Under the California Customer Records Act.27

11.     Plaintiffs Are Entitled To Pursue a Claim for Declaratory Relief .......27

C.      Plaintiffs Adequately Allege That the Data Breach Caused Their Injuries .....28

IV.   CONCLUSION...........................................................................................................30

## **TABLE OF AUTHORITIES**

<u>**Cases**</u>

*Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273 (S.D. Fla. 2009) .................... 20

*Accord In re Target Corp. Customer Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154 (D. Minn. 2014) ........................................................ 17

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227 (1937)............................ 28

*Anderson v. Hannaford Bros. Co.*, 659 F.3d 151 (1st Cir. 2011) ................................ 8, 11, 17

*Attias v. CareFirst, Inc.*, 199 F. Supp. 3d 193 (D.D.C. 2016) ................................................ 10

*Barbara A. v. John G.*, 145 Cal. App. 3d 369 (Ct. App. 1983) ............................................ 22

*Bd. of Med. Quality Assurance v. Gherardini*, 156 Cal. Rptr. 55 (Cal. Ct. App. 1979) ............................................................................................ 12

*Blair v. Wachovia Mortg. Corp.*, No. 5:11-cv-566-Oc-37TBS, 2012 WL 868878 (M.D. Fla. Mar. 14, 2012)........................................................ 13

*Blatterfein v. Larken Assocs.*, 323 N.J. Super. 167 (1999) ...................................................... 23

*Burger King Corp. v. Broad St. Licensing Grp., LLC*, 469 F. App'x 819 (11th Cir. 2012) ............................................................................................ 20

*Burton v. MAPCO Exp., Inc.*, 47 F. Supp. 3d 1279 (N.D. Ala. 2014) ............................... 9, 21

*Cantrell v. City of Long Beach*, 241 F.3d 674 (9th Cir. 2001) ............................................... 13

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 826 P.2d 710 (Cal. 1992) ............................................................................................ 19

*Carter v. Innisfree Hotel, Inc.*, 661 So.2d 1174 (Ala. 1995) ................................................... 21

*Case v. Miami Beach Healthcare Grp., Ltd.*, 166 F. Supp. 3d 1315 (S.D. Fla. 2016) ....................................................................... 6, 9, 10, 28

*Clapper v. Amnesty Int'l, USA*, 133 S. Ct. 1138 (2013) .......................................................... 5

*Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855 (N.D. Cal. 2011)........................................ 12

*Clark v. Bellsouth Telecoms., Inc.*, 461 F.Supp.2d 541 (W.D. Ky. 2006)............................. 24

*Corona v. Sony Pictures Entm't, Inc.*, No. 14-CV-09600 RGK (Ex), 2015 WL
3916744 (C.D. Cal. June 15, 2015) ................................................................. 8

*Corson v. Toyota Motor Sales, U.S.A., Inc.*, No. 2:12-cv-08499-JGB-VBK,
2013 WL 10068136 (C.D. Cal. July 18, 2013) ................................................. 15

*Dickens v. GC Servs. Ltd. P'ship*, No: 8:16-cv-803-T-30TGW, 2016 WL
3917530 (M.D. Fla. July 20, 2016).................................................................... 12

*Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561 (D. Mass. 2016) ............................... 21

*Dolmage v. Combined Ins. Co. of Am.*, No. 14 C 3809, 2015 WL 292947
(N.D. Ill. Jan. 21, 2015) ..................................................................................... 22

*Dolmage v. Combined Ins. Co. of Am.*, No. 14 C 3809, 2016 WL 754731
(N.D. Ill. Feb. 23, 2016)...................................................................................... 19

*Eisenhower Med. Ctr. v. Super. Ct.*, 172 Cal. Rptr. 3d 165 (2014) ........................ 26

*Enslin v. The Coca-Cola Co.*, 136 F. Supp. 3d 654 (E.D. Pa. 2015)....................... 18

*e-ventures Worldwide, LLC v. Google, Inc.*, 188 F. Supp. 3d 1265 (M.D. Fla.
2016) .................................................................................................................... 23

*Falkenberg v. Alere Home Monitoring, Inc.*, No. 13-cv-00341-JST, 2015 WL
800378 (N.D. Cal. Feb. 23, 2015)....................................................................... 26

*Fero v. Excellus Health Plan, Inc.*, --- F. Supp. 3d ----, No. 6:15-CV-06569
EAW, 2017 WL 713660 (W.D.N.Y. Feb. 22, 2017) ........................................... 9

*Flower World of Am., Inc. v. Wenzel*, 122 Ariz. 319 (Ct. App. 1978)..................... 23

*FMC Corp. v. Boesky*, 852 F.2d 981 (7th Cir. 1988)............................................... 13

*Frezza v. Google Inc.*, No. 12-CV-00237-RMW, 2012 WL 5877587 (N.D.
Cal. Nov. 20, 2012).............................................................................................. 18

*Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384 (6th Cir. 2016) ................. 8

*Green v. eBay Inc.*, No. 14-1688, 2015 WL 2066531 (E.D. La. May 4, 2015)....................... 10

*Harnish v. Widener Univ. Sch. of Law*, 931 F. Supp. 2d 641 (D.N.J. 2013) .......................... 24

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ......................................... 12

*In re Adobe Sys. Inc. Privacy Litig.*, 66 F. Supp. 3d 1197 (N.D. Cal. 2014)................. 8, 9, 16

*In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953 (N.D. Cal. 2016) ...................... 12

*In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL
   3029783 (N.D. Cal. May 27, 2016) ............................................................ 12, 14, 17, 19

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*,
   701 F. Supp. 2d 356 (E.D.N.Y. 2010) ................................................................. 13

*In re Brican Am. LLC Equip. Lease Litig.*, No. 10-md-02183-PAS, 2014 WL
   250246 (S.D. Fla. Jan. 22, 2014) ........................................................................ 14

*In re Cmty. Health Sys., Inc.*, No. 15-CV-222-KOB, 2016 WL 4732630 (N.D.
   Ala. Sept. 12, 2016) ........................................................................... 9, 14, 17

*In re Dep't of Veterans Affairs Data Theft Litig.*, No. MDL 1796, 2007 WL
   7621261 (D.D.C. Nov. 16, 2007) ........................................................................ 7

*In re Facebook Privacy Litig.*, 572 F. App'x 494 (9th Cir. 2014) ......................................... 12

*In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705 (N.D. Cal. 2011) ................................... 23

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625 (3d
   Cir. 2017) ......................................................................................... 7, 12

*In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299 (E.D.N.Y.
   2005) ................................................................................................... 18

*In re LinkedIn User Privacy Litig.*, No. 5:12-CV-03088-EJD, 2014 WL
   1323713 (N.D. Cal. March 28, 2014) ................................................................... 12

*In re Managed Care Litig.*, 185 F. Supp. 2d 1310 (S.D. Fla. 2002) ...................................... 21

*In re Maple*, 434 B.R. 363 (Bankr. E.D. Va. 2010) .................................................... 16

*In re Mattel, Inc. Toy Lead Paint Prods. Liab. Litig.*, 588 F. Supp. 2d 1111
   (C.D. Cal. 2008) ........................................................................................ 24

*In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518 (N.D. Ill. 2011) ......................... 17

*In re Pharm Indus. Avg. Wholesale Price Litig.*, 230 F.R.D. 61 (D. Mass.
   2005) ................................................................................................... 24

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 198 F. Supp. 3d
   1183 (D. Or. 2016) .................................................................................... 15

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-md-2633-SI, 2017 WL 539578 (D. Or. Feb. 9, 2017)................................................ 17, 18, 19

*In re Science Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14 (D.D.C. 2014) ..................................................................... 10

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942 (S.D. Cal. 2014) ........................................................................ 12

*In re SuperValu, Inc.*, No. 14-MD-2586 ADM/TNL, 2016 WL 1588105 (D. Minn. Apr. 20, 2016) .................................................................................... 8, 9

*Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc.*, 785 So.2d 1232 (Fla. 4th DCA 2001)................................................................................................ 19

*Jaffe v. Bank of Am., N.A.*, 197 F. Supp. 3d 523 (S.D.N.Y. 2016) ......................... 13

*Khan v. Children's Nat'l Health Sys.*, 188 F. Supp. 3d 524 (D. Md. 2016) ...................... 8, 10

*Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010)................................. 6, 8

*Lacy v. BP, PLC*, No. 11-Civ-21855-MGC, 2015 WL 3952593 (S.D. Fla. June 29, 2015) ........................................................................................................ 13

*Laker v. Freid*, 854 F. Supp. 923 (D. Mass. 1994) ............................................... 22

*Lambert v. Hartman*, 517 F.3d 433 (6th Cir. 2008).............................................. 11

*Laster v. T- Mobile USA, Inc.*, 407 F. Supp. 2d 1181 (S.D. Cal. 2005) ................................ 24

*Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963 (7th Cir. 2016) ............................ 30

*Linville v. Ginn Real Estate Co., LLC*, 697 F. Supp. 2d 1302 (M.D. Fla. 2010).................... 14

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................. 5

*Macedo v. Dello Russo*, 178 N.J. 340 (2004) ....................................................... 23

*Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270 (1941) ........................................ 28

*McKay v. Geadah*, 50 Pa. D. & C.3d 435 (Pa. Com. Pl. 1988).............................. 12

*McMillan v. Shively*, 23 So. 3d 830 (Fla. 1st DCA 2009) ....................................... 18

*Metrahealth Ins. Co. v. Anclote Psychiatric Hosp., Ltd.*, No. 96-2547-CIV-T-17C, 1997 WL 728084 (M.D. Fla. Oct. 23, 1997)............................................ 20

*Meyer v. Christie*, No. 07-2230-JWL, 2007 WL 3120695 (D. Kan. Oct. 24, 2007) ................................................................................................ 18

*Morgan v. AT&T Wireless Servs., Inc.*, 99 Cal. Rptr. 3d 768 (2009) .................................... 24

*Murray v. Farmers Ins. Co. of Ariz.*, 239 Ariz. 58 (Ct. App. 2016) ...................................... 23

*Nirvana Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 589 F. Supp. 2d 1336 (S.D. Fla. 2008) ......................................................................................... 28

*Palm Beach Golf Ctr. Boca, Inc. v. Sarris, D.D.S., P.A.*, 781 F.3d 1245 (11th Cir. 2015) ....................................................................................... 12

*Perron v. Treasurer of City of Woonsocket*, 121 R.I. 781 (1979) ......................................... 24

*Peters v. St. Joseph Services Corp.*, 74 F. Supp. 3d 847 (S.D. Tex. 2015) ........................... 10

*Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629 (7th Cir. 2007) ................................................. 8

*Purrelli v. State Farm Fire & Cas. Co.* 698 So. 2d 618 (Fla. Dist. Ct. App. 1997) ............................................................................................ 21

*Regents of the Univ. of Cal. v. Super. Ct.*, 163 Cal. Rptr. 3d 205 (2013) .............................. 26

*Reilly v. Ceridian Corp.*, 664 F.3d 38 (3d Cir. 2011) .................................................. 8, 10, 11

*Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688 (7th Cir. 2015) ..................... 8, 9, 11, 30

*Resnick v. AvMed, Inc.*, 693 F.3d 1317 (11th Cir. 2012) ................................................. 12, 29

*Ross v. AXA Equitable Life Ins., Co.*, 115 F. Supp. 3d 424 (S.D.N.Y. 2015) ........................ 13

*Rowe v. UniCare Life & Health Ins. Co.*, No. 09 C 2286, 2010 WL 86391 (N.D. Ill. Jan. 5, 2010) .............................................................................. 21, 22

*Silver v. Countrywide Home Loans, Inc.*, 760 F. Supp. 2d 1330 (S.D. Fla. 2011) ............................................................................................... 22

*Sleit v. Ricoh Corp.*, No. 8:07-cv-724-T-23TBM, 2007 WL 2565967 (M.D. Fla. Aug. 31, 2007) ...................................................................... 16, 17

*Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp. 2d 808 (W.D. Ky. 2003) .......................... 21

*Smith v. Triad of Ala., LLC*, No. 1:14-CV-324-WKW, 2015 WL 5793318 (M.D. Ala. Sept. 29, 2015) ............................................................................ 17

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ................................................................ 8, 12

*Storm v. Paytime, Inc.*, 90 F. Supp. 3d 359 (M.D. Pa. 2015) .................................................. 10

*Story v. Attends Healthcare Prods. Inc.*, No. 15-CV-13577, 2016 WL
   3125210 (E.D. Mich. June 3, 2016) ...................................................................................... 13

*Susan Fixel, Inc. v Rosenthal & Rosenthal, Inc*., 842 So. 2d 204 (Fla. Dist. Ct.
   App. 2003) ............................................................................................................................ 22

*Sutter Health v. Super. Ct.*, 174 Cal. Rptr. 3d 653 (2014) ...................................................... 26

*Svenson v. Google, Inc.*, No. 13-cv-04080-BLF, 2015 WL 1503429 (N.D. Cal.
   Apr. 1, 2015) ........................................................................................................................ 12

*Toback v. GNC Holdings, Inc.*, No. 13-80526-CIV, 2013 WL 5206103 (S.D.
   Fla. Sept. 13, 2013) .............................................................................................................. 14

*Torres v. Wendy's Co.*, 195 F. Supp. 3d 1278 (M.D. Fla. 2016) .............................................. 9

*United Dairymen of Ariz. v. Schugg*, 128 P.3d 756 (Ariz. Ct. App. 2006); .......................... 19

*Wagner v. First Horizon Pharm. Corp*., 464 F.3d 1273 (11th Cir. 2006) .............................. 16

*Warth v. Seldin*, 422 U.S. 490 (1975) ...................................................................................... 12

*Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359 (S.D. Fla.
   2015) ..................................................................................................................................... 20

*Willingham v. Global Payments, Inc.*, No. 1:12-CV-01157-RWS, 2013 WL
   440702 (N.D. Ga. Feb. 5, 2013) .......................................................................................... 18

*Wilson v. Amerada Hess Corp.*, 773 A.2d 1121 (N.J. 2001) ................................................... 19

**<u>Statutes</u>**

Cal. Civ. Code § 56.05 ............................................................................................................. 26

Cal. Civ. Code § 56.36 ............................................................................................................. 26

Cal. Civ. Code § 56.101 ........................................................................................................... 26

Cal. Civ. Code § 1782 ......................................................................................................... 24, 25

Cal. Civ. Code § 1798.82 ......................................................................................................... 27

**<u>Other Authorities</u>**

17A Am. Jur. 2d Contracts § 13 (2017)...................................................................................... 18

California Consumers Legal Remedies Act............................................................................. 24

Restatement (Second) of Contracts § 205 cmt. a (1981) ....................................................... 20

# I.   INTRODUCTION

Plaintiffs seek to hold 21st Century Oncology Investments, LLC and 21st Century Oncology of California, a Medical Corporation (collectively, "Defendants" or "21st Century") accountable for their inadequate data security that resulted in a nationwide data breach injuring more than 2.2 million patients treated at 21st Century facilities. Breaching its duties under numerous federal and state laws, 21st Century failed to implement reasonable and adequate security measures and protocols to prevent, detect, and address such a breach. This resulted in the unauthorized disclosure of personally identifiable information ("PII") and protected health information ("PHI") of Plaintiffs and putative class members, many of whom are undergoing treatment for cancer.

21st Century now attempts to avoid responsibility for the Data Breach through its Motion to Dismiss Plaintiffs' Consolidated Complaint and Memorandum in Support, Dkt. No. 116 ("Motion" or "MTD"), arguing in shotgun fashion that some Plaintiffs have not suffered Article III injury in fact, and that Plaintiffs have failed to state claims.

21st Century's standing challenges should be denied. Not only do Defendants concede that seven Plaintiffs have Article III standing, **all** Plaintiffs allege actual injuries as a result of the Data Breach, in that a database containing their PII/PHI was accessed by unauthorized parties, ████████████████████████████████████████████████████████████ ████████████████. Moreover, all Plaintiffs also allege imminent injuries, in that they are at substantial risk of identity theft, fraud, and other harm because of the Data Breach—including the risk of bodily harm or death because of misdiagnosis or mistreatment as a result of medical identity theft or fraud.

1

21st Century's challenges to the sufficiency of Plaintiffs' claims should likewise be rejected. To the extent Federal Rule of Civil Procedure 9(b) might apply, Plaintiffs have met its pleading standard. Further, Plaintiffs adequately allege causation in that the facts as pleaded indicate both a logical and temporal relationship between the Data Breach and the identity theft, fraud, and other injuries they have suffered.

## II.   STATEMENT OF FACTS

On or around October 3, 2015, unauthorized parties hacked into 21st Century's database and obtained the sensitive, personal data of more than 2.2 million 21st Century patients (the "Data Breach"). ███████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████ ¶¶ 3-6, 96-101, 182.[1] Despite the heightened risks of identity theft and fraud to its patients, 21st Century delayed notifying them of the Data Breach until March 4, 2016. ¶ 117.

Plaintiffs—patients who sought and/or paid for medical care from 21st Century—filed suit alleging that, as a result of the Data Breach, their PII/PHI was accessed and viewed by unauthorized parties.[2] ████████████████████████████████████████

████████████████████████████████████████████████████████

██████████ ¶¶ 99-104. ████████████████████████████████████

████████████████████ ¶¶ 2-6, 10, 96, 98-102, 107, 122. Thus, all Plaintiffs have

---

[1] Unless stated otherwise, all references to "¶" refer to Plaintiffs' Consolidated Class Action Complaint, Dkt. No. 100 ("Complaint").

[2] ¶¶ 21, 26, 30, 35, 40, 45, 49, 54, 60, 68, 73, 78, 83, 89.

suffered misuse of their compromised PII/PHI.

Many Plaintiffs also allege other instances of identity theft, fraud, and other harm caused by the Data Breach, including fraudulent attempts to open credit card accounts (Plaintiffs Schmitt, Schwartz, Meulenberg, and Brehio); unauthorized charges using existing financial and ecommerce accounts (Plaintiffs Meulenberg and Griffith); fraudulent attempts to change addresses and other contact information (Plaintiffs Schmitt and Griffith); notification that PII/PHI was "given away, traded or sold" on the "Dark Web, Deep Web, or Peer-to-Peer File Sharing Networks" (Plaintiff Cabrera); and medical identity theft resulting in the temporary cancellation of health insurance coverage, significant out-of-pocket costs, and potential tax penalties (Plaintiff Wilbur).[3] All of these instances of identity theft, fraud, and other harm involved the same PII/PHI that was compromised in the Data Breach. *Id.*

All Plaintiffs also face substantial risk of identity theft, fraud, and other harm in the future, as well as personal, professional, and financial harm stemming from the exposure of their PII/PHI. ¶¶ 4, 13, 181-212. Moreover, because their PHI was compromised, all Plaintiffs are threatened by the risk of bodily injury or death because of being misdiagnosed or mistreated as a result of medical identity theft or fraud.[4] 21st Century has already recognized that the risks to Plaintiffs and putative class members are real, having offered them twelve months of credit monitoring and identity theft insurance after the Data Breach, and warning them to monitor

---

[3] ¶¶ 37, 53, 59, 62, 63, 65, 71, 72, 77, 88.

[4] Misuse of PHI can result in misdiagnosis, mistreatment, and even Medicare fraud, which could exhaust a patient's Medicare funds used towards medical treatment. As the FBI warned, PHI can "be used to file fraudulent insurance claims, obtain prescription medication, and advance identity theft," and medical identity theft and fraud "is also more difficult to detect, taking almost twice as long as normal identity theft." ¶¶ 190-95 (quoting Federal Bureau of Investigation, *FBI Cyber Division Private Industry Notification* (Apr. 8, 2014), https://info.publicintelligence.net/FBI-HealthCareCyberIntrusions.pdf).

their medical and financial statements for unauthorized activities. ¶¶ 185-86, 206, 209-10.

21st Century exacerbated these substantial risks by waiting nearly four months to notify its patients that their PII/PHI had been stolen and posted for sale. ¶¶ 11, 117-20. The notice itself was also inadequate and ineffective, and many patients thought it was a scam. ¶¶ 7, 124.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████ ¶¶ 121-23.

In addition to these actual and imminent injuries, Plaintiffs have also been harmed by spending significant amounts of time and money mitigating their damages and attempting to protect themselves from future harm, suffering emotional distress because of the release of their PII/PHI, overpaying for medical services received from 21st Century, and having the value of their PII/PHI diminished. ¶¶ 3, 4, 11, 37, 53, 59, 62, 71, 77, 86, 181-212.

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████ ¶¶ 4, 13, 105-08, 131-37, 182.

### III.    ARGUMENT

### A.    All Plaintiffs Have Article III Standing to Pursue Relief Against Defendants

21st Century tacitly concedes that seven of the Plaintiffs properly allege facts of misuse or "actual economic damages" sufficient to confer Article III standing. *See* MTD at 4-8 (challenging Article III standing of only seven "non-misuse plaintiffs").[5] Thus, 21st Century's

---

[5] Defendants concede Plaintiffs Schmitt (¶ 37), Schwartz (¶¶ 52-53), Meulenberg (¶ 57-59), Wilbur (¶¶ 62-67), Griffith (¶¶ 71-72), Cabrera (¶¶ 76-77), and Brehio (¶¶ 86-88), have standing, on the basis that they allege misuse

opposition focuses on a subset of Plaintiffs who it asserts "have not alleged that any of their personal information has been misused" or "that they have suffered any actual economic losses." *Id*.

Article III standing exists if the plaintiff has (i) "suffered an injury in fact" that is (ii) caused by "the conduct complained of" and (iii) that "will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation omitted). 21st Century challenges only the injury in fact requirement, which may be satisfied by allegations of either "actual or imminent" injury. *Clapper v. Amnesty Int'l, USA*, 133 S. Ct. 1138, 1147 (2013). For an injury to be "imminent," it must be "certainly impending" *or* there must be "a 'substantial risk' that the harm will occur." *Id.* at 1150, n.5.

Here, all Plaintiffs allege concrete and particularized injuries that are both actual and imminent. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ¶¶ 5, 6, 98-99. As a result, many Plaintiffs have experienced fraud or unauthorized use of their PII/PHI. ¶¶ 37, 52-53, 57-59, 62-67, 71-72, 76-77, 86-88. These allegations are more than sufficient to establish standing and far exceed those conferring standing in other data breach cases where, for example, replaceable credit card numbers were exposed or data was mistakenly lost by an employee. Here, Plaintiffs have spent and will continue to spend time and money responding to the Data Breach, attempting to mitigate their damages and protecting themselves from the substantial risks of identity theft, fraud, and other

---

of their PII/PHI and/or have suffered economic losses as a result of the Data Breach.

harm.[6]

### 1.   All Plaintiffs Suffered Actual Injuries Resulting from the Data Breach

21st Century attempts to portray certain Plaintiffs as not having suffered misuse of their PII/PHI and as attempting to recover "for something that has not yet happened." MTD at 4.



¶¶ 96-108, 200, 328-32;

[7]

Further, all Plaintiffs reasonably experienced distress upon learning of the release of their PII/PHI, "including anxiety, concern and unease about unauthorized parties viewing and potentially using" their compromised PII/PHI.[8] Distress caused by a data breach of sensitive information constitutes actual injury for Article III standing purposes. *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1142 (9th Cir. 2010) (emotional distress caused by theft of laptop containing employees' addresses and Social Security numbers constituted injury in fact). The Third Circuit recently noted that "with privacy torts, improper dissemination of information

---

[6] ¶¶ 11, 21, 26, 30, 35, 39-40, 45, 49, 54, 60, 68, 71-73, 78, 83, 89, 200.

[7] 21st Century does not challenge Plaintiff Cabrera's standing, MTD at 4, who alleges that her PII/PHI was "given away, traded or sold" on the "Dark Web, Deep Web, or Peer-to-Peer File Sharing Networks." ¶ 77.

[8] ¶¶ 21, 26, 30, 35, 40, 45, 49, 54, 60, 68, 73, 78, 83, 89.

can itself constitute a cognizable injury." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 638-39 (3d Cir. 2017).[9]

### 2. All Plaintiffs Also Face Imminent Injuries Due To the Data Breach

Although not required to establish standing, all Plaintiffs also allege imminent injuries because they face substantial risk of identity theft, fraud, and other harm as a result of the Data Breach. These imminent injuries are particularly concrete in light of the numerous occurrences of identity theft, fraud, and other harms that ***have already occurred*** to many Plaintiffs. *Supra* Part II.[10]

### a. All Plaintiffs Have Been Exposed To a Substantial Risk of Identity Theft, Fraud, and Other Harm

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████ Thus, all Plaintiffs face a substantial risk of identity theft, fraud, and other harm in the future as a result of the Data Breach. ¶ 181.

While the Eleventh Circuit has yet to address the issue, most circuits have concluded that, where a data breach did not result inadvertently (*e.g.*, as part of a random burglary), but rather from a targeted and malicious attack (as here)—and particularly where widespread misuse of the data has already occurred (also as here)—the threat of misuse is substantial rather

---

[9] *See also In re Dep't of Veterans Affairs Data Theft Litig.*, No. MDL 1796, 2007 WL 7621261, at *3 (D.D.C. Nov. 16, 2007) (holding that "embarrassment, inconvenience, unfairness, mental distress, [and] emotional trauma" qualified as Article III injuries).

[10] 21st Century makes the specious argument that the Data Breach resulted in only "a .000003 percent rate of alleged identity theft." MTD at 25. However, Defendants concede that at least 50 percent of Plaintiffs have alleged identity theft, and only class discovery will reveal the extent of identity theft among class members.

than speculative. *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 693 (7th Cir. 2015) (holding that "it is plausible to infer that the plaintiffs have shown a substantial risk of harm" from the data breach, for "[w]hy else would hackers break into a store's database and steal consumers' private information?"); *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 388 (6th Cir. 2016) (deeming speculation about possibility of future injury unnecessary when data had already been stolen and was in the possession of criminals); *Anderson v. Hannaford Bros. Co.*, 659 F.3d 151 (1st Cir. 2011) (reinstating claims where "thieves were sophisticated" and "targeted [defendant's] data directly"); *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 632 (7th Cir. 2007) ("scope and manner of access suggests that the intrusion was sophisticated, intentional and malicious").[11] Even where no actual misuse has occurred, the substantial risk of misuse may confer standing. *See, e.g.*, *Krottner*, 628 F.3d at 1140 (holding that plaintiffs "whose personal information has been stolen but not misused, have suffered an injury sufficient to confer standing under Article III"). Further, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548-50 (2016), held that "intangible injuries can nevertheless be concrete," confirming that injured persons have standing to sue when they have suffered—or are at risk of suffering— harms tethered to real-world concerns or generally recognized at common law.

---

[11] *See also In re Adobe Sys. Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1214-16 (N.D. Cal. 2014) (finding standing where hackers deliberately targeted Adobe's servers to steal credit card information and posted stolen data on black market websites); *Corona v. Sony Pictures Entm't, Inc.*, No. 14-CV-09600 RGK (Ex), 2015 WL 3916744, at *3 (C.D. Cal. June 15, 2015) (allegations that plaintiffs' PII had been stolen and posted on file-sharing websites sufficient to establish credible threat of impending harm, for standing purposes); *Khan v. Children's Nat'l Health Sys.*, 188 F. Supp. 3d 524, 532 (D. Md. 2016) (concluding that "plaintiffs have properly alleged an injury in fact arising from increased risk of identity theft if they put forth facts that provide either (1) actual examples of the use of the fruits of the data breach for identity theft, ***even if involving other victims***; or (2) a clear indication that the data breach was for the purpose of using the plaintiffs' personal data to engage in identity fraud." (emphasis added)); *but see Reilly v. Ceridian Corp.*, 664 F.3d 38, 40, 42-44 (3d Cir. 2011) (no standing absent data misuse allegations and "evidence that the intrusion was intentional or malicious"); *In re SuperValu, Inc.*, No. 14-MD-2586 ADM/TNL, 2016 WL 1588105, at *3 (D. Minn. Apr. 20, 2016) (one unauthorized credit card charge insufficient to establish standing).

This is especially true where the risk of future harm is not based on a "chain of events that [is] both 'highly attenuated' and 'highly speculative.'" *See Neiman Marcus*, 794 F.3d at 693; *In re Cmty. Health Sys., Inc. ("CHS")*, No. 15-CV-222-KOB, 2016 WL 4732630, at *10 (N.D. Ala. Sept. 12, 2016) (plaintiffs' claims dismissed only because risk of harm involved "a highly attenuated chain of possibilities.").[12] ███████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████ For these reasons, the likelihood of identity theft and fraud was arguably significantly lower in *CHS* than here.

Even cases 21st Century relies on support Plaintiffs' claims. For instance, although the *Case* court held that the plaintiff lacked standing, it did so because there was no allegation the information had been misused. *Case*, 166 F. Supp. 3d at 1319. The court emphasized that the plaintiff did not allege any such misuse or negative consequences from the data breach and distinguished cases like *Adobe*, where "plaintiffs alleged that '[s]ome of the stolen data ha[d] already surfaced on the Internet.'" *Id.* Thus, *Case* supports the conclusion that stolen PII/PHI placed on the Internet—as Plaintiffs allege—constitutes misuse and confers standing.

Other cases 21st Century relies on are factually distinguishable. In some, the stolen data consisted mainly of payment card information, which is rendered useless once the cards are replaced;[13] in others, the plaintiffs' data had not been exposed on the Internet or otherwise

---

[12] "Actual harm may occur only *if* the hacker is able to decrypt and convert the information hacked to some understandable and usable form; *if* the hacker intends to commit future criminal acts by misusing the information or selling it to another who so intends; and *if* the hacker or those who may obtain the personal information are indeed able to successfully make unauthorized use of it." *CHS*, 2016 WL 4732630, at *10; *see also Fero v. Excellus Health Plan, Inc.*, --- F. Supp. 3d ----, No. 6:15-CV-06569 EAW, 2017 WL 713660, *10 (W.D.N.Y. Feb. 22, 2017) ("the circumstances of the data breach" did not provide a "clear indication" that its purpose was "to commit identity fraud," because the forensic investigation "did not reveal collection or exfiltration" of PII).

[13] *Torres v. Wendy's Co.*, 195 F. Supp. 3d 1278 (M.D. Fla. 2016); *Burton v. MAPCO Exp., Inc.*, 47 F. Supp. 3d 1279 (N.D. Ala. 2014); *SuperValu*, 2016 WL 1588105.

misused;[14] and in other cases, the risk of harm depended on a speculative "chain of possibilities" because of case-specific factors.[15]

Here, in contrast, the risk of future injury is substantial and does not depend on a speculative or attenuated chain of possibilities. Plaintiffs allege that unauthorized parties targeted and extracted patient PII/PHI from a 21st Century database in order to use this data for identity theft and fraud— ████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████[16]

### b.    Plaintiffs Face an Increased Risk of Bodily Injury or Death

Notably absent from Defendants' Motion is any recognition that Plaintiffs confront an increased risk of bodily harm or death because of the Data Breach.[17] Even courts that have dismissed as speculative the risk of future identity theft have found that the increased risk of death and bodily harm constitutes injury. This is, in part, because an increased risk of death or bodily harm cannot be redressed after the fact. "Waiting for a plaintiff to suffer physical injury before allowing any redress whatsoever is both overly harsh and economically inefficient. The deceased, after all, have little use for compensation." *Reilly*, 664 F.3d at 45 (internal quotation

---

[14] *Case*, 166 F. Supp. 3d 1315; *Storm v. Paytime, Inc.*, 90 F. Supp. 3d 359 (M.D. Pa. 2015); *Green v. eBay Inc.*, No. 14-1688, 2015 WL 2066531 (E.D. La. May 4, 2015); *Khan*, 188 F. Supp. 3d 524; *Attias v. CareFirst, Inc.*, 199 F. Supp. 3d 193 (D.D.C. 2016).

[15] *In re Science Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 24-25 (D.D.C. 2014); *Peters v. St. Joseph Services Corp.*, 74 F. Supp. 3d 847, 854 (S.D. Tex. 2015).

[16] ¶¶ 37, 53, 59, 62, 63, 65, 71, 72, 77, 88.

[17] The U.S. Department of Health & Human Services Office of Inspector General determined that the consequences of a data breach involving medical records "can be life-threatening to you if the wrong information ends up in your personal medical records." ¶ 202. For example, "if incorrect medical information such as blood type or allergies becomes commingled in a data breach victim's medical records, that misinformation can be deadly if that individual becomes unconscious and needs an emergency transfusion or injection." *Id.*; ¶ 12.

marks omitted). Courts therefore "resist strictly applying the 'actual injury' test when the future harm involves human suffering or premature death." *Id.*

### c. Plaintiffs Spent Time and Money Protecting Themselves from Imminent Harm

All Plaintiffs spent significant time and/or money responding to the Data Breach and attempting to mitigate its harms and protect themselves from identity theft and fraud—numerous instances of which are known to have already harmed many Plaintiffs. *Supra* Part II. Courts have held that such expenditures incurred in response to a serious data breach constitute injuries that give rise to Article III standing.[18] The fact that 21st Century offered Plaintiffs identity theft protection services for twelve months shows 21st Century itself recognizes the substantial risk of identity theft, and that Plaintiffs' self-protection expenditures are justified.[19] This is especially true here, where 21st Century sent out a notice recommending that class members spend time and money remediating the effects of the Data Breach. ¶¶ 209-11. Put simply, 21st Century's post-breach actions contradict its arguments. Faced with the prospect of identity theft—an injury that often takes years to remedy and sometimes can never be fully repaired—Plaintiffs reasonably spent time and money attempting to protect themselves.

### 3. 21st Century's Additional Challenges To Plaintiffs' Allegations of Actual and Imminent Injuries Are Unavailing

21st Century challenges Plaintiffs' allegations of financial losses from not receiving

---

[18] *See, e.g., Neiman Marcus*, 794 F.3d at 694 (credit monitoring costs "easily" qualified as Article III injury); *Hannaford Bros.*, 659 F.3d at 164-65 (credit monitoring costs were cognizable injuries following "sophisticated breach"); *Lambert v. Hartman*, 517 F.3d 433, 438 (6th Cir. 2008) (credit monitoring costs satisfied Article III).

[19] In this regard, "[i]t is unlikely that [21st Century offered identity theft protection services] because the risk is so ephemeral that it can safely be disregarded." *See Neiman Marcus*, 794 F.3d at 694.

the adequate data security they expected when purchasing health services from 21st Century. However, Plaintiffs' allegations that they would not have obtained services from 21st Century had it disclosed its data security problems, and that 21st Century overcharged them for services, "represent economic injury" sufficient to confer Article III standing. ¶¶ 200, 321-26; *see Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1327-28 (11th Cir. 2012).[20]

21st Century fares no better in challenging Plaintiffs' allegations that their PII/PHI lost value because it was compromised. Such injuries are cognizable harms sufficient for Article III standing. For this reason, "a growing number of federal courts have now recognized Loss of Value of PII as a viable damages theory." *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *43 (N.D. Cal. May 27, 2016).[21]

Nor can 21st Century avoid legal accountability for its violations of state statutes on standing grounds. Contrary to 21st Century's contention, the Supreme Court made clear that "intangible injuries can nevertheless be concrete" and a "violation of a procedural right granted by statute can be sufficient in some circumstances to constitute an injury in fact." *Spokeo*, 136 S. Ct. at 1544, 1549.[22] Far from constituting a bare statutory violation, the unauthorized dissemination of PHI is a harm long recognized at common law as well as by Congress when it enacted statutes such as HIPAA.[23] Like federal statutes, state statutes may define a legally

---

[20] *See also In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 985 (N.D. Cal. 2016); *In re LinkedIn User Privacy Litig.*, No. 5:12-CV-03088-EJD, 2014 WL 1323713, at *6 (N.D. Cal. March 28, 2014); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 991 (S.D. Cal. 2014).

[21] *See also In re Facebook Privacy Litig.*, 572 F. App'x 494, 494 (9th Cir. 2014); *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 865-66 (N.D. Cal. 2011); *Svenson v. Google, Inc.*, No. 13-cv-04080-BLF, 2015 WL 1503429, at *5 (N.D. Cal. Apr. 1, 2015).

[22] *See also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982); *Palm Beach Golf Ctr. Boca, Inc. v. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1251 (11th Cir. 2015); *Warth v. Seldin*, 422 U.S. 490, 500 (1975); *Dickens v. GC Servs. Ltd. P'ship*, No: 8:16-cv-803-T-30TGW, 2016 WL 3917530, at *1 (M.D. Fla. July 20, 2016).

[23] *See, e.g.*, *Bd. of Med. Quality Assurance v. Gherardini*, 156 Cal. Rptr. 55, 60-61 (Cal. Ct. App. 1979); *McKay v. Geadah*, 50 Pa. D. & C.3d 435, 446 (Pa. Com. Pl. 1988); *Horizon Healthcare*, 846 F.3d at 642 (Shwartz, J.,

protected interest and provide recourse for related injuries—"[i]f that were not so, there would not be Article III standing in most diversity cases." *Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001). Thus, in addition to the injuries described above, 21st Century's violation of state consumer protection statutes injured Plaintiffs.[24] Based on the foregoing, the Court should deny 21st Century's Rule 12(b)(1) motion.

**B.     Plaintiffs' Claims Are Adequately Pleaded**

**1.     The Complaint Sufficiently Alleges Statutory Consumer Protection Claims and Common Law Negligent Misrepresentation Claims**

Although 21st Century argues that Plaintiffs' negligent misrepresentation and consumer protection claims fail because they do not satisfy Rule 9(b), it ignores consideration of other states' laws, exclusively relying on two Florida cases that do not wholly support its assertion: *Lacy v. BP, PLC*, No. 11-Civ-21855-MGC, 2015 WL 3952593 (S.D. Fla. June 29, 2015), a case in which the court found that a Florida common law fraud claim did not satisfy Rule 9(b); and *Blair*, which acknowledged the "split" in applying Rule 9(b) to claims under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") and held that Rule 9(b) applied to FDUTPA claims *only* to the extent they were based in fraud. *Blair v. Wachovia Mortg. Corp.*, No. 5:11-cv-566-Oc-37TBS, 2012 WL 868878, *3 (M.D. Fla. Mar. 14, 2012).

By relying on *Blair*, 21st Century concedes that Rule 9(b) does ***not*** apply to Plaintiffs' FDUTPA claim based on unfair and/or unlawful conduct. It also remains unsettled whether

---

concurring).

[24] ¶¶ 272, 379-79, 405; *see In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 377-78 (E.D.N.Y. 2010); *Ross v. AXA Equitable Life Ins., Co.*, 115 F. Supp. 3d 424, 436 (S.D.N.Y. 2015); *Story v. Attends Healthcare Prods. Inc.*, No. 15-CV-13577, 2016 WL 3125210 at *4 (E.D. Mich. June 3, 2016); *FMC Corp. v. Boesky*, 852 F.2d 981, 993 (7th Cir. 1988); *Jaffe v. Bank of Am., N.A.*, 197 F. Supp. 3d 523, 528 (S.D.N.Y. 2016).

Rule 9(b) applies to Plaintiffs' deception-based FDUTPA claim[25] or to other states' consumer protection statutes, which turn on substantive state law or other federal circuits' requirements for pleading such claims.[26]

Consistent with this Court's application of Rule 9(b) to negligent misrepresentation claims under Florida law, in the Eleventh Circuit, Rule 9(b) applies to negligent misrepresentation claims only if, under applicable state law, the negligent misrepresentation claims "sound in fraud." *Linville v. Ginn Real Estate Co., LLC*, 697 F. Supp. 2d 1302, 1306 (M.D. Fla. 2010). Other than Florida, 21st Century does not address which states' laws, if any, require that their respective consumer protection statute and/or common law negligent misrepresentation claims be analyzed under Rule 9(b). Therefore, 21st Century has not carried its burden. *See CHS*, 2016 WL 4732630, at *28-29.[27]

Assuming *arguendo* that Rule 9(b) applies, Plaintiffs specifically and sufficiently set forth the *who, what, when, where, why, and how* of 21st Century's misrepresentations and omissions. Plaintiffs allege that 21st Century made misrepresentations in its Notice of Privacy Practices by representing that it was "required by law to maintain the privacy of [Plaintiffs'] protected health information" and "to notify any affected individuals following a [data] breach," and that it would "abide by the[se] terms."[28] ¶¶ 8, 129, 132, 268-69, 343. However,

---

[25] *See In re Brican Am. LLC Equip. Lease Litig.*, No. 10-md-02183-PAS, 2014 WL 250246, at *10 (S.D. Fla. Jan. 22, 2014); *Toback v. GNC Holdings, Inc.*, No. 13-80526-CIV, 2013 WL 5206103, at *2 (S.D. Fla. Sept. 13, 2013) ("[B]ecause FDUTPA was enacted to provide remedies for conduct outside the reach of traditional common law torts like fraud, . . . Rule 9(b) cannot serve as a basis to dismiss FDUTPA claims.")

[26] *See Anthem*, 2016 WL 3029783, at *4 ("[T]he MDL transferee court, is generally bound by the same substantive legal standards as would have applied in the transferor court.")

[27] "Defendants, as movants, bear the burden on these motions to dismiss to show the insufficiency of the Plaintiffs' pleadings as a matter of law, and such cursory arguments . . . do not meet that burden." *Id.*

[28] It is reasonable to infer that 21st Century provided Plaintiffs the privacy policy and that Plaintiffs read it. In the privacy policy, 21st Century expressly acknowledges its obligation to provide the privacy policy to all prospective patients, stating that it does so upon each patient's first "visit to [a 21st Century] facility after the effective date"

21st Century put profits ahead of ensuring adequate security of Plaintiffs' information. ¶¶ 149, 173-180. Moreover, 21st Century experienced prior data security intrusions and therefore knew its data security systems were vulnerable. ¶¶ 164-67. ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ ¶¶ 105, 231, 234, 344. Plaintiffs thus relied to their detriment on 21st Century's material misrepresentations and omissions. ¶¶ 233, 271-72. If 21st Century had not misrepresented that it would protect Plaintiffs' information or had disclosed that it did not maintain adequate data security systems, Plaintiffs would not have engaged 21st Century to provide medical care. *Id.*

Plaintiffs also allege that, after the FBI notified 21st Century about the Data Breach, 21st Century unnecessarily delayed providing notice to Plaintiffs. ¶¶ 117-18, 120, 234, 258.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████ ¶¶ 121-22, 128. Had 21st Century adequately investigated and timely disclosed the extent of the Data Breach, Plaintiffs could have avoided further damages and hardships. ¶¶ 130, 258.[29] This level of specificity concerning two distinct sets of omissions and misrepresentations is more than sufficient to support Plaintiffs' deception-based claims under

---

of the notice. Consistent with the misrepresentations in the privacy policy, Plaintiffs allege that they expected and relied on 21st Century to protect their data. ¶¶ 26, 30, 35, 40, 45, 49, 54, 60, 68, 73, 78, 83, 89, 227; *see Corson v. Toyota Motor Sales, U.S.A., Inc.*, No. 2:12-cv-08499-JGB-VBK, 2013 WL 10068136, at *5 (C.D. Cal. July 18, 2013).

[29] 21st Century ignores Plaintiffs' allegations of injuries flowing from its delay in providing notice and the misrepresentations in the March 4, 2016 letter, arguing that these "cannot form the basis of a fraud claim." *But see In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 198 F. Supp. 3d 1183, 1205 (D. Or. 2016).

any pleading standard. Thus, 21st Century is "on notice" of the specific misconduct for which

relief is sought, ensuring it has "sufficient information to formulate a defense." *See Wagner v.*

*First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006) (citations omitted).

21st Century's argument that the privacy notice did not contain any misrepresentations

falls short. 21st Century represented that it would comply with state and federal requirements

by protecting Plaintiffs' PII/PHI, and that it would disclose a data breach upon discovery,

neither of which occurred here. ¶¶ 8, 132. 21st Century's misrepresentations and omissions

were likely to mislead reasonable consumers like Plaintiffs; thus, Plaintiffs' deception-based

claims are well pleaded. *See In re Adobe*, 66 F. Supp. 3d at 1231.

**2.      Plaintiffs Sufficiently Allege a Claim for Breach of Express Contract**

21st Century's argument that medical service contracts[30] do not contain "a promise of

data security" lacks merit. MTD at 12. As Plaintiffs allege, "[u]nder these express contracts,"

21st Century promised *both* to provide health care *and to protect Plaintiffs' PII/PHI*. ¶ 277.

This is a plausible claim, as 21st Century's privacy notice expressly states it would maintain

"the privacy of your protected health information." ¶ 279.

21st Century contends "the privacy notice does not discuss data security nor can it be

a contract for data security." MTD at 12. But silence as to the standards or methodology used

to maintain the privacy of PII/PHI does not eliminate 21st Century's promise to do so. *See*

*infra* Part III.B.3. In contrast to *In re Maple*, 434 B.R. 363, 371 (Bankr. E.D. Va. 2010),

Plaintiffs' claim does not rely solely on the enforceability of the privacy notice on its own.[31]

---

[30] Defendants do not dispute the existence of express contracts with Plaintiffs for medical services. MTD at 15 ("they did so pursuant to an express contract with 21st Century for *medical services*").

[31] 21st Century also relies on *Sleit v. Ricoh Corp.*, No. 8:07-cv-724-T-23TBM, 2007 WL 2565967 (M.D. Fla. Aug. 31, 2007), for the proposition that "a policy statement is a unilateral promise that does not create a contract."

Rather, the notice is a part of the parties' underlying agreement, the existence and scope of which entails a fact-dependent analysis that is "inappropriate at this juncture in this case." *See Smith v. Triad of Ala., LLC*, No. 1:14-CV-324-WKW, 2015 WL 5793318, at *14-15 (M.D. Ala. Sept. 29, 2015) (rejecting, at motion to dismiss stage, argument that privacy notice was "required by law" and lacked consideration). Indeed, numerous courts have upheld breach of contract claims in data breach cases involving the promise to secure PHI.[32]

### 3. Plaintiffs Sufficiently Allege a Claim for Breach of Implied Contract

Assuming *arguendo* that the privacy notice was not a contract term, Plaintiffs sufficiently allege that the parties had implied contracts for the provision of adequate data security, because a promise to protect sensitive health care information is axiomatic to health care generally, and such an agreement is necessary here to effectuate the parties' underlying contracts for medical care. *Hannaford Bros.*, 659 F.3d at 159 (found jury could reasonably conclude implicit agreement to safeguard data is necessary to effectuate contract governing customer's use of credit card).[33] 21st Century asserts "Plaintiffs do not allege facts sufficient to plausibly show a mutual intent to contract and an offer and acceptance," as the privacy notice "does not contain any specific representations or promises regarding data security." MTD at

---

MTD at 12. *Sleit* is inapposite because it involved the issue of whether an employment manual constituted an employment agreement. *Id.* at *1-2.

[32] *See, e.g.*, *Excellus*, 2017 WL 713660, at *17 (denying motion to dismiss breach of contract claim alleging that contracts incorporated defendants' privacy policies); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-md-2633-SI, 2017 WL 539578, at *11 (D. Or. Feb. 9, 2017) (same); *Anthem*, 2016 WL 3029783, at *12 (same); *see also CHS*, 2016 WL 4732630, at *23 (denying motion to dismiss claim alleging that defendants "breached their contractual promises to comply with the requirements of HIPAA").

[33] *Accord In re Target Corp. Customer Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1176-77 (D. Minn. 2014) ("a determination of the terms of the alleged implied contract is a factual question that a jury must determine"); *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 531-32 (N.D. Ill. 2011) ("allegations demonstrate the existence of an implicit contractual relationship . . . obligat[ing] Michaels to take reasonable measures to protect [plaintiffs'] financial information and notify [them] of a security breach within a reasonable amount of time").

13. But an implied contract "is one in which some or all of the terms are inferred from the *conduct* of the parties and the *circumstances* of the case, though not expressed in words." *McMillan v. Shively*, 23 So. 3d 830, 831 (Fla. 1st DCA 2009) (emphasis added) (quoting 17A Am. Jur. 2d Contracts § 12 (2009)).[34]

Plaintiffs allege that 21st Century required Plaintiffs to provide their PII/PHI as a condition of receiving health care. ¶ 292. These "are sufficient allegations to support an alternative claim of a contract implied-in-fact." *See Premera*, 2017 WL 539578, at *16. The authorities cited by 21st Century do not hold to the contrary.[35] Like *Premera*, the "contractual relationship" between 21st Century and Plaintiffs "necessarily requires" that Plaintiffs "provide their Sensitive Information" to 21st Century. *Id.* In doing so, Plaintiffs reasonably expected their personal health records to remain private.[36] Thus, "Plaintiffs' allegations that they did so with an understanding and the intent that [21st Century] would adequately protect that data is a plausible inference." *Id.* It is therefore reasonable to conclude that Plaintiffs did not expect—and certainly did not intend—21st Century to expose their PII/PHI to unauthorized third parties by failing to adopt industry-standard data security defenses.

Courts have repeatedly rejected 21st Century's argument that "the preexisting duty rule

---

[34] "The terms of a contract implied in fact can be inferred from the acts of the parties or the general course of dealing between the parties, which should be evaluated from the point of view of a reasonable person." 17A Am. Jur. 2d Contracts § 13 (2017).

[35] *See Frezza v. Google Inc.*, No. 12-CV-00237-RMW, 2012 WL 5877587 (N.D. Cal. Nov. 20, 2012) (involving alleged implied agreement to adhere to a specific set of data security standards promulgated by the payment card industry, whereas here Plaintiffs allege a contractual obligation to provide adequate data security without dictating the methodology or standards to be used); *Willingham v. Global Payments, Inc.*, No. 1:12-CV-01157-RWS, 2013 WL 440702 (N.D. Ga. Feb. 5, 2013) (wherein the plaintiffs did not provide their data to the defendants directly, whereas here Plaintiffs have made such allegations).

[36] *See Meyer v. Christie*, No. 07-2230-JWL, 2007 WL 3120695, at *4 (D. Kan. Oct. 24, 2007); *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 325 (E.D.N.Y. 2005); *Enslin v. The Coca-Cola Co.*, 136 F. Supp. 3d 654, 675 (E.D. Pa. 2015).

bars a contract claim for alleged breach of these duties" where the issues pertinent to the breach of contract claim sweep beyond the defendant's compliance, or lack thereof, with the preexisting obligation. *Premera*, 2017 WL 539578, at \*17; *Anthem*, 2016 WL 3029783, at \*12; *Dolmage v. Combined Ins. Co. of Am.*, No. 14 C 3809, 2016 WL 754731, at \*9 (N.D. Ill. Feb. 23, 2016). Plaintiffs allege 21st Century's contractual obligations extended beyond the requirements of state and federal law, and included complying with industry standards and protecting Plaintiffs' PII/PHI beyond 21st Century's preexisting legal duties, making the preexisting duty doctrine inapplicable. ¶ 295.

### 4. Plaintiffs Sufficiently Allege a Claim for Breach of the Contractual Covenant of Good Faith and Fair Dealing

Under Florida law, "a claim for breach of the implied covenant of good faith and fair dealing cannot be maintained . . . absent an allegation that an express term of the contract has been breached."[37] *Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc.*, 785 So.2d 1232, 1235 (Fla. 4th DCA 2001). 21st Century challenges Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing on the ground that "Plaintiffs fail to allege the existence of contractual terms (express or implied)." MTD at 14. This argument is not well taken, because Plaintiffs sufficiently allege that 21st Century breached its promise to protect the confidentiality of Plaintiffs' PII/PHI. *See supra* Parts III.B.2-3.

21st Century further argues Plaintiffs' good faith and fair dealing claim fails "because Plaintiffs allege that the claim was prompted by 21st Century's alleged negligence, not a

---

[37] In contrast, a breach of this covenant—standing alone—*is* an independent cause of action under other states' laws. *See, e.g.*, *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 826 P.2d 710, 727 (Cal. 1992); *United Dairymen of Ariz. v. Schugg*, 128 P.3d 756, 760 (Ariz. Ct. App. 2006); *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1126 (N.J. 2001).

conscious and deliberate act." MTD at 14. But where a contractual obligation—here, the promise to safeguard Plaintiffs' PII/PHI—is "silent with regard to the methodology or standards to be used," the covenant of good faith and fair dealing imposes a duty "to act in a commercially reasonable manner, or a manner that satisfies the reasonable expectations of the other party." *Burger King Corp. v. Broad St. Licensing Grp., LLC*, 469 F. App'x 819, 822 (11th Cir. 2012); *accord* Restatement (Second) of Contracts § 205 cmt. a (1981). As Plaintiffs reasonably expected 21st Century would maintain the privacy of their highly confidential PII/PHI, their implied covenant claim should be upheld.

### 5.    Plaintiffs Sufficiently Allege a Claim for Unjust Enrichment

Plaintiffs properly allege an unjust enrichment claim in the alternative to their breach of contract claim. Defendants insist that "no Plaintiff actually alleges that he or she paid any money out of pocket for medical services." MTD at 14-15. However, Plaintiffs allege that they "conferred a monetary benefit on Defendants in the form of monetary payments—directly or indirectly—for medical services received." ¶ 321. It is reasonable to infer that patients who paid indirectly through insurance also made out-of-pocket payments such as premiums, co-pays, or co-insurance. It is well settled that "an unjust enrichment claim may be satisfied where a benefit is conferred through an intermediary." *Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1368 (S.D. Fla. 2015).[38] "[W]hether a benefit was actually conferred is a factual question that cannot be resolved on a motion to dismiss." *Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1279 (S.D. Fla. 2009).

---

[38] *See also Metrahealth Ins. Co. v. Anclote Psychiatric Hosp., Ltd.*, No. 96-2547-CIV-T-17C, 1997 WL 728084, at *8 (M.D. Fla. Oct. 23, 1997) (unjust enrichment "does not require that Defendant individually receive payments directly from Plaintiffs").

Furthermore, while an unjust enrichment claim may not be brought if the parties have a valid contract covering *the same subject matter* as the unjust enrichment claim, if "one or more of the parties contest the existence of an express contract governing the subject matter of the dispute," unjust enrichment may be pleaded in the alternative. *In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1337-38 (S.D. Fla. 2002). As 21st Century contests the breach of contract claims, Plaintiffs may pursue an unjust enrichment claim in the alternative.

### 6.      Plaintiffs Sufficiently Allege a Claim for Invasion of Privacy

Contrary to 21st Century's assertion, a common law invasion of privacy claim may be satisfied by a showing of reckless conduct, *Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp. 2d 808, 822 (W.D. Ky. 2003), and a defendant may be liable for enabling an invasion completed by a third party, *Carter v. Innisfree Hotel, Inc.*, 661 So.2d 1174, 1179 (Ala. 1995) (hotel could be liable for failing to prevent third party "peeping Toms"). The cases 21st Century cites do not hold otherwise and in fact undermine its position.[39] More pertinent here is *Rowe v. UniCare Life & Health Ins. Co.*, No. 09 C 2286, 2010 WL 86391 (N.D. Ill. Jan. 5, 2010). There, the court upheld an invasion of privacy claim where an insurer allowed the plaintiff's protected health information to be temporarily available to the public online, despite the absence of any allegation a third party had viewed his information. *Id*. at *1, *9. The court explained that, "in the case of an invasion of privacy action, proof of actual harm need not be

---

[39] In *Purrelli v. State Farm Fire & Cas. Co.* 698 So. 2d 618 (Fla. Dist. Ct. App. 1997), the court concluded that an insurer could be obligated to indemnify the plaintiff for invasion of privacy, despite a policy provision *disclaiming* coverage for intentional torts.. In *Burton*, the court stated merely that the intent element of the invasion of privacy tort calls for more than negligence. 47 F. Supp. 3d at 1288. Defendants' reliance on *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561 (D. Mass. 2016), to assert that a plaintiff must allege facts "indicating that [defendant] either 'actively participated in or substantially assisted'" in an invasion of privacy is mistaken. MTD at 16, fn. 11. The *Doe* court listed these as elements of a claim for *aiding and abetting a tort*, not for invasion of privacy. *Doe*, 177 F. Supp. 3d at 616-17.

of pecuniary loss and actual harm may include damages for emotional distress." *Id*. at *9 (citations and internal quotation marks omitted).

### 7.    Plaintiffs Sufficiently Allege Claims for Breach of Fiduciary Duty

Plaintiffs properly allege the existence of a fiduciary relationship: they entrusted their PII/PHI to 21st Century based on the understanding that 21st Century would protect that information (¶¶ 211, 233, 272); 21st Century acknowledged its duty and promised to maintain the privacy of Plaintiffs' PII/PHI (¶¶ 8, 132); and Plaintiffs received services from 21st Century and its affiliates (¶¶ 22, 27, 31, 36, 41, 46, 50, 55, 61, 69, 74, 79, 84). *See Susan Fixel, Inc. v Rosenthal & Rosenthal, Inc*., 842 So. 2d 204, 207 (Fla. Dist. Ct. App. 2003) (fiduciary relationship if a "relation of trust and confidence exists between the parties (that is to say, where confidence is reposed by one party and a trust accepted by the other, or where confidence has been acquired and abused)" (internal quotation marks omitted)).[40]

21st Century's argument that Plaintiffs' breach of fiduciary duty claim fails because "[t]he mere receipt of confidential information is insufficient to create a fiduciary relationship" lacks merit. The two cases 21st Century cites are inapposite, as they are specific to the laws of their respective states and involve distinct legal relationships. Neither applies here or stands for 21st Century's broad assertion.[41]

---

[40] *See also Laker v. Freid*, 854 F. Supp. 923, 927 (D. Mass. 1994) ("[O]ne of the hallmarks of a fiduciary relationship is the plaintiff's reposing of trust and confidence in the defendant, and the defendant's knowledge of the plaintiff's reliance upon him."); *Barbara A. v. John G.*, 145 Cal. App. 3d 369, 382, 193 Cal. Rptr. 422 (Ct. App. 1983) ("'[F]iduciary' and 'confidential' have been used synonymously" to describe "'any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party.'").

[41] *Silver v. Countrywide Home Loans, Inc.*, 760 F. Supp. 2d 1330, 1338 (S.D. Fla. 2011) (applying Florida law at summary judgment, holding "mere communication of information between the borrower and the bank is not enough to establish such a fiduciary obligation."); *Dolmage v. Combined Ins. Co. of Am.*, No. 14 C 3809, 2015 WL 292947, *6 (N.D. Ill. Jan. 21, 2015) ("under Illinois law no fiduciary relationship exists between an insurer and an insured, and [p]laintiff has not plausibly alleged the existence of a special relationship between the

### 8.     Plaintiffs' State Statutory Claims Are Adequately Pleaded

First, Plaintiffs are "consumers" under the California UCL, Arizona ACFA, and Florida FDUTPA.[42] Unlike *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 715 (N.D. Cal. 2011), where the plaintiffs "received [d]efendants' services for free," Plaintiffs here paid money to 21st Century for health care services, rendering them "consumers" within the meaning of the UCL, ACFA, and FDUTPA. ¶¶ 4, 200, 271, 283, 301, 312, 323, 325, 420.[43]

Second, learned professionals are not exempt from the NJCFA when "they act outside their professional capacities." *Macedo v. Dello Russo*, 178 N.J. 340, 346 (2004). 21st Century did not render health care *services* when it fraudulently misrepresented that it would maintain Plaintiffs' PII/PHI, failed to do so, and allowed Plaintiffs' PII/PHI to be acquired by an unauthorized party. 21st Century's conduct and argument is akin to a doctor promising to protect patient information, then leaving the patient files unattended in a public place, and later claiming the doctor rendered professional services by leaving the files unattended. As 21st Century's misrepresentations were not made in its professional capacities, its activities fall outside the exemption, and therefore 21st Century is subject to the NJCFA.[44]

---

parties.").

[42] Defendants' narrow definition is unsupported and inconsistent with the intent and broad scope of the consumer protection statutes. *See Murray v. Farmers Ins. Co. of Ariz.*, 239 Ariz. 58, 70 (Ct. App. 2016) (noting CFA's "expansive" definitions and that, "[i]n view of the broad language and remedial purpose of the CFA," third-party beneficiary had standing to bring CFA claim); *Flower World of Am., Inc. v. Wenzel*, 122 Ariz. 319, 321 (Ct. App. 1978) ("One would not typically characterize the purchaser of a commercial franchise as a consumer. Our statute, however, provides no definition of 'consumer' and broadly defines merchandise in s 44-1521 as 'any objects, wares, goods . . . or services.'"); *e-ventures Worldwide, LLC v. Google, Inc.*, 188 F. Supp. 3d 1265, 1276 (M.D. Fla. 2016) (predominant trend is to interpret the amendment as legislature's intent to broaden scope of FDUPTA, allowing any person or entity that suffered a loss as a result of unfair or deceptive acts or practices to sue for damages, whether or not a "consumer").

[43] *See In re Facebook Privacy Litig.*, 791 F. Supp. 2d at 715 ("[P]laintiff who is a *consumer* of certain services (i.e., who 'paid fees' for those services) may state a claim under certain California consumer protection statutes when a company . . . discloses personal information about its consumers to the public.").

[44] *See Blatterfein v. Larken Assocs.*, 323 N.J. Super. 167 (1999) (architect who misrepresented building materials to a house purchaser acted as sales agent rather than as a professional architect, thus subject to NJCFA); *Harnish*

Third, RDITPA's regulatory exemption does not apply "where the specific act in question does not come within the exemption." *Perron v. Treasurer of City of Woonsocket*, 121 R.I. 781, 785 (1979). Although 21st Century admits it is subject to HIPAA and HITECH, Plaintiffs allege 21st Century violated RIDTPA because it "engaged in unlawful, unfair, and deceptive acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of the services." ¶ 487. Neither HIPAA nor HITECH regulates such acts, so the exemption does not apply.

Fourth, 21st Century's reliance on *In re Pharm Indus. Avg. Wholesale Price Litig.*, 230 F.R.D. 61, 84 (D. Mass. 2005), to contend that KCPA claims may not be pursued in class action litigation, is misplaced. In fact, the statute does not expressly ban class actions, and courts have subsequently certified class actions under the KCPA.[45]

Last, pre-suit notice under the California Consumers Legal Remedies Act ("CLRA") is required only for "an action for damages"—not where, as here, Plaintiffs seek restitution and injunctive relief. ¶¶ 408-410; *see* Cal. Civ. Code § 1782(a), (c)-(d); *In re Mattel, Inc. Toy Lead Paint Prods. Liab. Litig.*, 588 F. Supp. 2d 1111, 1119-20 (C.D. Cal. 2008) (no notice required where complaint seeks injunctive relief, restitution and disgorgement rather than damages).[46] The CLRA specifically authorizes plaintiffs to file suit for other relief and then to add a claim

---

*v. Widener Univ. Sch. of Law*, 931 F. Supp. 2d 641 (D.N.J. 2013) (where law school provided legal education and not legal counsel, plaintiffs' claims were actionable under NJCFA).

[45] *See Clark v. Bellsouth Telecoms., Inc.*, 461 F.Supp.2d 541 (W.D. Ky. 2006). Plaintiffs also fit within the protected class of persons defined in KRS 367.220. Further, because Plaintiffs paid for and received medical services from 21st Century, they are in privity with 21st Century.

[46] *See also Morgan v. AT&T Wireless Servs., Inc.*, 99 Cal. Rptr. 3d 768, 788 (2009) ("This notice requirement need not be complied with in order to bring an action for injunctive relief."); *Laster v. T- Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1195-96 (S.D. Cal. 2005) (dismissing damages claim where plaintiff provided no notice but holding that "claim for injunctive relief stands").

for damages after giving notice.[47]

### 9.    Plaintiffs Sufficiently Allege a Claim Under the CMIA

Contrary to 21st Century's contention, Plaintiffs affirmatively pleaded that unauthorized parties viewed Plaintiffs' confidential medical information.[48]



¶¶ 96, 105-08.

¶¶ 96-212.

The cases 21st Century relies upon are factually inapposite, as they involved stolen hardware with password-protected or encrypted medical information, without evidence suggesting that unauthorized parties viewed, accessed, or were even aware that the hardware contained medical information. MTD at 19 (citing *Regents of the Univ. of Cal. v. Super. Ct.*,

---

[47] Cal. Civ. Code § 1782(d) ("[n]ot less than 30 days after the commencement of an action for injunctive relief, and after compliance with subdivision (a), the consumer may amend his or her complaint without leave of court to include a request for damages.").

[48] ¶¶ 21, 26, 30, 35, 40, 45, 49, 54, 60, 68, 73, 78, 83, 89.

[49] ¶¶ 6, 13, 23, 26, 28, 30, 32, 34, 96-105, 107, 121-22, 128-29, 131-37, 363, 365-66.

163 Cal. Rptr. 3d 205 (2013); *Sutter Health v. Super. Ct.*, 174 Cal. Rptr. 3d 653 (2014)). ▮



¶¶ 98-99. Those cases involved stolen hardware, not a database hacking where the data is the target. The distinction is important because, as the court in *Sutter* noted, a thief who steals a computer may simply want to sell it for cash without any interest in the data it contains. *Sutter*, 174 Cal. Rptr. 3d at 661. ▮

¶¶ 96-99.

21st Century's argument that a CMIA claim requires an allegation that Plaintiffs suffered identity theft is incorrect. The CMIA—which has historically been integral in resolving healthcare-related data breaches[51]—imposes liability when a health care provider negligently releases a patient's information, regardless of whether thieves misused the stolen data. CAL. CIV. CODE §§ 56.05(g), 56.36(b)-(c), 56.101(a).[52] *Falkenberg v. Alere Home Monitoring, Inc.*, No. 13-cv-00341-JST, 2015 WL 800378 (N.D. Cal. Feb. 23, 2015), does not support 21st Century's argument that misuse must be pleaded.[53] There, the court upheld the

---

[50] 21st Century's argument that "Plaintiffs only refer to 'Protected Health Information,' which is not the same as the CMIA's definition of 'confidential medical information,'" is meritless. ▮ ▮ *E.g.*, ¶ 6 ("disclosure of private and highly sensitive PII/PHI including: names, Social Security numbers, physician's names, *medical diagnoses, treatment information*, and insurance information"); ¶ 102 (▮). For this reason, 21st Century's reliance on *Eisenhower Med. Ctr. v. Super. Ct.*, 172 Cal. Rptr. 3d 165, 166-67 (2014), where the breached data did not include confidential medical information, is misplaced.

[51] *See* Settlement Agreement, *St. Joseph Health Sys. Med. Info. Cases*, No. JCCP 4716 (Orange Cty. Super. Ct. Sept. 11, 2015) (data breach settlement of certified CMIA claims involving confidential medical information posted on Internet, in which approximately 31,000 class members received $242 per person and other benefits), http://www.sjhsdatabreachclassaction.com/Documents/SJK0001/SJK_FINAL%20-%20Ex.%20A%20(Settlement%20Agreement).pdf.

[52] Contrary to 21st Century's contention, the CMIA does not require an allegation that a plaintiff's confidential medical information was published. *Corona*, 2015 WL 3916744, at *7.

[53] Notably, *Falkenberg* involved a stolen laptop with password protection, which explains why the court

claim not only because the plaintiffs alleged that thieves attempted to steal their identities, but they also alleged that unauthorized third parties viewed the protected information.[54] *Id.*

### 10.    Plaintiffs State a Claim Under the California Customer Records Act

Plaintiffs properly allege that 21st Century is liable for violating California Civil Code section 1798.82 by failing to immediately notify Plaintiffs that their PII had been compromised. ¶¶ 386-97. In contrast to 21st Century's assertion, Plaintiffs sufficiently allege that they were harmed by this delayed notification. ¶¶ 11, 117-20, 393; MTD at 21. Plaintiffs allege that the Data Breach occurred on or around October 3, 2015, and that 21st Century did not learn of the Data Breach until November 13, 2015, when it was notified by the FBI. ¶ 5. Despite the obvious risk to its patients of fraud and other identity theft, 21st Century failed to notify Plaintiffs of the Data Breach until March 4, 2016. ¶ 117. Around that same time and in the following months, Plaintiffs suffered identity theft and fraud. ¶¶ 37, 59, 62, 71, 77, 86. Other Plaintiffs spent time and money taking steps to mitigate and prevent such harms—steps recommended by 21st Century that could have been taken earlier. These harms were caused or exacerbated by 21st Century's delayed notification, and are sufficient to meet the injury requirement of the CRA. ¶¶ 18-89, 393.

### 11.    Plaintiffs Are Entitled To Pursue a Claim for Declaratory Relief

21st Century's argument that Plaintiffs' claim for declaratory relief should be dismissed because declaratory relief "is not an independent cause of action" misstates the law.  MTD at 22. A case may be maintained for declaratory relief alone. *See, e.g.*, *Aetna Life Ins. Co. of*

---

considered whether unauthorized persons accessed the data or just the computer itself. As discussed, in a database hacking case, the data *is* the target.

[54] 21st Century's claim regarding Plaintiff Corbel lacks merit, because Plaintiff Corbel began receiving suspicious phone calls asking for money or personal information after the Data Breach. ¶ 25.

*Hartford, Conn. v. Haworth*, 300 U.S. 227, 244 (1937). The issue is not whether Plaintiffs'

claim for declaratory relief is supported by an independent cause of action,[55] but "whether

there is an 'actual controversy' within the meaning of the Declaratory Judgment Act."

*Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 272 (1941). Plaintiffs allege an

"actual controversy" in that they "allege facts from which the continuation of the dispute may

be reasonably inferred" and "from which it appears that there is a substantial likelihood that

[they] will suffer injury in the future" ¶¶ 335-37; *see supra* Part III.A.[56]

**C.     Plaintiffs Adequately Allege That the Data Breach Caused Their Injuries**

21st Century asserts that Plaintiffs' allegations "rely *only* on time and sequence to

connect them" to the Data Breach and are therefore insufficient to establish causation. MTD

at 22-23 (emphasis in original). ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████     *E.g.*, ¶¶ 98, 235. These allegations

of misuse resulting from the Data Breach are independently sufficient to support Plaintiffs'

causation allegations. *See Case*, 166 F. Supp. 3d at 1319.

Plaintiffs plead both a logical and temporal relationship between the Data Breach and

the incidents of identity theft and fraud they experienced.[57] Thus, "Plaintiffs sufficiently allege

a nexus between the data theft and the identity theft," and their "contention that the data breach

---

[55] Even if it were, this claim should nevertheless be maintained, as Plaintiffs allege numerous independent causes of action supporting a claim for declaratory judgment, including claims for "negligence, negligence per se, gross negligence, negligent misrepresentation, breach of express contract, breach of implied contracts, breach [of the] implied duty of good faith and fair dealing, breach of fiduciary duty, unjust enrichment, invasion of privacy and violations of various state and federal statutes." ¶ 334.

[56] *See also Nirvana Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 589 F. Supp. 2d 1336, 1343 (S.D. Fla. 2008).

[57] ¶¶ 37, 53, 59, 62, 63, 65, 71, 72, 77, 88.

caused the identity theft is plausible." *See Resnick*, 693 F.3d at 1327. In *Resnick*, as here, the compromised data included "protected health information, Social Security numbers, names, addresses, and phone numbers." *Id.* at 1322. Thus, a plaintiff whose "identity was stolen by changing her address" was found to have established "a logical connection" between the identity theft and the data breach, because the same data that was compromised was used in the identity theft. *Id.* at 1327.[58] The same is true here for Plaintiffs Schmitt and Griffith, who suffered identity theft involving a change of address (information compromised in the Data Breach). ¶¶ 37, 72. The same is also true for the following Plaintiffs who allege identity theft and fraud involving data compromised in the Data Breach: Plaintiff Schwartz (name, date of birth, and Social Security number); Plaintiff Wilbur (Social Security number); Plaintiff Brehio (Social Security number and date of birth); and Plaintiff Cabrera (PII). ¶¶ 53, 62, 65, 77, 88.

Defendants misread *Resnick* as holding that "to avoid dismissal for failure to plead causation, a plaintiff must plead facts ***sufficient to rule out other causes***." MTD at 25. (emphasis added). *Resnick* states clearly that "Plaintiffs meet the pleading standards" as to causation if "their contention that the data breach caused the identity theft is ***plausible*** under the facts pled." 693 F.3d at 1327. Plaintiffs need not negate all potential alternative causes in the Complaint or allege "that they took special precautions to protect their PII/PHI and had not been victims of other data security breaches in the past." MTD at 22.

21st Century's speculation as to "myriad of other explanations" for how unauthorized parties might have obtained Plaintiffs' PII/PHI (MTD at 23-24) does not render implausible

---

[58] "We find that Plaintiffs allege that the same sensitive information that was [compromised in the data breach] was used to open the [bank] account," and "[t]hus, Plaintiffs' allegations that the data breach caused their identities to be stolen move from the realm of the possible into the plausible." *Resnick*, 693 F.3d at 1327.

the allegations that Plaintiffs' injuries were caused by the 21st Century Data Breach. *See, e.g.,*
*Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 969 (7th Cir. 2016) ("[m]erely
identifying potential alternative causes does not defeat standing"); *Neiman Marcus*, 794 F.3d
at 696 (the fact that "some other store might have caused the plaintiffs' private information to
be exposed does nothing to negate the plaintiffs' standing to sue," as "[i]t is certainly plausible
for pleading purposes that their injuries are 'fairly traceable' to the data breach" at issue).

## IV.    CONCLUSION

For the foregoing reasons, 21st Century's motions to dismiss should be denied. If the
Complaint is found inadequate in any respect, Plaintiffs respectfully request leave to amend.

Dated: April 21, 2017                                     Respectfully submitted,

By: */s/ Cari Campen Laufenberg*                By: */s/ Daniel S. Robinson*
Cari Campen Laufenberg                            Daniel S. Robinson
**KELLER ROHRBACK L.L.P.**                       **ROBINSON CALCAGNIE, INC.**
1201 Third Avenue, Suite 3200                     19 Corporate Plaza Drive
Seattle, WA 98101                                 Newport Beach, California 92660
Telephone: (206) 623-1900                         Telephone: (949) 720-1288
Facsimile: (206) 623-3384                         Facsimile: (949) 720-1292
claufenberg@kellerrohrback.com                    drobinson@robinsonfirm.com

*Interim Co-Lead Counsel for Plaintiffs*

Jodi Westbrook Flowers                            Robert C. Gilbert
**MOTLEY RICE LLC**                              Florida Bar No. 561861
28 Bridgeside Blvd.                               **KOPELOWITZ OSTROW FERGUSON**
Mt. Pleasant, SC 29464                            **WEISELBERG GILBERT**
Telephone: (843) 216-9000                         2800 Ponce de Leon Blvd., Suite 1100
Facsimile: (843) 216-9450                         Coral Gables, FL  33134
jflowers@motleyrice.com                           Telephone: (305) 529-8858
                                                  Facsimile: (954) 525-4300
                                                  gilbert@kolawyers.com

*Interim Co-Liaison Counsel for Plaintiffs*

Kent G. Whittemore
Florida Bar No. 166049
**THE WHITTEMORE LAW GROUP, P.A.**
100 Second Avenue South, Ste. 304-S
St. Petersburg, FL 33701
Telephone: (727) 821-8752
kwhittemore@wherejusticematters.com

*Interim Local Counsel for Plaintiffs*

Matthew B. George
**KAPLAN FOX & KILSHEIMER LLP**
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: (415) 772-4700
Facsimile: (415) 772-4707
mgeorge@kaplanfox.com

Kenneth G. Gilman
Florida Bar No. 340758
**GILMAN LAW, LLP**
Beachway Professional Center Tower
8951 Bonita Beach Road, S.E. Ste. #525
Bonita Springs, FL 34135
Telephone: (239) 494-6128
kgilman@gilmanlawllp.com

Daniel C. Girard
**GIRARD GIBBS LLP**
601 California St., 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
dcg@girardgibbs.com

Thomas V. Girardi
**GIRARDI | KEESE**
1126 Wilshire Boulevard
Los Angeles, CA 90017
Telephone: (213) 977-0211
Facsimile: (213) 481-1554
tgirardi@girardikeese.com

Eric A. Grover
**KELLER GROVER LLP**
1965 Market Street
San Francisco, CA 94103
Telephone: (415) 543-1305
Facsimile: (415) 543-7861
eagrover@kellergrover.com

Julie Braman Kane
Florida Bar No. 980277
**COLSON HICKS EIDSON, P.A.**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
julie@colson.com

Steven S. Maher
Florida Bar No. 887846
**THE MAHER LAW FIRM, PA**
631 W Morse Blvd., Suite 200
Winter Park, FL 32789
Telephone: (407) 839-0866
Facsimile: (407) 425-7958
smaher@maherlawfirm.com

Charles PT Phoenix
Florida Bar No. 0535591
**RHODES TUCKER**
2407 Periwinkle Way, Suite 6
Sanibel, FL 33957
Telephone: (239) 472-1144
Facsimile: (239) 461-0083
cptp@RhodesTucker.com

*Plaintiffs' Steering Committee*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on April 21, 2017, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which sends notice of electronic filing to all counsel of record.

By: *<u>/s/ Daniel S. Robinson</u>*
 Daniel S. Robinson